UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) CAUSE NO: 2:20-CV-78-PPS |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### AFFIDAVIT OF TRAVIS THATCHER-CURTIS

I, Travis Thatcher-Curtis, under the penalties of perjury, hereby state as follows:

1. I am over eighteen (18) years of age.

2. The facts set forth in this Affidavit are known to me to be true based upon my personal knowledge of such facts and, if called upon to testify as a witness, I am competent to testify to these facts.

3. I am employed by Franciscan Alliance, Inc., d/b/a Franciscan Health Crown Point ("Franciscan") as Director of Nursing Operations.

4. In my role as the Director of Nursing Operations, I supervise all nursing managers. My supervisory duties include evaluating employees, monitoring performance, creating a culture that promotes Franciscan's mission and values, weighing in on discipline and hiring decisions, and ensuring patient satisfaction and safety, among other responsibilities.

5. I have regularly reviewed the records and other documents routinely prepared and/or maintained by or for the benefit of Franciscan as it relates to my testimony in this Affidavit. Franciscan's records are made or obtained in the ordinary course of business by persons who have

**EXHIBIT 4**

a business duty to Franciscan to make or provide these records. This Affidavit is based upon my review of such records and other documents, as well as my personal knowledge.

6. I am submitting this Affidavit in support of Franciscan's Motion for Summary Judgment on the Complaint filed by Plaintiff Taryn N. Duis ("Duis").

7. At some point in mid-April 2019, I was made aware of an incident that occurred between Duis and Dawn Smith ("Smith") during the April 11, 2019 night-shift. My understanding of the incident is that Duis was serving as Charge Nurse during the April 11, 2019 night shift and asked Smith to do something, but Smith did not listen to Duis, which contributed to Duis having an anxiety attack.

8. I instructed Duis's supervisor, Linda Steinhilber ("Steinhilber") to schedule a meeting between Steinhilber, Duis, and myself to discuss this incident.

9. Thereafter, on April 19, 2019, I met with Duis and Steinhilber to discuss the April 11, 2019 incident. During the meeting, it was discussed that during the April 11, 2019 night shift, Duis asked Smith to do something, and Smith refused, which contributed to Duis having an anxiety attack and being sent home. Duis did not deny this during the April 19, 2019 meeting. Duis was upset during this meeting, but did not identify any issues relating to her pregnancy, medical leave, or FMLA leave. It was not my impression from this meeting that Steinhilber was acting inappropriately towards Duis in any way. It was not my impression from this meeting that Steinhilber was yelling at Duis or mocking her in any way, including based on her pregnancy. Had Steinhilber been yelling at Duis, in Duis's face, or in any way mocked Duis's pregnancy, I would not have tolerated such behavior and would have issued corrective action to Steinhilber.

10. At the end of the April 19, 2019 meeting there was a discussion about Duis assisting Steinhilber to establish a rapport within the unit.

2

11. At no point during the April 19, 2019 meeting, was Duis's pregnancy, maternity leave, or FMLA mocked or discussed.

12. On May 9, 2019, I learned of an incident in which Duis allegedly delayed a patient's pain medication, used inappropriate language, and that such incident resulted in Duis's suspension. It was my understanding that Steinhilber was responsible for investigating the incident.

13. On May 9, 2019, I received three text messages from Duis explaining she had an urgent matter to discuss and then stating that she was being "bullied and harassed by [Steinhilber] [her] manager" and that she had now been suspended and had done nothing wrong. She stated that she planned to speak with Human Resources the next morning. Duis also stated that she had several staff members come to her and say that Steinhilber had it out for her and was trying to get her co-workers to say back things about her. A true and accurate copy of Duis's May 9, 2019 text messages to Travis Thatcher-Curtis are attached hereto as Exhibit A.

14. I did not respond to these text messages because I was aware that Steinhilber had suspended Duis for her behavior in response to a patient's call-light and that Steinhilber was asking questions of Duis's co-workers as a part of her investigation, not bullying or harassing her.

15. I supported the recommendation to terminate Duis's employment due to the patient call-light issue and Duis's related conduct.

I AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.

Date: 9-10-21

_____
Travis Thatcher-Curtis, Director of Nursing Operations
Franciscan Alliance, Inc, a/k/a Franciscan Health Crown Point

KD_13486745_2.docx

**Taryn >**

May 9, 2019, 5:38 PM

> Hi Travis, this is Taryn Duis and I have an urgent matter that I need to talk to you about as soon as possible. If you could please call me I'd appreciate it

May 9, 2019, 7:02 PM

> I am being bullied and harassed by Linda my manager and I have now been suspended, and I have done nothing wrong. I have never been in any trouble and I never have had any complaints. I will be speaking with HR tomorrow morning.

> I have had several staff members come to me and say that they believe Linda "has it out for me" and that she has been trying to get them to say bad things about me.

CONFIDENTIAL  Duis v. Franciscan ACO, Inc. (2:20-cv-78-APR)  Produced April 20, 2021  FRANCISCAN000759

EXHIBIT A