## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| TARYN N. DUIS, | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | CAUSE NO: 2:20-CV-78-PPS |
| | ) | |
| FRANCISCAN ALLIANCE INC., a/k/a | ) | |
| FRANCISCAN HEALTH CROWN | ) | |
| POINT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### AFFIDAVIT OF DAWN SCOTT

I, Dawn Scott, under the penalties of perjury, hereby state as follows:

1.      I am over eighteen (18) years of age.

2.      The facts set forth in this Affidavit are known to me to be true based upon my personal knowledge of such facts and, if called upon to testify as a witness, I am competent to testify to these facts.

3.      I am employed by Franciscan Alliance, Inc., d/b/a Franciscan Health Crown Point ("Franciscan") as the Chief Nursing Officer.

4.      In my role as the Chief Nursing Officer, I am responsible for the oversight and functioning of all nursing areas at Franciscan. This includes the quality of care, safety of patients, how care is rendered, and the competency of the nursing staff.

5.      I have regularly reviewed the records and other documents routinely prepared and/or maintained by or for the benefit of Franciscan as it relates to my testimony in this Affidavit. Franciscan's records are made or obtained in the ordinary course of business by persons who have

**EXHIBIT 5**

a business duty to Franciscan to make or provide these records. This Affidavit is based upon my review of such records and other documents, as well as my personal knowledge.

6.      I am submitting this Affidavit in support of Franciscan's Motion for Summary Judgment on the Complaint filed by Plaintiff Taryn N. Duis ("Duis").

7.      On May 9, 2019 or May 10, 2019, I was made aware that Duis was being suspended because of an incident during her shift. I was not aware of the details of the suspension at that time.

8.      On May 10, 2019, I met with Duis and her mother at their request. The meeting began with introductions and after asking what I could do for Duis, her mother immediately stated "as long as she doesn't go into pre-term labor," which I discovered was stated because Duis had a miscarriage during 2018 and was pregnant again. Duis then went on to discuss an incident that occurred where she was sent home from work and her manager, Linda Steinhilber ("Steinhilber") reached out the next day, but Duis did not feel that Steinhilber was compassionate in her follow-up. After this, the conversation morphed into Duis advising that she had been suspended pending investigation and she demanded to know why. I advised her that I did not know the details and that Human Resources ("HR") had a process they followed and that Steinhilber and HR would contact her. Duis explained that she knew her suspension was because of comments she made regarding a patient call-light, but she felt justified in those comments because she was busy. Duis then explained she wanted to file a formal grievance against Steinhilber because she believed she was being targeted and that Steinhilber was actively "out trying to get dirt on [her]." I informed Duis that it was within her right to file a grievance and that she could do so through HR. The conversation ended with me explaining that the leadership team was attempting to transform the culture into a more positive, respectful, and patient centered one and that, as a nursing leader, I

would be supporting changes that helped drive that culture. A true and accurate copy of my May 10, 2019 Meeting Notes are attached hereto as Exhibit A.

9.     The May 10, 2019 meeting lasted about 15 minutes. *See* Exhibit A.

10.     Immediately after the May 10, 2019 meeting, I typed notes regarding the meeting. *See* Exhibit A.

11.     In my opinion, the May 10, 2019 meeting was unproductive and filled with nasty, unprofessional comments made by Duis about Steinhilber. My perception was that Duis did not take any ownership of the patient call-light incident and instead made excuses for the delay of the patient's pain medication because she was "busy."

12.     Duis's behavior during the May 10, 2019 meeting made me think that Duis would not provide compassionate, caring care to patients. Duis's attitude was very toxic and I was concerned about the fact that she was the face of our facility to the patients and their families.

13.     I reported Duis's concern that she was being targeted by Steinhilber to HR.

14.     I was involved in a meeting on May 14, 2019 to discuss Steinhilber's investigation into Duis's conduct on May 8, 2019 involving a patient call-light. Those present in that meeting included: Nita Wirkus, Steinhilber, Jessica Smosna and myself. This meeting will be referred to hereinafter as "the termination meeting".

15.     During the termination meeting, all present discussed the investigation that Steinhilber conducted, including all of the statements she gathered from various employees. Another topic of discussion was Duis's conduct during the May 10, 2019 meeting involving Duis, her mother, and myself.

3

16.     Everyone present at the termination meeting agreed that Duis's behavior on May 8, 2019 involving the patient call-light was directly contrary to Franciscan's values and mission and warranted termination.

17.     There was no mention of pregnancy, maternity leave, or FMLA during the termination meeting. There was also no discussion of any incident that occurred between Duis and Dawn Smith on April 11, 2019. Duis's termination was based solely on the call-light incident on May 8, 2019 and her behavior in response to this incident.

18.     I did not consider Duis's pregnancy or any future maternity leave or FMLA leave in my decision to support the termination of her employment.

I AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE FOREGOING

STATEMENTS ARE TRUE AND CORRECT.

Date: _Sept 9, 2021_     _Dawn Scott_

Dawn Scott, Chief Nursing Officer
Franciscan Alliance, Inc, a/k/a Franciscan Health Crown Point

KD_13486869_2.docx

5/1/19

I was advised by Marisa that there were 2 employees that wished to speak to me (in Travis' absence).

Tarin and another female were shown into my office. After the brief introductions, where I learned the woman accompanying Tarin was her mother, I asked Tarin what I could do for her. Her mother immediately stated, 'as long as she doesn't go into pre-term labor'. When I asked what she was referring to she replied that Tarin had had a miscarriage last year and was again pregnant. She then relayed a story of a couple of weeks ago when she didn't feel well at work and her manager followed up with her. Although I did not understand from the conversation they replayed the conversation to me, they apparently felt that Linda wasn't compassionate in her follow up.

The conversation then morphed to that Tarin had been 'suspended pending investigation and that she had a right to know why'. I advised her that I was aware that she had been suspended pending an investigation but that I was unaware of the details of why she had been suspended. I also advised her that for significant issues this was the usual HR process, that an employee would be suspended while an investigation occurred. I further advised her that her manager and HR would be contacting her with that information. During the ensuing conversation she brought this right to know concept up multiple times, each time very aggressively, and each time I responded that I did not know any specifics so was unwilling to comment. She further made multiple statements that she knew it was because she had made a comment about a patient call light, but she felt justified in that comment as she was busy. All these comments were made in an aggressive manner, making very derogatory statements regarding her manager.

She then stated she wanted to file a formal grievance regarding her new manager as she felt that she was being targeted. She believes Linda is actively 'out trying to get dirt on me' – that she knows no one is reporting her actions because she has asked them. She states Linda lies and just makes things up. I informed her that it was well within her right to file a grievance against Linda and that it would be investigated, but that I would like to do that through HR.

I did let her know that we as a leadership team at Franciscan were doing a lot of work to transform the overall culture to something more positive, respectful and patient centered. I let her know that I as a nursing leader would be supporting changes that helped drive that culture.

This conversation lasted approximately 15 minutes and in my opinion was very unproductive and filled with nasty remarks regarding Linda and the unit. I did not see any degree of ownership for poor behavior and saw no indication that with conversation and support she would even be willing to consider that some of her behaviors might need to change. And I certainly heard nothing that would make me think she would provide compassionate, caring care to patients. As a matter of fact I was quite struck by how toxic her attitude was and that I was gravely concerned that she was the face of our facility to the patient and their family.

*Dawn Scott*

**EXHIBIT A**

CONFIDENTIAL          Duis v. Franciscan (2:20-CV-00078-TLS-APR)          Franciscan000563
                              Produced August 21, 2020