

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

TARYN N. DUIS,           )
                               )
          **Plaintiff.**     )
    v.                     ) CAUSE NO: 2:20-CV-00078-PPS-APR
                               )
FRANCISCAN ALLIANCE INC., a/k/a  )
FRANCISCAN HEALTH CROWN    )
POINT                        )
          **Defendant.**    )
                               )
                               )

## PLAINTIFF'S EXHIBIT A

Plaintiff, Taryn N. Duis (hereinafter "Duis" or "Plaintiff"), by counsel and pursuant to

Northern District Local Rule 56.1, respectfully submits her Statement of Genuine Issues and

Statement of Additional Facts in opposition to Defendant's Motion for Summary Judgment.

### PLAINTIFF'S STATEMENT OF GENUINE DISPUTES[1]

1.  Although Steinhilber was Duis's supervisor, Duis testified that she "really didn't

know Linda" and that she only had about five minutes of interaction with her altogether.  [Def's

Statement of Material Facts p. 3; citing Duis Dep., p. 44, l. 24; *id* at pp. 69, l. 23 – 70, l. 4].

Dispute:  Duis disputes a portion of this allegation on the grounds that it reaches a

conclusion not supported by the record and is incomplete.  Duis testified that she had only seen

Linda four (4) or five (5) times during her employment.  [Ex. C, Duis Dep. p. 45, l. 21].

However, Duis held multiple meetings with Steinhilber and spoke with her on the phone on

---

[1]In response to Defendant's Motion for Summary Judgment and pursuant to N.D. Ind. L.R.
56.1(a), Plaintiff focuses only on disputed facts that are material to the arguments raised by
Defendant.  In the event that this cause is tried before a jury, Duis reserves the right to dispute
any and all facts as represented by Defendant.  Duis also submits a Statement of Additional Facts
which may be used to dispute Defendant's factual allegations.

multiple occasions.  [See Plaintiff's Statement of Additional Facts Sections C, E, and G].

2.       Steinhilber does not recall when or from whom she learned that Duis was

pregnant.  [Def's Statement of Material Facts p. 3; citing Steinhilber Dep. p. 35, ll. 5-25].

Dispute:  Duis disputes this allegation because if conflicts with Steinhilber's sworn

testimony.  In March of 2019 Linda Steinhilber (hereinafter "Steinhilber") became the nursing

manager for PCU and Duis's direct supervisor. [See Defendant's Memorandum of Law p. 3].

"Plaintiff advised Linda Steinhilber when they met in March of 2019 that she was pregnant and

likely would take leave when the baby was born." [Ex. G, Defendant's Response to Interrogatory

No. 4, pp. 4-5].  At that time Steinhilber was aware that Duis was pregnant, and Duis advised

Steinhilber that she was pregnant and would likely be taking leave in October when the baby was

born.  [Ex. C, Duis Dep. p. 71, ll.11-13; *id* at p. 102, ll. 13-18; *id* at p. 103, ll. 1-20; Ex. G.

Defendant's Interrogatory Response No. 4, pp. 4-5].

3.  Steinhilber also does not recall any mention by Duis or anyone else prior to Duis

termination about Duis planning to take maternity and/or FMLA leave.  (Def's Statement of

Material Facts p. 3; citing Steinhilber Dep., pp. 36, l. 1-37, l. 11)

Dispute:  Duis disputes this allegation in that it conflicts with Duis's,  Buchanan's, and

Steinhilber's testimony along with Defendant's response to Interrogatory No. 4, pp. 4-5.

"Plaintiff advised Linda Steinhilber when they met in March of 2019 that she was pregnant and

likely would take leave when the baby was born." [Ex. G, Defendant's Response to Interrogatory

No. 4, pp.4-5].  Furthermore, Steinhilber stated to Buchanan, in reference to Duis, "so you're

saying we don't hear anyone complaining about assignments or duties because of their

pregnancy or nobody ever said that I'm pregnant and can't do this or that they're not coming

back to work after a child being born." [Ex. F, Buchanan Aff.  ¶¶ 1, 3, 10, 11].  Duis's

termination form typed up by Steinhilber states "Taryn stated she said she couldn't wait until October to be on maternity leave." [Ex. E. Steinhilber Dep. p. 120, ll. 6-8; *id* at p. 124, ll. 11-16; Ex. 8 (p.1.)]. See also Response to Disputed Fact No. 2 above and Plaintiff's Statement of Additional Facts Sections C, G, and K.

4. Duis was due in October 2019, and there is no evidence that Duis requested maternity leave under the FMLA prior to her termination in May 2019. [Def's Statement of Material Facts p. 4; citing Duis Dep., pp. 102, l. 13-103, l. 11; *id* at p. 183, ll. 14-21].

Dispute: Duis disputes this allegation to the extent that it is misleading and erroneously assumes Duis did not make Defendant aware of her intent to take maternity / FMLA for the birth of her child. Steinhilber was aware that Duis was pregnant, and Duis advised Steinhilber that she was pregnant and would likely be taking leave in October when the baby was born. [Ex. C, Duis Dep. p. 71, ll. 11-13; *id* at p. 102, ll. 13-18; *id* at p. 103, ll. 1-20; Ex. G. Defendant's Interrogatory Response No. 4, pp. 4-5]. On May 9, 2019, when Duis was suspended Steinhilber admits Duis informed her of maternity leave. [Ex. E. Steinhilber Dep. p. 120, ll. 6-11]. During her termination meeting Duis asked whether she was being fired because she was pregnant and Smosna responded no it's not because you are pregnant, it's because you're taking maternity leave and FMLA. [Ex. C. Duis Dep. pp. 48, ll. 4-6; *id* at p. 52, ll. 16-19]. Smosna also told Duis told that they did not want her to take leave, and that Defendant did not believe Duis would return to work after having her baby and FMLA. [Exhibit C, Duis Dep. p. 52, ll. 19-22; id at p. 108, ll. 14-22]. Steinhilber typed up Duis's termination form stating "Taryn stated she said she couldn't wait until October to be on maternity leave." [Ex. E. Steinhilber Dep. p. 120, ll. 6-8; *id* at p. 124, ll. 11-16; Ex. 8 (p.1.)].

5. During the conversation, Steinhilber advised Duis that if she had concerns about

Smith she should go to Human Resources.  (Def's Statement of Material Facts pp. 3-4; citing Steinhilber Dep., p. 46, ll. 21-25; Steinhilber Aff. ¶ 13).

    <u>Dispute:</u>  Duis disputes a portion of this allegation on the grounds that it reaches a conclusion not supported by the record.  Specifically, Steinhilber called Duis and instructed her to go down to Human Resources and tell them that RN Dawn Smith (Smith) caused a confrontation and attacked Duis in the nursing station which caused Duis's panic attack.  [Ex. C, Duis Dep. p. 55, ll. 21-25; *id* at p. 57, ll. 22-25; *id* at p. 58, ll. 1-11].  Steinhilber asked Duis to lie and to tell Human Resources that Smith started a fight with Duis despite the fact there was no such confrontation.  [Ex. C, Duis Dep. p. 60, ll. 16-25; *id* at p. 61, ll. 1-11, *id* at p. 128, ll. 4-24; *id* at p. 129, ll. 1-16].  Duis told Steinhilber that it was not true that Smith started a fight with her yet Steinhilber told her "well, you're gonna say it anyway."  [Ex. C, Duis Dep. p. 61, ll. 9-11].  See also Plaintiff's Statement of Additional Facts Section C.

    6.  It was both Steinhilber's and Thatcher-Curtis's understanding from their conversations with Duis about Smith at the time that there had in fact been some sort of conflict between the two during the April 11 shift that pushed Duis to have an anxiety attack.  (Def's Statement of Material Facts p. 5; citing Steinhilber Aff., ¶ 12; Thatcher-Curtis Aff., ¶ 9, 11).

    <u>Dispute:</u>  This is a material fact in dispute.  Duis refused to lie and told them there was no confrontation.  [Ex. C, Duis Dep. p. 60, ll. 9-10].  See Response to Disputed Fact Nos. 3 and 5 above as well as Plaintiff's Statement of Additional Facts Sections C and D.

    7.  Not only to Steinhilber and Thatcher-Curtis disagree that Steinhilber engaged in this behavior, but according to Thatcher-Curtis, had Steinhilber in fact engaged in such behavior he would issue corrective action to her.  (Def's Statement of Material Facts p. 5; citing Steinhilber Aff., ¶13; Thatcher-Curtis Aff., ¶¶ 9, 11)

Dispute: This is a fact in dispute. Steinhilber engaged in this behavior. Steinhilber then got upset with Duis and mocked Duis stating "oh, I have to call the doctor for myself to the floor. I can't handle my job because I am pregnant." [Ex. C, Duis Dep. p. 61, ll. 23-25; *id* at p. 62, ll. 1-8]. Steinhilber also told Duis that she couldn't do her job because she was pregnant. [Tab C, Duis Dep. p. 62, ll. 16-17 / 22-24; *id* at p. 179, l. 25; *id* at p. 180, ll. 1-3; *id* at p. 181, ll. 9-14]. See also Response to Disputed Fact Nos. 5 and 6.

8. It was reported that Duis's response was "I don't give a fuck if that patient wants pain meds. He can wait. He should have taken it before." (*Id*). It was further reported to Steinhilber that there was a resulting delay in administering pain medications to the patient. (Def's Statement of Material Facts p. 6; citing Steinhilber Dep., pp. 62, l. 8 – 64, l. 24).

Dispute: Objection. Hearsay to the extent that the witness statement is being used to prove the truth of the matter asserted. Furthermore, Duis disputes the allegation on the grounds that it reaches a conclusion not supported by the record. Duis did not refuse to give a patient pain medication nor use profanity. [Ex. C, Duis Dep. p. 72, ll. 18-24; *id* at p. 73, ll. 1-5; *id* at p. 82, ll. 1-18; *id* at p. 141, ll. 9-13; Ex. F. Buchanan Aff. ¶¶ 4-5, 9]. Duis told Steinhilber that she did not make that statement. [Ex. C, Duis Dep. p. 82, ll. 17-18; *id* at p. 141, ll. 9-13]. Buchanan also told Steinhilber the incident regarding medication did not occur. [Ex. F. Buchanan Aff. ¶¶ 3-5, 9] See also Plaintiff's Statement of Additional Facts Sections C-D and H-K.

9. Steinhilber immediately begin investigation this incident through employee interviews. (Steinhilber Aff., ¶ 18). Steinhilber received written statements from two employees, Jen Justice ("Justice") and Christine Rogalski ("Rogalski") regarding the patient call-light incident. (Steinhilber Aff., ¶¶ 18 at Exhibit A, 20).

Dispute:  See Objections and Response to Disputed Fact Nos. 7 and 8 above.

10. Justice reported that when Duis learned that her patient was requesting pain medication, Duis said, "I don't give a fuck it that patient wants s (sic) pain meds. He can wait. He should have taken it before." (Def's Statement of Material Facts p. 6; citing Steinhilber Aff., ¶¶ at Exhibit A, 20).

Dispute: See Objections and Response to Disputed Fact No. 8 above. See also Plaintiff's Statement of Additional Facts Sections I and J.

11. Rogalski reported that she recalled hearing Duis state that the patient would have to wait for pain medication but could not recall Duis's exact words. (Def's Statement of Material Facts p. 6; citing Steinhilber Aff., ¶¶ at Exhibit A, 20). Rogalski also stated that Duis has stated in the nurse's station that "she hates being a nurse and doesn't know if she's coming back after October." (Def's Statement of Material Facts p. 6; citing Steinhilber Aff., ¶¶ at Exhibit A, 20).

Dispute: See Objections and Response to Disputed Fact No. 8 above. See also Plaintiff's Statement of Additional Facts Sections I and J.

12. As Steinhilber was investigation Duis's conduct, employees provided statements relating to other unfavorable interactions with Duis. (Def's Statement of Material Facts p. 6; citing Steinhilber Dep., pp. 80, l. 25 – 81, l. 2; *id* at pp. 95, l. 14 – 106, l. 8). These statements confirmed the culture problem within the IMCU that Steinhilber was tasked to remedy. (Def's Statement of Material Facts p. 6; citing Steinhilber Aff., ¶¶ at Exhibit A, 20).

Dispute: Objection. Hearsay to the extent that the witness statement is being used to prove the truth of the matter asserted. Steinhilber's believe as to an alleged culture problem may be viewed as pretext and not worthy of credence by a jury. Duis did not engage in any terminable offense. (See Plaintiff's Statement of Additional Facts Sections H-K. In addition, see Objections and Response to Disputed Fact No. 8 above.

13.  For example, Steinhilber received a statement from Heather Wyatt ("Wyatt) regarding the float pool staff reporting to Wyatt, as their supervisor, that they did not want to work in the IMCU due to "negativity and the behavior of the nurses including Taryn Duis." (Def's Statement of Material Facts p. 6; citing Steinhilber Aff., ¶¶ at Exhibit A, 20).

<u>Dispute</u>:  Objection.  Hearsay to the extent that the witness statement is being used to prove the truth of the matter asserted.  Steinhilber's belief as to an alleged culture problem may be viewed as pretext and not worthy of credence by a jury.  In addition, see Objections and Response to Disputed Fact No. 8 above along with Plaintiff's Statement of Additional Facts Sections C-D and H-K.

14.  Another statement Steinhilber received was from Snow regarding Duis's demeanor, which stated Duis had said she "hates being a nurse and doesn't want to come back after October." (Def's Statement of Material Facts p. 6; citing *Id;* Steinhilber Dep., pp. 65, l. 20 – 66, l. 12).

<u>Dispute</u>:  Objection.  Hearsay to the extent that the witness statement is being used to prove the truth of the matter asserted.  Steinhilber's belief as to an alleged culture problem may be viewed as pretext and not worthy of credence by a jury.  In addition, see Objections and Response to Disputed Fact No. 8 above along with Plaintiff's Statement of Additional Facts Sections C-D and H-K.

15.  Lastly, Steinhilber received a statement from Carrie Renchen regarding Duis's behavior during a uniform fitting describing that Duis was "loud and argumentative with staff assisting with the fitting."  (Def's Statement of Material Facts p. 7; citing Steinhilber Aff., ¶¶ at Exhibit A, 20).

<u>Dispute</u>:  Objection.  Hearsay to the extent that the witness statement is being used to

prove the truth of the matter asserted.  Steinhilber's belief as to an alleged culture problem may be viewed as pretext and not worthy of credence by a jury.  In addition, see Objections and Response to Disputed Fact No. 8 above along with Plaintiff's Statement of Additional Facts Sections C-D and H-K.

16.  As a result of the information received regarding Duis's behavior the night of May 8, 2019, Duis's employment was suspended pending investigation on May 9, 2019. (Def's Statement of Material Facts p. 7; citing Smosna Aff., ¶¶ 10-11).

Dispute:  Duis disputes this allegation to the extent Duis's suspension was lawful because it conflicts with Duis's and Buchanan's sworn testimony, which must be accepted as true for purposes of summary judgment.  Duis was only suspended after refusing to lie about a co-worker (See Plaintiff's Statement of Additional Facts Section. C), after she was subjected to discriminatory comments by Steinhilber regarding her pregnancy (See Plaintiff's Statement of Additional Facts Section C), and after her co-worker confirmed that alleged misconduct did not occur. (See Plaintiff's Statement of Additional Facts Section D).  See also Objections and Responses to Disputed Fact Nos. 4-5 and 7-8 along with Plaintiff's Statement of Additional Facts Sections E-K.

17.  Duis was read each statement that was provided to Steinhilber during the investigation to allow her the opportunity to provide a response.  (Def's Statement of Material Facts p. 7; citing Steinhilber Aff., ¶¶ 18 at Exhibit A, 21).

Dispute:  Objection.  Hearsay to the extent that the witness statement is being used to prove the truth of the matter asserted.  See Response to Disputed Facts No. 8 and 16.

18.  However, Duis admitted that she had said she hated her job and also admitted that it's possible that she did not want to come back after October. (Def's Statement of Material

Facts p. 7; citing Duis Dep., p. 133, ll. 4-9).

Dispute: Duis disputes this allegation to the extent it misstates Duis's cited testimony and that it reaches a conclusion not supported by the record. Duis stated that she said she can't wait until October. [Ex. C. Duis Dep. p. 133, ll. 4-6]. According to Steinhilber, Duis informed her that she couldn't wait to go on maternity leave. [Ex. E, Steinhilber Dep. p. 120, ll. 6-11].

19. Overall, Scott found the 15-minute conversation to be unproductive and filled with nasty, unprofessional comments by Duis about Steinhilber. ((Def's Statement of Material Facts pp. 7-8; citing Scott Aff., ¶¶ 8-9, 8 at Exhibit A; Scott Dep., pp., l. 8 – 34, l. 16).

Dispute: Duis disputes this allegation because it conflicts with Duis's sworn testimony which must be accepted as true for purposes of summary judgment. Duis engaged in protected activity under Title VII when she met with Scott. On May 10, 2019, Duis met with Scott and informed her that she was pregnant. [Exhibit D, Scott Dep. p. 30, ll. 3-10]. Duis relayed to Scott everything that was said in her April 19th meeting with Steinhilber and Thatcher-Curtis including what Steinhilber had said regarding her pregnancy. [Ex. C, Duis Dep. p. 76, ll. 1-3; *id* at p. 77, ll. 20-25 *id* at p. 78, ll. 1-3; *id* at p. 79, ll. 10-11]. Specifically, Duis also told Scott that Steinhilber was retaliating against her for refusing to lie to Human Resources about fellow-coworker, Dawn Smith, and informed Scott about comments Steinhilber had made to her regarding Duis's pregnancy and how Steinhilber had mocked her pregnancy. [Ex. C, Duis Dep. p. 75, ll. 18-25; *id* at p. 76, ll. 1-3, 12-15]. Scott herself admits that Duis told her she was being targeted and harassed by Steinhilber and that Steinhilber was trying to get dirt on Duis. [Ex. D, Scott Dep. p. 35, ll. 15-17; *id* at p. 38, ll. 1-5]. See also Plaintiff's Statement of Additional Facts Sections F-K.

20. Further, it upset Scott that Duis made excuses for the delay of the patient's pain

medication, stating that she was "busy." (Def's Statement of Material Facts p. 8; citing Scott Dep., p. 35, ll 2-3).

Dispute:    This is a fact in dispute.  According to Scott, failing to answer a call light untimely is not grounds for immediate termination since sometimes nurses get busy and cannot answer every call light.  [Ex. D, Scott Dep. p. 51, ll. 20-25].  As Scott explained, sometimes patients constantly want nurses attention even when attention is not needed.  [Ex. D, Scott Dep. p. 52, ll. 1-4].  Here, no patient complaint was made regarding the call light and no patient suffered a health issue because of a call light not being answered.  [Ex. D. Scott, Dep. p. 63, ll. 24-25; id at p. 64. Ll. 1-9]. See also Response to Disputed Fact Nos. 8, 16, and 19.

21.  Scott immediately typed up her notes from this meeting and noted, "…I certainly heard nothing that would make me think she would provide compassionate, caring care to patients.  As a matter of fact[,] I was quite struck by how toxic her attitude was and that I was gravely concerned that she was the face of our facility to the patient and their family." (Def's Statement of Material Facts p. 8; Scott Aff., ¶ 8 at Exhibit A; Scott Dep., p. 51, ll. 3-11).

Dispute:  Duis disputes this allegation because it conflicts with Duis's sworn testimony which must be accepted as true for purposes of summary judgment.  Duis engaged in protected activity under Title VII.  See Responses to Disputed Facts Nos. 8 and 19.  See also Plaintiff's Statement of Additional Fact Section F.

22.  It was Scott's understanding that Duis felt Steinhilber was targeting her because Steinhilber was allegedly trying to get employees to say bad things about Duis during the investigation. (Def's Statement of Material Facts p. 8; citing Scott Dep., pp. 438, l. 16-39, l. 2).

Dispute:  Duis disputes this allegation because it conflicts with Duis's sworn testimony which must be accepted as true for purposes of summary judgment.  Duis engaged in protected

activity under Title VII. See Response to Disputed Fact Nos. 8 and 19 along with Plaintiff's Statement of Additional Facts Section F.

23. Scott does not recall any statement by Duis during their meeting that Duis felt Steinhilber was targeting her due to her pregnancy or future maternity leave or FMLA leave. (Def's Statement of Material Facts p. 8; citing Scott Dep., pp. 35, l. 18 – 36, l. 3; *id* at p. 37, ll. 3-7; *id* at pp. 45, l. 22 – 46, l. 9; *id* at p. 56, ll. 2-6)).

Dispute: Duis disputes this allegation because it conflicts with Duis's sworn testimony which must be accepted as true for purposes of summary judgment. Duis engaged in protected activity under Title VII. Duis relayed to Scott everything that was said in her April 19th meeting with Steinhilber and Thatcher-Curtis including what Steinhilber had said regarding her pregnancy. [Ex. C, Duis Dep. p. 76, ll. 1-3; *id* at p. 77, ll. 20-25 *id* at p. 78, ll. 1-3; *id* at p. 79, ll. 10-11]. See Response to Disputed Fact No. 19. See also Plaintiff's Statement of Additional Facts Sections C-K.

24. Franciscan concluded that Steinhilber was not improperly targeting Duis but rather asking questions about Duis as part of her investigation into the patient call-light incident. (Def's Statement of Material Facts p. 8; citing Scott Dep., pp. 38, l. 13 – 39, l. 2).

Dispute: Duis disputes this allegation because it conflicts with Duis's and Buchanan's sworn testimony as well as reaching a conclusion not supported by the entire record thereby violating the standard of summary judgment. In addition See Response to Disputed Fact Nos. 8, 16, and 19 along with Plaintiff's Statement of Additional Facts Sections A-K.

25. Scott described Duis as "one of the most toxic individuals I had ever met, and [Scott] was very uncomfortable continuing to have [Duis] care for patients." (Def's Statement of Material Facts p. 9; citing Scott Dep., p. 60, ll. 6-10).

Dispute: Duis disputes this allegation because it conflicts with Duis's sworn testimony which must be accepted as true for purposes of summary judgment. Duis engaged in protected activity under Title VII. See Response to Disputed Fact Nos. 7, 8, 16, 19, and 23. See also Plaintiff's Statement of Additional Facts Sections A-K.

26. In Duis's termination paperwork, all of the statements about Duis received during the investigation are described and Duis's responses are noted. (Def's Statement of Material Facts p. 9; citing Steinhilber Aff., ¶ 18 at Exhibit A).

Dispute: Objection. Hearsay to the extent that the witness statement is being used to prove the truth of the matter asserted. Duis disputes this allegation to the extent Duis's suspension and termination was lawful because it conflicts with Duis's and Buchanan's sworn testimony, which must be accepted as true for purposes of summary judgment. See Response to Disputed Fact Nos. 7, 8, 16, 19 and 23. Finally, even if the allegations were true, which they are not, Steinhilber has provided more favorably treatment to similarly situated employees under her supervision who were not pregnant, intending to take FMLA / maternity leave, and/or who reported discrimination. (See Plaintiff's Statement of Additional Facts Section K.).

27. The termination decision was a collaborative conversation that every person in the meeting agreed was the appropriate course of action. (Def's Statement of Material Facts p. 9; citing Scott Dep., p. 24, ll. 5-24; *id.* at p. 26, ll. 3-21).

Dispute: Duis disputes this allegation on the grounds that it reaches a conclusion not supported by the record and conflicts with sworn testimony which must be accepted as true for purposes of summary judgment. Steinhilber was in charge of the investigation into Duis. [Ex. E, Steinhilber Dep. p. 88, ll. 14-16]. According to Scott, grounds for termination would be based on information Scott received from Steinhilber. [Ex. D, Scott Dep. p. 64, ll. 13-20]. Scott has

always agreed with the discipline Steinhilber or Travis Scott recommended for employees underneath their supervision. [Exhibit D, Scott Dep. pp. 66, ll. 20-25; *id* at p. 67, l. 1]. According to Steinhilber, she recommended that Duis be terminated and every employee that she has recommended for termination has been fired. [Ex. E, Steinhilber Dep. p. 94]. In sum, Steinhilber admits that she started the investigation into Duis, was in charge of the investigation, and her investigation led to the termination of Duis. [Ex. E, Steinhilber Dep. p. 66, ll. 13-23]. See also Plaintiff's Statement of Additional Facts Sections A-K.

28. At no time during the meeting was there any discussion of Duis's pregnancy, upcoming medical leave, including under the FMLA, or whether there had or had not been any conflict or incident between Duis and Smith. (Def's Statement of Material Facts p. 9; citing Scott Dep., p. 72, ll. 4-9; *id*. at pp. 72, l. 24 – 73, l. 8; Steinhilber Aff., ¶¶ 24-26; Smosna Aff., ¶¶ 14-17; Wirkus Aff., ¶¶ 24-27).

Dispute: Duis disputes this allegation on the grounds that it reaches a conclusion not supported by the record and conflicts with sworn testimony which must be accepted as true for purposes of summary judgment. On May 14, 2019, Steinhilber, by phone, called Duis and informed her that Duis was excited about her pregnancy and it showed that she did not value her job, and that Duis cared more about her family and her pregnancy than her job which did not coincide with Franciscan's values. [Exhibit C, Duis Dep. p. 47, ll. 15-21]. Duis then asked whether she was being fired because she was pregnant and Smosna responded no it's not because you are pregnant, it's because you're taking maternity leave and FMLA. [Ex. C. Duis Dep. p. 48, ll. 4-6; *id* at p. 52, ll. 16-19]. Smosna told Duis told that they did not want her to take leave. [Exhibit C, Duis Dep. p. 108, ll. 14-22]. Duis was also told that they did not believe that she would return to work after having her baby and FMLA which Duis denied. [Ex. C, Duis Dep. p.

52, ll. 19-22]. Duis told them she did not understand why she was being terminated when she had never had an issue in four years of employment yet in one month since Steinhilber got there everything suddenly changed. [Ex. C. Duis Dep. p. 53, ll. 2-9]. No one mentioned anything about getting along with co-workers, patient care, or not giving pain medication. [Ex. C. Duis Dep. p. 53, ll. 10-17]. Steinhilber typed up Duis's termination form stating "Taryn stated she said she couldn't wait until October to be on maternity leave." [Ex. F. Steinhilber Dep. p. 120, ll. 6-8; *id* at p. 124, ll. 11-16; Ex. 8 (p.1.)]. See Responses to Disputed Fact Nos. 7, 8, 16, and 23 along with Plaintiff's Statement of Additional Facts Sections A-K).

29. Thatcher-Curtis also approved the termination decision, again without any discussion of any incident between Duis and Smith, Duis's pregnancy, or any pregnancy or FMLA leave Duis might take in the future. (Def's Statement of Material Facts p. 9; citing Thatcher-Curtis Aff., ¶ 15),

Dispute: Duis disputes this allegation on the grounds that it reaches a conclusion not supported by the record and conflicts with sworn testimony which must be accepted as true for purposes of summary judgment. According to Steinhilber, she recommended that Duis be terminated and every employee that she has recommended for termination has been fired. [Ex. F, Steinhilber Dep. p. 94, ll. 4-7]. See Response to Disputed Fact Nos. 27 and 28.

30. During this phone call, Duis was informed of the reasons for termination, and it was confirmed that she was not being terminated because she was pregnant. (Def's Statement of Material Facts p. 9; citing Duis Dep., pp. 47, l. 3 – 48, l. 10; Smosna Aff., ¶¶ 19-20).

Dispute: Duis disputes this allegation on the grounds that it reaches a conclusion not supported by the record and conflicts with sworn testimony which must be accepted as true for purposes of summary judgment. See Response to Disputed Fact Nos. 27 and 28.

31. Duis's employment was terminated for unsatisfactory work performance and unsatisfactory work behavior, specifically her response to the patient call-light and inappropriate behavior during her meeting with Scott. (Def's Statement of Material Facts pp. 9-10; citing Steinhilber Aff., ¶ 18 at Exhibit A; Scott Dep., p. 40, ll. 21-24)

Dispute: Duis disputes this allegation on the grounds that it reaches a conclusion not supported by the record and conflicts with sworn testimony which must be accepted as true for purposes of summary judgment. Duis did not refuse to give a patient pain medication nor use profanity. [Ex. C, Duis Dep. p. 72, ll. 18-24; id at p. 73, ll. 1-5; id at p. 82, ll. 1-18; id at p. 141, ll. 9-13; Ex. F. Buchanan Aff. ¶¶ 4-5, 9]. Moreover, Duis's meeting with Scott was protected conduct. See Plaintiff's Statement of Additional Facts Section F. See Response to Disputed Facts Nos. 1-30 along with Plaintiff's Statement of Additional Facts Sections A-K.

## PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

**A.    Duis's Employment with Defendant:**

Duis was hired by Franciscan Alliance, Inc, a/k/a Franciscan Health Crown Point (hereinafter "Defendant") in July of 2015. [Ex. B, Answer ¶ 9]. Duis worked as both a Registered Nurse ("RN") and a Charge Nurse in the Progressive Care Unit ("PCU") for Defendant. [Ex. C, Duis Dep. p. 41, ll. 20-25; id at 42, ll. 1-2; Ex. E, Steinhilber Dep. p. 27, l. 12]. A charge nurse oversees the entire unit, helps problem solve, assists nurses, and manages the floor. [Ex. C, Duis Dep. p. 56, 11. 10-11; Ex. D, Scott Dep. p. 21, ll. 7-14; Ex. E, Steinhilber Dep. p. 27, ll. 14-20]. In March of 2019 Linda Steinhilber (hereinafter "Steinhilber") became the nursing manager for PCU and Duis's direct supervisor. [See Defendant's Memorandum of Law p. 3]. At that time Steinhilber was aware that Duis was pregnant, and Duis advised Steinhilber that she was pregnant and would likely be taking leave in October when the

baby was born. [Ex. C, Duis Dep. pp. 71, ll.11-13; *id* at p. 102, ll. 13-18; *id* at p. 103, ll. 1-20;

Ex. G. Defendant's Interrogatory Response No. 4, pp. 5].

**B.      Steinhilber's Broad Authority as Nursing Manager:**

Steinhilber reported to Nursing Director Travis Thatcher-Curtis ("Thatcher-Curtis") who

in turn reported to Chief Nursing Officer Dawn Scott ("Scott"). [Ex. D, Scott Dep. p. 7, ll. 2-3;

*id* at p.10, ll. 1-16].    Nursing managers have the authority to discipline employees including

written warnings and corrective action plans with approval from human resources. [Ex D, Scott

Dep. p. 14, ll. 3-25; *id* at p. 15, ll. 1-11; Ex. E, Steinhilber Dep. p. 22, ll. 2-6; *id* at p. 23, ll. 4-15].

Steinhilber also has the authority to suspend employees. [Tab D, Scott Dep. p. 14, ll. 7-10].

Every time Steinhilber has written up a warning for approval or discipline for an employee it has

been approved. [Ex. D, Scott Dep. p. 17, ll. 21-25, *id* at p. 18, ll. 1-3, *id* at p. 19 ll. 1-3; Ex. E,

Steinhilber Dep p. 24, ll. 2-15]. If an RN under the supervision of Steinhilber is terminated then

Scott may be aware of it but is not necessarily part of the decision and sometimes finds out after

the fact. [Ex. D, Scott Dep. p. 88, ll. 20-25;  *id*  at p. 89, ll. 1-17].

**C.      Steinhilber Orders Duis to Engage in Misconduct:**

On April 11, 2019, Duis was working the night shift as a charge nurse on a shift that was

extremely understaffed and slammed with admissions /critical patients. [Ex. C, Duis Dep. p. 55,

l. 25; *id* at p. 56, ll. 1-14]. During this shift, a hospitalist assessed Duis and informed her that she

was having a pretty bad anxiety attack. Duis was told to go home for the night since she was

pregnant and had a miscarriage earlier that year. [Ex. C. Duis Dep. p. 57, ll. 2-11]. The next

day, Steinhilber called Duis and instructed her to go down to Human Resources and tell them

that RN Dawn Smith (Smith) caused a confrontation and attacked Duis in the nursing station

which caused Duis's panic attack. [Ex. C, Duis Dep. p. 55, ll. 21-25; *id* at p. 57, ll. 22-25; *id* at

p. 58, ll. 1-11]. In essence, Steinhilber ordered Duis to lie to Human Resources and defame a fellow nurse (Smith) that she had started a fight with Duis despite the fact there was no such confrontation. [Ex. C, Duis Dep. p. 60, ll. 16-25; *id* at p. 61, ll. 1-11, *id* at p. 128, ll. 4-24; *id* at p. 129, ll. 1-16].

Steinhilber wanted Duis to say something that was not true and a lie. [Ex. C, Duis Dep. p. 128, 11. 16-25; *id* at p. 129, ll. 1-16]. Steinhilber told Duis that since she had previously worked with Smith at Porter Hospital it would not look good if Steinhilber told that stuff to Human Resources. [Ex. C, Duis Dep. p. 58, ll. 7-11; Ex. E, Steinhilber Dep. p. 9, ll. 3-6; *id* at p. 127, ll. 3-7]. Duis told Steinhilber that it was not true that Smith started a fight with her yet Steinhilber told her "well, you're gonna say it anyway." [Ex. C, Duis Dep. p. 61, ll. 9-11].

On April 19, 2019, Duis met with Steinhilber and Thatcher-Curtis. Steinhilber asked Duis to tell them about the confrontation with Smith. [Ex. C, Duis Dep. p. 60, ll. 6-9]. Duis refused to lie and told them there was no confrontation. [Ex. C, Duis Dep. p. 60, ll. 9-10]. Steinhilber then got upset with Duis and mocked Duis stating "oh, I have to call the doctor for myself to the floor. I can't handle my job because I am pregnant." [Ex. C, Duis Dep. p. 61, ll. 23-25; *id* at p. 62, ll. 1-8]. Steinhilber also told Duis that she couldn't do her job because she was pregnant. [Tab C, Duis Dep. p. 62, ll. 16-17, 22-24; *id* at p. 179, l. 25; *id* at p. 180, ll. 1-3; *id* at p. 181, ll. 9-14]. Notably, Steinhilber cannot deny that this meeting occurred but cannot recall the specifics of the meeting. [Ex. E, Steinhilber Dep. p. 50, ll. 3-9; id at p. 51, ll. 6-10; *id* at p. 78, ll. 19-24]

**D.    Steinhilber Goes Fishing:**

Kim Buchanan worked for Defendant in the position of Nurse Technician / Patient Care Assistant ("PCA") within the Progressive Care Unit ("PCU") and reported to Steinhilber. [Ex.

E, Steinhilber Dep. p. 54; Ex. F, Buchanan Aff. ¶ 1]. Throughout the months of April and May

of 2019 Buchanan routinely worked the same night shift as Duis, and was routinely assigned the

same patients. [Ex. F, Buchanan Aff. ¶ 3]. On or about May 7, 2019, a new patient was assigned

to Duis and Buchanan. Buchanan reported to Duis that a family member had requested that the

patient wanted pain medication. [Id at ¶ 4]. Duis explained to Buchanan that the patient would

have to wait a moment until Duis received the medication order(s) from the doctor since the

patient had just come up as a new patient from the emergency room. [Id at ¶ 4]. Buchanan then

went back to the patient's room to explain what was going on to the patient. [Id at ¶ 4].

As Buchanan was providing the update to the patient, Duis entered the room with the

pain medication, apologized to the patient, and explained why there was a wait regarding the

medication. [Id at ¶ 5]. The patient received the medication and did not voice any displeasure

towards Duis or Buchanan. [Id at ¶ 5]. After the family notified Buchanan of the request for

pain medication, the patient received the medication within approximately ten (10) minutes. [Id

at ¶ 5]. Thus, any delay was due to waiting on the doctor's order. [Id at ¶ 4]. At the end of the

shift, Steinhilber, approached Buchanan and questioned Buchanan as to problems on the floor

with nurses and as to which nurse was being rude to a patient and/or was not a team player. [Id

at ¶¶ 6, 7]. Buchanan informed Steinhilber that she did not know what she was talking about. [Id

at ¶ 8] In response, Steinhilber asked Buchanan "what about Taryn?" Buchanan responded that

"Taryn is a good worker." [Id at ¶ 8]. Steinhilber replied, "I can't fix it if you don't tell me the

truth." [Id at ¶ 8]. Buchanan then told Ms. Steinhilber, "can't say something that didn't

happen." [Id at ¶ 8].

Steinhilber also accused Duis of not providing pain medications which Buchanan

explained to her did not occur. [Id at ¶ 9]. As their conversation continued Steinhilber became

increasingly angry, stomped her foot and stated "so you're saying we don't hear anyone complaining about assignments or duties because of their pregnancy or nobody ever said that I'm pregnant and can't do this or that they're not coming back to work after a child being born." [Id at ¶ 10]. In response Buchanan stated "no." [Id at ¶ 10]. According to Buchanan, it was evident that Steinhilber's questions were specifically in reference to Duis as she was the only pregnant RN that reported to Ms. Steinhilber. [Id at ¶ 11]. It was also evident to Buchanan that Steinhilber wanted Buchanan to say something bad about Duis even if it wasn't true. [Id at ¶ 12]. Steinhilber's tone and demeanor was threatening and it made Buchanan very uncomfortable considering that she had only had approximately two (2) short conversations with her prior to this interaction. [Id at ¶ 12]. According to Buchanan, Duis was a team player who provided her patients with the highest level of care. [Ex. F, Buchanan Aff. ¶¶ 8, 16]. According to Buchanan it was clear from her interaction with Steinhilber that Steinhilber did not want Duis to remain employed since Duis was pregnant and expecting to go on a maternity leave. [Id at ¶ 17]. Notably, Scott admits that it would have been important in the investigation into Duis if there were nurses that said this was being made up and that it was a lie with regards to alleged misconduct by Duis. [Ex. D, Scott Dep. p. 39, ll. 21-25; id at p. 40, ll. 1-8]. According to Steinhilber, if Buchanan was on the night shift she would have spoken with her regarding Duis. [Ex. E, Steinhilber Dep. p. 70, ll. 4-13].

**E.    Duis is Suspended by Steinhilber:**

On May 9, 2019, Steinhilber called Duis on the phone and informed her she was suspended. [Ex. C, Duis Dep. p. 48, ll. 22-23]. Steinhilber made the decision to suspend Duis prior to speaking with her. [Ex. E, Steinhilber Dep. p. 80, ll. 5-21]. According to Steinhilber, she did not start her investigation into Duis due to allegations of medication delay but rather

because of the reported incidents between Smith and Duis. [Ex. E, Steinhilber Dep. p. 65, ll. 12-14].   Steinhilber asked Duis if she had refused to give a patient pain medication or if she had made a patient wait for pain medication because she did not feel like giving it to them.  Duis replied that she had not. [Ex. C, Duis Dep. p. 72, ll. 18-24; *id* at p. 73, ll. 1-5]. According to Steinhilber, Duis informed her that she couldn't wait to go on maternity leave. [Ex. F, Steinhilber Dep. p. 120, ll. 6-11].  On May 10, 2019, Steinhilber and Jessica Smosna (Human Resources) called Duis and informed her that she was suspended for refusing to give a patient pain medication and because she had used curse words. [Ex. C, Duis Dep. p. 50, ll. 20-23]. Steinhilber informed Duis that she had said in the nursing station "I'm not fucking giving fucking pain medication to that patient at all." [Ex. C, Duis Dep. p. 82, ll. 1-18].  Duis told Steinhilber that she did not make that statement. [Ex. C, Duis Dep. p. 82, ll. 17-18; *id* at p. 141, ll. 9-13]. Duis also relayed to them she felt she was being targeted. [Ex. C, Duis Dep. p. 133, ll. 10-11; Ex. E. Steinhilber Dep. p. 81, ll. 3-5].   Upon being suspended Duis texted Thatcher-Curtis and informed him that she was being bullied and harassed by Steinhilber and that she would be speaking with Human Resources tomorrow.  [See Defendant's Motion for Summary Judgment Designation of Evidence 4A].

Steinhilber was in charge of the investigation into Duis. [Ex. E, Steinhilber Dep. p. 88, ll. 14-16].  After Duis was suspended, and prior to Duis's termination, Steinhilber did nothing else with regard to the investigation into Duis, including speaking with other employees or witnesses, asking Duis whether she had any other witnesses, or even reviewing Duis's past performance evaluations or personnel file. [Ex. E. Steinhilber Dep. p. 30, ll. 18-25; *id* at p. 86, ll. 14-22; *id* at p. 94, ll. 8-11; *id* at p. 106, ll. 19-23; *id* at p. 113, ll. 18-20; *id* at p. 115, ll. 7-14].  Indeed, Steinhilber, after she suspended Duis, did not speak to Duis until she was terminated. [Ex. E.

Steinhilber, Dep. p. 114, ll. 19-22].

**F.      Duis Engages in Statutorily Protected Conduct:**

On May 10, 2019, Duis met with Scott and informed her that she was pregnant.  [Exhibit D, Scott Dep. p. 30, ll. 3-10].   Duis also told Scott that Steinhilber was retaliating against her for refusing to lie to Human Resources about Smith, and informed Scott about comments Steinhilber had made to her regarding Duis's pregnancy and how Steinhilber had mocked her pregnancy. [Ex. C, Duis Dep. p. 75, ll. 18-25; *id* at p. 76, ll. 1-3, 12-15].  Duis relayed to Scott everything that was said in her April 19th meeting with Steinhilber and Thatcher-Curtis including what Steinhilber had said regarding her pregnancy.  [Ex. C, Duis Dep. p. 75, ll. 18-25; *id* at p. 76, ll. 1-3; *id* at p. 77, ll. 20-25; *id* at p.78, ll. 1-3; *id* at p.  79, ll. 10-11].  Scott herself admits that Duis told her she was being targeted and harassed by Steinhilber and that Steinhilber was trying to get dirt on Duis.  [Ex. D, Scott Dep. p. 35,  ll. 15-17; *id* at p. 38, ll. 1-5].  Scott only found out that Duis had been suspended after the fact and had no role in the suspension.  [Ex. D, Scott Dep. p. 25, ll. 14-16; *id* at p. 48, ll. 15-18; *id* at p. 53, ll. 15-18].  Scott's only interaction with Duis was this meeting and never spoke with her again.  [Ex. D, Scott Dep. p. 50, ll. 19-23; *id*  at p. 66, ll. 10-12].  According to Scott, if an employee has a problem with a supervisor or believes they are being discriminated against they can talk to her.  [Ex. D, Scott Dep. p. 83, ll. 16-23].  In addition, Scott testified Steinhilber and Smosna were responsible for investigating Duis.  [Ex. D, Scott Dep. p. 27, ll. 7-10; p. 47, ll. 10-16].  Scott also admits that if an individual believes they are being discriminated against by a supervisor it is not appropriate to have that supervisor investigate those claims of discrimination.  [Ex. D, Scott Dep. p. 84, ll. 5-9].

Scott did not investigate whether Steinhilber made any derogatory comments about Duis pregnancy or interview any co-workers of Steinhilber . [Ex. D, Scott Dep. p. 37, ll. 16-22; *id at*

p. 65, l. 25; *id* at p. 66, ll. 1-5]. Instead, Scott told Steinhilber that Duis had made a complaint against her and that Duis was on the way to Human Resources. [Ex. E, Steinhilber Dep. p. 89, ll. 24-25; *id* at p. 90, ll. 1-17]. Scott also claims that since Duis stated she was being targeted that Scott took those concerns to Human Resources and spoke with Smosna yet did not provide any further direction to her or Steinhilber regarding how to conduct an investigation. [Ex. D, Scott Dep. p. 36, ll. 11-24; *id* at p. 38, ll. 1-12; *id* at p. 57, ll. 19-24; *id* at p. 58, ll. 16-22; *id* at p. 74, 11. 11-14]. Steinhilber admits that after Duis was suspended no one from Human Resources or management ever questioned her to see if she was harassing or bullying Duis, treating Duis differently due to her pregnancy, or if she had ever made any discriminatory comments regarding Duis's pregnancy, maternity leave, or family medical leave. [Ex. E, Steinhilber Dep. p 88, ll. 24-25; *id* at p. 89, ll. 1-22; *id* at p. 91, 11. 1-25; *id* at p. 92, ll. 1-9].

## G.    Duis is Terminated:

On May 14, 2019, Steinhilber, by phone, called Duis and informed her that Duis was excited about her pregnancy and it showed that she did not value her job, and that Duis cared more about her family and her pregnancy than her job which did not coincide with Franciscan's values. [Exhibit C, Duis Dep. p. 47, ll. 15-21]. Duis then asked whether she was being fired because she was pregnant and Smosna responded no it's not because you are pregnant, it's because you're taking maternity leave and FMLA. [Ex. C. Duis Dep. pp. 48, ll. 4-6; *id* at p. 52, ll. 16-19]. Smosna told Duis told that they did not want her to take leave. [Exhibit C, Duis Dep. p. 108, ll. 14-22]. Duis was also told that they did not believe that she would return to work after having her baby and FMLA which Duis denied. [Ex. C, Duis Dep. p. 52, ll. 19-22]. Duis told them she did not understand why she was being terminated when she had never had an issue in four (4) years of employment yet in one month since Steinhilber got there everything suddenly

changed. [Ex. C. Duis Dep. p. 53, ll. 2-9].   No one mentioned anything about getting along

with co-workers, patient care, or not giving pain medication.   [Ex. C. Duis Dep. p. 53, ll. 10-17].

Steinhilber typed up Duis's' termination form stating "Taryn stated she said she couldn't

wait until October to be on maternity leave." [Ex. E. Steinhilber Dep. p. 120, ll. 6-8; *id* at p. 124,

ll. 11-16; Ex. 8 (p.1.)].  Notably, Steinhilber testified that Duis, prior to her termination, never

told her that she expected to take maternity leave, had not informed her that she was looking

forward to maternity leave, and did not know Duis was going on maternity leave. [Ex. E,

Steinhilber Dep. p. 36, ll. 1-16; *id* at p. 76, ll. 14-17].  Scott admits that being excited about

maternity leave should not be a reason for discipline, and is not against Defendant's policies.

[Ex. D, Scott Dep. p. 42, ll. 13-15; *id*  at p. 70, ll. 12-25; *id* at p. 71, ll. 1-16].

**H**.     **Steinhilber Fails to Provide Progressive Discipline:**

According to Defendant, Duis's employment was terminated for unsatisfactory work

performance and unsatisfactory work behavior, specifically her response to the patient call light

and inappropriate behavior during her meeting with Scott. [Def's Memorandum of Law pp. 9-

10].  Moreover, Defendant claims that the only information considered during the termination

meeting were the results of Steinhilber's investigation and Scott's statements about Duis's

unprofessional behavior during the meeting she had with Duis and her mother." [Def's

Memorandum of Law p. 9] According to Scott, the reason that Duis was terminated was due to

her refusal to meet the needs of the patient and profanity was only part of that. [Ex. D, Scott

Dep. p. 77, ll. 3-9]  Finally, Defendant asserts that Steinhilber, Curtis, and Scott made the

decision to terminate. [Ex. G. Defendant's Interrogatory Response No. 5, p. 5]

According to Steinhilber, recommended discipline is supposed to be progressive starting

with the first step. [Exhibit E, Steinhilber Dep. p. 26, ll. 12-21].  Defendant's corrective action

policy corrective action steps may include written counseling, written warning, final written warning with potential suspension, and termination or suspension pending termination. [Exhibit D, Scott Dep. p. 80, ll. 5-22; *id* at p. 81, ll. 2-5; Ex. 10; Exhibit E, Steinhilber Dep. pp. 124, 11. 21-25; *id* at p. 125, ll. 1-2]. Duis was not issued any disciplinary action other than her termination. [Ex. G, Interrogatory Response No. 3, p. 4]. Indeed, prior to her suspension, Scott and Steinhilber were not aware of any problems or complaints with Duis's' performance. [Ex. D, Scott Dep. p. 45, ll. 4-8; *id* at p. 46, ll. 16-19; *id* at p. 50, ll. 15-25; *id* at p. 51, ll. 1-2, *at p.* 55, ll. 4-7; Ex. E. Steinhilber Dep p. 30, ll. 12-25; *id* at p. 34, ll. 18-25; *id* at p. 35, ll. 1-3; *id* at p. 121, ll. 14-25]. In fact, Steinhilber testified that prior to suspending Duis she did not reviewed her personnel file, did not verbally counsel her with regard to performance issues, did not place her on a corrective action plan, had not witnessed any performance problems nor had not had any patient complaints or families of patients complain about Duis's work performance. [Ex. E, Steinhilber Dep. p. 74, ll. 2-19]

**I. Delay in Pain Medication:**

The only incident that Steinhilber is aware of regarding patient care involving Duis is the alleged delay in pain medication. [Ex. E, Steinhilber Dep. p. 121, ll. 14-22]. However, Duis did provide the pain medication to the patient which Steinhilber would have known by looking at the patient chart and there was no issue regarding medication delay. [Ex. C, Duis Dep. p. 72, ll. 19-25; *id* at p. 73, ll. 1-5; *id* at p. 74, ll. 9-10; *id* at p. 117, ll. 2-11; Ex. F, Buchanan Aff. ¶¶ 3-6, 9]. Indeed, Steinhilber admits that the patient received the mediation. [Ex. E, Steinhilber Dep. p. 64, l. 5]. Here, there was no patient complaint regarding pain medication, and Duis cared for the patient the next night per the patients' request all of which was relayed to Steinhilber. [Ex. C, Duis Dep. p. 118, ll. 13-22]. Steinhilber admits she never spoke to the patient, does not know

how long the delay was, and acknowledges that sometimes medications are delayed because nurses are busy with other patients, and that she did not know if that was true in this case. [Ex. E, Steinhilber Dep. p. 63, ll. 3-10; *id* at p. 64, ll. 1-8].   Notably, failing to answer a call light untimely is not grounds for immediate termination since sometimes nurses get busy and cannot answer every call light. [Ex. D, Scott Dep. p. 51, ll. 20-25].  As Scott explained, sometimes patients constantly want nurses attention even when attention is not needed. [Ex. D, Scott Dep. p. 52, ll. 1-4].  Here, no patient complaint was made regarding the call light and no patient suffered a health issue because of a call light not being answered.  [Ex. D. Scott, Dep. p. 63, ll. 24-25; *id* at p. 64. ll. 1-9].

**J.  Profanity is Rarely Grounds for Discipline Let Alone Termination:**

Scott admits that employees have used foul language in front of her yet she has never disciplined an employee for foul language while at Franciscan Crown Point. [Ex D, Scott Dep. p. 75, ll. 1-18; *id* at p. 76, ll. 1-25; *id* at p. 77, l. 1].  Steinhilber has also heard nurses use foul language but has never issued a written warning for foul language.  [Ex. E., Steinhilber Dep. p. 41, ll. 13-25; *id* at p. 42, ll. 14-17; *id* at p. 77, ll. 15-17].  Steinhilber herself admits using profanity and possibly the f word in front of co-workers and peers but was not disciplined.  [Ex. E, Steinhilber Dep. p. 122, ll. 8-10, 18-23; *id* at p. 123, ll. 1-8].  According to Scott, Duis used profanity on one occasion.  [Ex. D, Scott Dep. p. 41].  Furthermore, no patient ever complained about Duis using profanity.  [Ex. E. Steinhilber Dep. p. 67, ll. 12-14].

**K.  Similarly Situated:**

Dawn Smith was an RN who while reporting directly to Steinhilber, was never pregnant, never took FMLA leave, or reported discrimination.  [Ex. E, Steinhilber Dep. p. 127, ll. 8-25; *id* at p. 128, l. 1].  In 2019 Smith received three (3) complaints against her alleging that she was

lazy, not assisting her co-workers, not meeting patient care standards, and that patients she was taking care of were requesting another nurse. [Ex. E, Steinhilber Dep. p. 128, ll. 12-23; *id* at p. 134, l. 8-18 (P-17, Bate Stamp #181)]. Thatcher-Curtis summarized those past complaints to Steinhilber on April 12, 2019. [Ex. E, Steinhilber Dep. p. 128, ll. 12-23; *id* at p. 134, l. 8-18 (P-17, Bate Stamp # 177-178 and 181)]. Thereafter, Smith did not come to the room of a patient nor answer an alarm for 45-60 minutes. [Ex. E, Steinhilber Dep. p. 129, ll. 20-23 (P-17, Bate Stamp #177)]. Subsequently, Smith yelled at a patient who reported that she was afraid of Smith and did not want her taking care of her again. [Ex. E, Steinhilber Dep. p. 129, ll. 20-23 (P-17, Bate Stamp #177)]. Furthermore, four (4) rooms assigned to Smith were found to have not been attended to adequately by Smith with such complaints ranging from IV alarming air in line, IV bag dry, garbage overflowing, opened supplies on containers, and a soiled patient all while Smith was found to be on her cell phone in the nurses station. [Ex. E, Steinhilber Dep. p. 129, ll. 20-23(P-17, Bate Stamp #177)]. In addition, on April 11, 12, 22, 23, and 26th of 2018 Smith had failed to return calls from her manager. [Ex. E, Steinhilber Dep. p. 129, ll. 20-23(P-17, Bate Stamp #177)]. As a result of all these infractions Steinhilber did not immediately suspend or terminate Smith yet rather chose progressive discipline and issued her a final written warning. [Ex. E, Steinhilber Dep. p. 129, ll. 20-23, *id* at p. 133, ll. 6-21(P-17, Bate Stamp #177-178)]. In sum, prior to Smith being terminated she had received multiple patient complaints against her and a final written warning all under the direct supervision of Steinhilber. [Ex. E, Steinhilber Dep. p. 128, ll. 12-23; *id* at p. 129, ll. 20-23; *id* at p. 136, ll. 1-21 (P-17, Bate Stamp #177-178)].

Nancy Georgakis a registered nurse who while reporting directly to Steinhilber was never pregnant, never took FMLA leave, nor reported discrimination was never disciplined by Steinhilber despite needing improvement with body language and verbiage, time management,

and appearing gruff. [Ex. E, Steinhilber Dep. p. 149, ll. 24-25; *id* at p. 150, ll. 1-25; *id* at p. 151, ll. 1-22; *id* at p. 152, ll. 1-10(P-20, Bate Stamp #148)]. Subsequently, Georgakis was eventually provided a written counseling after stating to a co-worker "you freaking snitch. You narked me out." [Ex. E, Steinhilber Dep. p. 159, ll. 9-10 (P-26, Bate Stamp #613-615)].

Melissa Roberts an RN who while reporting to Steinhilber was never pregnant, never took FMLA leave, nor reported discrimination. [Ex. E, Steinhilber Dep. p. 154, ll. 12-18; *id* at p. 155, ll. 1-12]. Steinhilber provided Roberts a written counseling after Roberts accessed personal medical information in violation of Defendant's policy. [Ex. E, Steinhilber Dep. p. 156, ll. 15-22 (P-22, Bate Stamp #583-585)]. Subsequently, Steinhilber issued another written counseling to Roberts for incomplete restraint documentation on two patients, incorrect verbiage, on CABG consent, no order for restraints, and for not answering calls from the charge nurse on two occasions. [Ex. E, Steinhilber Dep. p. 156, ll. 13-25; *id* at p. 157, ll. 1-11(P-22, Bate Stamp #586-588)].

Daniella Mendoza an RN who while reporting directly to Steinhilber was never pregnant, never took FMLA leave, nor reported discrimination was never disciplined by Steinhilber despite needing improvement on closing the loop when identifying patient needs, change in status or abnormal clinical findings. [Ex. E, Steinhilber Dep. p. 147, ll. 12-25; *id* at p. 148, ll. 1-25; *id* at p. 149, ll. 1-5(P-19, Bate Stamp #144)]. Celeste Reed another nurse under Steinhilber's supervision was provided progressive discipline when she was issued two written warnings. [Ex. E, Steinhilber Dep. p. 159, ll. 19-25; *id* at p. 160, ll. 24-25; *id* at p. 161, ll. 1-6(P-27, Bate Stamp #616-622)].

Respectfully Submitted,


*/s/ Ryan C. Fox*
Ryan C. Fox
Ryan P. Sink
Attorneys for Plaintiff

Fox & Sink, LLC
6177 North College Avenue
Indianapolis, Indiana 46220
rfox@foxsinklaw.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 1st day of November, 2021, by the Court's electronic filing system to the following counsel of record:

Amy J. Adolay: aadolay@kdlegal.com
Elizabeth M. Roberson: eroberson@kdlegal.com

*/s/ Ryan C. Fox*
Ryan C. Fox