

EXHIBIT F

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO: 2:20-CV-00078-PPS-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT | ) |
| Defendant. | ) |
| | ) |
| | ) |

## DECLARATION OF KIM BUCHANAN

I, Kim Buchanan, swear under penalty of perjury that the statements contained in this declaration are made freely and voluntarily, that the content of this declaration is based on my personal knowledge, that I am over the age of eighteen (18), that I am competent to testify as to the matters contained in this declaration, and that if called upon to testify, my testimony would be as follows:

1. I worked for Franciscan Alliance, Inc., a/k/a Franciscan Health Crown Point ("Franciscan") from on or about November 2016 through approximately May 14, 2019. At all relevant times, I held the position of Nurse Technician / Patient Care Assistant ("PCA") within the Progressive Care Unit ("PCU").

2. In approximately April of 2019 Linda Steinhilber became my direct manager in the PCU.

3. Throughout the months of April and May of 2019 I routinely worked the same night shift as Taryn Duis who was a Registered Nurse for Franciscan. Since we worked the same shift we also were routinely assigned the same patients during our shift.

4. On or about May 7, 2019, a new patient was assigned to Ms. Duis and myself. I

1

reported to Ms. Duis that a family member had requested that the patient wanted pain medication. Ms. Duis explained to me that the patient would have to wait a moment until Ms. Duis received the medication order(s) from the doctor since the patient had just come up as a new patient from the emergency room. I then went back to the patient's room to explain what was going on to the patient.

5. As I was providing the update to the patient, Ms. Duis entered the room with the pain medication, apologized to the patient, and explained why there was a wait regarding the medication. The patient received the medication and did not voice any displeasure towards Ms. Duis or myself. After the family notified me of the request for pain medication, the patient received the medication within approximately ten minutes.

6. At the end of my shift, while I was leaving the hospital that morning, Linda Steinhilber approached me and asked to speak to me.

7. Ms. Steinhilber began questioning me as to problems on the floor with nurses and as to which nurse was being rude to a patient and/or was not a team player.

8. I informed Ms. Steinhilber that I did not know what she was talking about. In response, Ms. Steinhilber asked me "what about Taryn?" I responded that "Taryn is a good worker." Ms. Steinhilber replied, "I can't fix it if you don't tell me the truth." I then told Ms. Steinhilber, "can't say something that didn't happen."

9. Ms. Steinhilber also accused Ms. Duis of not providing pain medications which I explained to her did not occur.

10. As our conversation continued Ms. Steinhilber became increasingly angry, stomped her foot and stated "so you're saying we don't hear anyone complaining about assignments or duties because of their pregnancy or nobody ever said that I'm pregnant and can't

2

701

do this or that they're not coming back to work after a child being born." In response I stated "no."

11. It was evident that Ms. Steinhilber's questions were specifically in reference to Ms. Duis as she was the only pregnant registered nurse that reported to Ms. Steinhilber.

12. It was also evident to me that Ms. Steinhilber wanted me to say something bad about Ms. Duis even if it wasn't true. Her tone and demeanor was threatening and it made me very uncomfortable considering that I had only had approximately two (2) short conversations with her prior to this interaction.

13. The conversation only ended after I told her that Dawn Smith was the only registered nurse I could think of regarding having issues on the floor.

14. At the time of this conversation, I had already given my notice to resign from Franciscan since I had found another job. Nevertheless, the day after this conversation I received a phone call from Ms. Steinhilber that I was suspended for allegedly sleeping on the job. Shortly thereafter Franciscan terminated my employment for sleeping on the job. I did not sleep on the job.

15. It was clear from my interaction with Ms. Steinhilber and her questions to me that she was holding Ms. Duis to different standards and treatment due to her pregnancy and due to the fact that Ms. Duis would be taking maternity leave.

16. Throughout my employment with Franciscan I personally witnessed Ms. Duis perform her nursing duties. Ms. Duis was a team player who provided her patients with the highest level of care. I have personal knowledge of these facts since during the last six months of my employment Ms. Duis and I routinely worked the same shift.

17. It was clear from my interaction with Ms. Steinhilber as stated above that Ms.

3

Steinhilber did not want Ms. Duis to remain employed with Franciscan since Ms. Duis was pregnant and expecting to go on a maternity leave.

    This Declaration has been executed by me within the United States of America. I further declare under penalty of perjury that the foregoing is true and correct.

Date 5-4-2021

*Kimberly Buchanan*
Kim Buchanan

4

703