UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
|     Plaintiff. | ) ) ) |
|     v. | ) )   CAUSE NO: 2:20-CV-78-PPS |
| FRANCISCAN ALLIANCE INC., a/k/a FRANCISCAN HEALTH CROWN POINT, | ) ) ) ) ) |
|     Defendant. | ) ) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Franciscan Alliance, Inc. ("Franciscan"), by counsel, submits this Reply in Support of Motion for Summary Judgment filed in response to Plaintiff Taryn Duis's ("Duis") Complaint.

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

On September 13, 2021, Franciscan filed its Motion for Summary Judgment ("Motion") and Memorandum of Law in support thereof, and designated numerous affidavits and other materials in support of its Motion. Franciscan's Motion conclusively proves that there is no question of material fact that Duis is not entitled to relief on any of the claims in her Complaint. On November 1, 2021, Duis filed her Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Response"). Attached to her Response, she included an appendix containing exhibits including a Statement of Genuine Disputes and Statement of Additional Facts. In addition to containing unauthenticated material, Duis wholly circumvents the page limitations set forth in Northern District Local Rule 7-1 by drafting a 25-page response brief and also including additional facts and argument in her Statement of Genuine Disputes in her appendix, which is not

permitted by local rule 56-1.[1] As detailed herein, even if her unauthenticated materials and argument and facts in excess of the response page limit are not stricken, Duis has failed to create a question of material fact as to any of her claims and Franciscan is entitled to summary judgment.

## II.     SUPPLEMENTAL DESIGNATION OF EVIDENCE

1. Second Affidavit of Nita Wirkus ("Wirkus Second Aff.") attached hereto as <u>Exhibit 10</u>.

2. Second Affidavit of Jessica Smosna ("Smosna Second Aff.") attached hereto as <u>Exhibit 11</u> with the following exhibit attached thereto:

    a. Smosna Notes from Duis Suspension Call (Exhibit A).

3. Additional excerpts from the Deposition of Taryn N. Duis taken in this matter on March 22, 2021 ("Duis Dep., pp. _____, ll. _____"), attached hereto as <u>Exhibit 12</u>.

## III.     ARGUMENT

**A. No Facts in Duis's Statement of Genuine Dispute are Truly Material Facts in Dispute for Purposes of Summary Judgment.**

Duis identifies thirty-one material facts in dispute; however, none of these facts are truly in dispute. Pursuant to Fed. R. Civ. P. 56(c)(1), "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Accordingly, Franciscan addresses each fact identified and the reasons each fact is not in dispute.

---

[1] Contemporaneously with the filing of this Reply, Franciscan has filed its Motion to Strike portions of two exhibits attached to Duis's Response.

**Statements 1, 2, 5 and 16:** Duis disputes the suggestion that she really did not know Linda Steinhilber ("Steinhilber"), her supervisor, Steinhilber's recollection about how and when she learned Duis was pregnant, that Steinhilber told Duis she should go to Human Resources if she had concerns about coworker Dawn Smith ("Smith"), and that she was suspended as a result of her behavior during the May 8, 2019 night shift. (*See* ECF No. 32-2, Exhibit A at pp. 1-4, 8). However, none of the statements or additional facts offered by Duis cause these facts to be in dispute. The cited evidence by Franciscan supports these statements and Duis does not cite any contradictory evidence. Accordingly, these facts are not in dispute.

**Statements 3 and 4:** Duis disputes that Steinhilber does not recall any mention of Duis planning to take maternity and/or FMLA leave and that there is no evidence that she requested such leave. (*See* ECF No. 32-2, Exhibit A at pp. 2-3). Again, Duis points to no evidence of any conversation with Steinhilber or anyone from Human Resources where Duis specifically mentioned her need for "maternity" and/or "FMLA leave". Further, Duis had previously taken leave under the FMLA and filled out paperwork for such leave. (Duis Dep., p. 107, ll. 6 – 13; Wirkus Aff., ¶ 19). Duis fails to designate evidence, and there is no evidence, that she requested maternity or FMLA leave or filled out any such paperwork prior to her termination. (Duis Dep., pp. 102, l. 13 – 103, l. 11; *id.* at p. 183, ll. 14-21). Accordingly, such facts are not in dispute.

**Statements 6, 7, 19 – 25, and 27 – 30:** Duis disputes numerous other statements regarding the thoughts and opinions of others. (*See* ECF No. 32-2, Exhibit A at pp. 4-5, 9-15). Those thoughts and opinions are those of the affiants making such statements and cannot be factually disputed without contradictory affidavits from those affiants. In addition, Duis is confusing the call to notify her of the termination decision with Franciscan's internal termination meeting. (*See* ECF No. 32-2, Exhibit A at pp. 13-14). Duis was not present during Franciscan's internal termination meeting

on May 14, 2019 when it was decided that Duis's employment would be terminated. (Scott Dep., pp. 58, l. 24 – 59, l. 16). Later that day, a termination call was held with Duis. (Duis Dep., p. 46, l. 9 – 48, l. 10). Franciscan's statement on page 9 of its Statement of Material Facts (cited in Duis's Statements of Genuine Disputes 28) is regarding information discussed at the termination meeting at which Duis was not present. (Scott Dep., pp. 58, l. 24 – 59, l. 16). Given that Duis cannot testify regarding such meeting, these facts are not in dispute.

**Statements 8-15:** Duis disputes various statements by objecting that they are hearsay. (*See* ECF No. 32-2, Exhibit A at pp. 5-8). However, the identified statements are not being used to prove the truth of the matter asserted and thus they are not hearsay. *See* Fed. R. Evid. 801. These statements are instead being using to show the effect that receiving such statements had on Steinhilber (the listener) as she investigated the call-light incident. These facts are not in dispute.

**Statements 17 and 26:** Duis again disputes that these two statements contain hearsay. (*See* ECF No. 32-2, Exhibit A at pp. 8, 12). These statements do not contain any hearsay as they are descriptions of Steinhilber's actions that she took during the investigation which she has direct knowledge of and can testify to. Further, the witness statements are not being used to prove the truth of the matter asserted. Thus, these facts are not disputed.

**Statement 18:** Duis disputes this statement stating that it misstates her testimony and is not supported by the record. (*See* ECF No. 32-2, Exhibit A at pp. 8-9). However, it is supported by the record. Franciscan mistakenly left out of its citation an additional page of Duis's deposition. Specifically, Duis testified that "It's a possibility" in response to whether she said she "didn't want to come back after October[.]" (Duis Dep., p. 135, ll. 20-22). Thus, both statements in Statement of Genuine Dispute 18 are directly supported by Duis's sworn testimony and are not in dispute.

4

**Statement 31:** Duis disputes that she was terminated for unsatisfactory work performance and unsatisfactory work behavior, specifically her response to a patient call-light and inappropriate behavior during her meeting with Scott. (*See* ECF No. 32-2, Exhibit A at p. 15). Duis does not offer any evidence to dispute why she was terminated; she instead offers her opinion that she believes such reasons to be pretext because she denies the derogatory language cited and states that the patient did not complain. She further alleges that that her meeting with Scott was protected conduct. This does not put these facts in dispute. Regardless of whether Duis disputes the call-light incident occurred, the witness statements were submitted to Steinhilber and relied on by her and the rest of the decisionmakers, and they also relied on Scott's opinions from her meeting with Duis in making the decision to terminate Duis's employment. (Steinhilber Aff., ¶ 18 at Exhibit A; Scott Dep., p. 40, ll. 21-24). Duis cannot dispute Scott's opinion of her meeting with Duis without a contradictory affidavit from Scott. Accordingly, this statement is not a genuine dispute of fact.

### B. Multiple Statements in Duis's Statement of Additional Facts are Contradicted or Unsupported by Evidence in the Record.

Not only do Duis's Statement of Additional Facts wholly circumvent the page limits on summary judgment, but many of the statements are contradicted by evidence in the record or unsupported by the record.[2] Franciscan addresses each of these statements below:

1. "In essence, Steinhilber ordered Duis to lie to Human Resources and defame a fellow nurse (Smith) . . . ." (ECF No. 32-2, Exhibit A at p. 17).

This statement is directly contradicted by Duis's testimony. Specifically, although Duis now states that no altercation occurred between her and Smith, at no time during the resulting conversation with Steinhilber did Steinhilber tell Duis to lie to human resources. (ECF No. 32-4 at Exhibit C, Duis Dep., p. 61, ll. 12-16; Steinhilber Aff. at ¶ 13).

---

[2] Franciscan also addresses the reasons this portion of Exhibit A to Duis's Response must be stricken in a contemporaneously filed Motion to Strike.

2. "Steinhilber wanted Duis to say something that was not true and a lie." (ECF No. 32-2, Exhibit A at p. 17).

This statement is contradicted for the same reasons stated in Section III.B.2 above. In addition, Duis cannot testify as to what Steinhilber wanted as she is not Steinhilber and does not have direct knowledge of Steinhilber's thoughts or wishes. Further, this statement is directly contradicted by Steinhilber's affidavit. (Steinhilber Aff. at ¶ 13).

3. "According to Steinhilber, she did not start her investigation into Duis due to allegations of medication delay but rather because of the reported incidents between Smith and Duis." (ECF No. 32-2, Exhibit A at pp. 19-20).

This statement does not accurately reflect Steinhilber's full testimony. Although Steinhilber did at first state during her deposition that she started her investigation into Duis because of the reported incidents between Smith and Duis, she quickly corrected that testimony. Steinhilber testified that Jen Justice's report to her (that Duis said "he can fucking wait" in response to a patient's request for pain medication) actually started her investigation into Duis. (Steinhilber Dep., p. 65, l. 20 – p. 66, l. 6).

4. "However, Duis did provide the pain medication to the patient which Steinhilber would have known by looking at the patient chart and there was no issue regarding medication delay." (ECF No. 32-2, Exhibit A at p. 24).

This statement is not accurate as Duis herself admits to a delay in patient medication in her own Statement of Additional Facts. Specifically, Duis's states that she "explained why there was a wait regarding the medication" to the patient and later stated that there was "approximately ten (10) minutes" of a delay. (ECF No. 32-2, Exhibit A at p. 18).

C. **Duis Has Not Created a Material Question of Fact to Preclude Summary Judgment.**

1. *Pregnancy Discrimination under Title VII and the PDA*

Duis was terminated because her behavior did not align with Franciscan Values. Specifically, it was Franciscan's understanding that Duis responded to a patient's call-light for

6

pain medication with "I don't give a fuck if that patient wants pain medication. He can wait. He should have taken it before." (Steinhilber Aff., ¶¶ 16, 18 at Exhibit A). Thereafter, Duis failed to take responsibility for this situation and instead exhibited a nasty and toxic attitude when addressing this situation. (Scott Aff., ¶¶ 8-9, 8 at Exhibit A; Scott Dep., pp. 33, l. 8 – 34, l. 16). Duis's termination had nothing to do with her pregnancy or any future maternity or FMLA leave. Duis even admits that there was a delay in patient care. (ECF No. 32-2, Exhibit A at p. 18). Not only is there no direct evidence of pregnancy discrimination, but there is also no indirect evidence. Accordingly, summary judgment should be granted on Duis's pregnancy discrimination claim.

> ### i. *Duis Does Not Provide Direct Evidence of Pregnancy Discrimination*

Duis attempts to provide evidence of discrimination by pointing to statements she claims Steinhilber made in relation to her pregnancy. Even if Steinhilber made these statements (which she denies), Duis still cannot prove discrimination because nothing about Duis's pregnancy or future maternity or FMLA leave was considered in her termination. Further, Steinhilber, Scott, and Thatcher-Curtis were the decision-makers in Duis's termination, and all agreed on Duis's termination based on her response to a patient's call-light for pain medication: "I don't give a fuck if that patient wants pain medication. He can wait. He should have taken it before." (Steinhilber Aff., ¶¶ 16, 18 at Exhibit A; Scott Dep., p. 24, ll. 5-24; *id.* at p. 26, ll. 3-21, *id.* at p. 72, ll. 4-9; *id.* at pp. 72, l. 24 – 73, l. 8; Thatcher-Curtis Aff., ¶ 15). Duis attempts to isolate Steinhilber in this decision, but Steinhilber, Scott, Wirkus, and Smosna testified that there was no discussion of pregnancy, maternity leave, or FMLA and that Steinhilber, Scott, and Thatcher-Curtis were the decision-makers, not just Steinhilber. (Wirkus Aff., ¶¶ 24-28; Smosna Aff., ¶¶ 14-18; Steinhilber Aff., ¶¶ 23-27; Thatcher-Curtis Aff., ¶ 15). Pursuant to Franciscan's Corrective Action Policy, "Human Resources and a member of Senior Leadership must be notified and in agreement with

the termination recommendation." (ECF No. 32-5, Exhibit E at p. 26). Finally, Duis attempts to use a cat's paw theory based off Steinhilber only, but both Scott and Thatcher-Curtis had their own interactions with Duis on which to base their decisions. (Thatcher-Curtis Aff., ¶¶ 9-15; Scott Aff., ¶¶ 8-18). Even if Steinhilber harbored a discriminatory animus, which she did not, she was not the only decision-maker. (Thatcher-Curtis Aff., ¶ 15; Scott Aff., ¶ 18).

Duis also claims that there was an immediate change in her treatment after Steinhilber learned of her pregnancy, but the first comment Duis alleges was made about her pregnancy was during a meeting involving Duis, Steinhilber, and Thatcher-Curtis on April 19, 2019, almost two months after Steinhilber became Duis's supervisor. (ECF No. 32, Pls. Response at 5). Not only do Steinhilber and Thatcher-Curtis not recall any comments about Duis's pregnancy, but according to Thatcher-Curtis, he would have disciplined Steinhilber if she had made them. (Thatcher-Curtis Aff., ¶¶ 9, 11; Steinhilber Aff., ¶ 13). Notably, Duis did not like Steinhilber and even posted on her Instagram that she was "truly evil and [a] clueless manager" and texted coworkers that Steinhilber as a "psycho" and a "bitch." (Duis Dep., p. 168, l. 24 – p. 169, l. 12; *id.* at p. 172, l. 3 - p. 173, l. 14). The investigation into Duis and her resulting termination were solely because it was reported and confirmed by several employees that she said, in response to a patient call-light for pain medication: "I don't give a fuck if that patient wants pain medication. He can wait. He should have taken it before." (Steinhilber Dep., p. 65, l. 20 – p. 66, l. 6; Steinhilber Aff., ¶ 16).

When an employee reports behavior of a fellow employee that does not align with Franciscan values, such behavior is investigated. (Wirkus Second Aff., ¶ 7). The investigation is typically done by the supervisor of the department involved, as the supervisor is the most familiar with his or her department. (*Id.*). If the reported behavior is substantiated by other employees, then the supervisor, in coordination with human resources, suspends the specific employee who

8

committed the behavior and allows said employee to respond at the suspension meeting to the allegations against him or her. (*Id.*). After the suspension, the entire investigation is typed up, including any witness statements, the employee's response to the allegations, and any resulting corrective action. (*Id.*). Thereafter, a meeting is held to discuss whether any corrective action will be issued. (*Id.*). Oftentimes, this meeting is several days after the suspension due to the time it takes to finalize the investigation documents and to align everyone's schedules. (*Id.*). During the meeting, the decision-makers, in conjunction with human resources, discuss the appropriate action to take. (*Id.*). After an agreement is reached, the "Action Taken" section is completed and thereafter presented to the employee, with a representative from human resources present. (*Id.*).

The investigation and termination process were followed with Duis. Steinhilber conducted the investigation, met with Duis to discuss the allegations and allowed her to respond to each allegation, and the investigation notes were typed into a corrective action. (Steinhilber Aff., ¶¶ 17-32). Specifically, in the "what happened" section of Duis's corrective action form, the original complaint is explained and then Duis's response during her suspension call is listed. (*Id.* ¶ 29 at Exhibit A). Both Smosna and Steinhilber were on the suspension call with Duis, and each took their own notes. Steinhilber's notes are typed up into the "what happened" section of Duis's corrective action form; whereas Smosna's notes, which are almost verbatim of the "what happened" section, were included in Duis's personnel file. (*Compare id. with* Smosna Second Aff., ¶¶ 7, 8 at Exhibit A). As stated in Franciscan's Corrective Action Policy, it "reserves the right to skip any or all steps in progressive corrective action if deemed appropriate." (ECF No. 32-5, Exhibit E at p. 25). Duis's wholly inappropriate comment regarding a patient call-light, attitude toward patient care, and failure to show accountability for her actions are in direct contrast with Franciscan's mission and values and were grounds for immediate termination. Duis provides no

direct evidence of discrimination and Franciscan is entitled to summary judgment on Duis's pregnancy discrimination claim.

### ii. Duis Does Not Provide Indirect Evidence of Pregnancy Discrimination

Not only was Duis not meeting Franciscan's legitimate expectations, but the similarly situated individuals identified by her are not true comparators. Because Duis cannot meet these two prongs of the *McDonnell-Douglas* burden-shifting framework, she cannot survive summary judgment under the indirect method of proof.

Duis was not meeting the legitimate expectations of her job. Franciscan expects every employee to uphold its values, and in fact, such values are listed in each employee's job description. (Wirkus Aff. ¶ 10 at Exhibit A). In addition to the patient call-light incident and her resulting inappropriate language, Duis also had a conversation with Scott where she made nasty and unprofessional comments about Steinhilber, and during the investigation more behavior that does not align with Franciscan values was revealed. (Scott Aff., ¶¶ 11-12; Steinhilber Aff., ¶ 29 at Exhibit A). Specifically, it was reported by one coworker that "float staff do not want to float to the PCU related to the negativity and the behavior of nurses including Taryn Duis." (Steinhilber Aff., ¶ 29 at Exhibit A). It was also reported that Duis was rude to other staff members at a uniform fitting. (*Id.*) Prior to Steinhilber's investigation, Duis agreed to assist Steinhilber with establishing a rapport within the unit. (Thatcher-Curtis Aff., ¶ 10). Duis's negativity, attitude, and behaviors after that meeting revealed that she was doing the exact opposite and creating a toxic environment within the unit. (Steinhilber Aff., ¶ 29 at Exhibit A). Duis was not meeting the legitimate expectations of her position which included upholding Franciscan values.

In addition, none of the comparators identified by Duis engaged in the same conduct as Duis. (*See* ECF No. 32, Pls. Response at 13-15). Further, some of the identified comparators were

not supervised by Steinhilber at the time they were issued corrective actions. "A similarly situated employee is one whose performance, qualifications, and conduct are comparable in all material respects." *Widmar v. Sun Chemical Corp.*, 772 N.E.3d 457, 463 (7th Cir. 2014). Because no other similarly situated employee either engaged in comparable conduct, had comparable qualifications, or had the same supervisor, Duis is unable to identify true comparators.

The first alleged comparator identified by Duis is Smith. (*See* ECF No. 32, Pls. Response at 13-14). However, Duis fails to examine the dates of Smith's corrective actions. Smith's first corrective action was issued on April 30, 2019 and at the time Franciscan had an ongoing investigation into the complaints made against her. (ECF No. 32-6 at 32-45). In fact, the decision to suspend Smith's employment was made just a week later after additional co-workers were able to be interviewed. (*Id.*). And the conclusion of the investigation led to the same fate in that Smith was terminated on the same day as Duis. (*Id.*). Smith was not pregnant, never took FMLA under Steinhilber, or reported discrimination and she was terminated as well for her behavior. (ECF No. 32-6, Steinhilber Dep., p. 127, l. 8 – p. 128, l. 1). Thus, Smith is actually another example showing that Franciscan terminates employees who do not live up to its mission and values.

The other "comparators" identified by Duis did not commit acts similar to Duis's conduct. Danielle Mendoza and Nancy Georgakis were never disciplined by Steinhilber and the "needs improvement" ratings on their performance reviews were not comparable to Duis's conduct.[3] Celeste Reed was disciplined for attendance and dress code violations, neither of which are as serious as stating "I don't give a fuck if that patient wants pain medication. He can wait. He should have taken it before" in response to a patient call-light. (ECF No. 32-6 at 70-76; Steinhilber Aff., ¶ 16). Last, Melissa Roberts was disciplined for a policy violation and for incomplete and incorrect

---

[3] Duis identifies a corrective action for Nancy Georgakis that is inadmissible as not being authenticated as Steinhilber testified that it was not issued by her. (ECF No. 32-6, Steinhilber Dep., p. 159, ll. 6-8).

patient documentation neither of which were deemed violations of Franciscan's mission and values. (ECF No. 32-6 at 56-66). Thus, Duis fails to identify a true comparator that was treated more favorably than her.

Because Duis does not meet the four prongs of the *McDonnell-Douglas* burden-shifting framework, she cannot establish pregnancy discrimination based on indirect evidence. Accordingly, Franciscan is entitled to summary judgment on Duis's pregnancy discrimination claim.

### 2. *Retaliation under Title VII and the PDA*

Duis's employment was terminated for unsatisfactory work performance and unsatisfactory work behavior and not in retaliation for any alleged complaints of pregnancy discrimination or engaging in protected activity. Duis now identifies her conversation with Scott as protected activity, but she fails to link this to her reason for termination because it was not part of the reason why she was terminated. (Steinhilber Aff., ¶¶ 16, 18 at Exhibit A). Duis cannot prove a causal link between her meeting with Scott and her termination and thus her claim for retaliation fails. *Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012); *Davis v. Munster Med. Research Found., Inc.*, 213 F. Supp.3d 1074, 1096 (N.D. Ind. 2016).

During the May 10, 2019 meeting with Scott, Duis claimed she "felt she was being targeted" but at no point did Scott understanding Duis to be claiming she was being harassed or had any complaints relating to discrimination on the basis of her pregnancy. (Scott Aff., ¶ 8 at Exhibit A). It was Scott's understanding that that Duis felt Steinhilber was targeting her because she was asking people about her for purposes of the call-light investigation, not due to her pregnancy. (Scott Dep., pp. 38, l. 13 – 39, l. 2). Therefore, no further investigation was conducted. Further, Scott testified that if someone said Steinhilber made derogatory comments about

someone's pregnancy, she would refer the person to Human Resources and the matter would be fully investigated. (*Id.* at p. 35, l. 24 – p. 36, l. 10; *id.* at p. 37, ll. 3-22). Since Scott did not understand Duis to be complaining about any alleged derogatory comments about her pregnancy, no investigation occurred into this alleged conduct.

Duis cannot establish a causal link between any alleged protected activity and her termination. The statements Duis made to Scott about being targeted were not considered during the termination decision. (Scott Dep., p. 72, ll. 4-9; *id.* at pp. 72, l. 24 – 73, l. 8; Steinhilber Aff., ¶ 26; ECF No. 29-2, Smosna Aff., ¶ 17; Wirkus Aff., ¶¶ 27). The only information from Duis's meeting with Scott that was considered was Scott's opinion that Duis displayed a nasty attitude, Scott did not want Duis caring for Franciscan's patients, and Duis failed to take accountability for the call-light situation. (Scott Dep., p. 45, l. 16 – p. 46, l. 4; *id.* at p. 60, ll. 1-10; Scott Aff., ¶ 8 at Exhibit A). There is no causal link between Duis's alleged protected activity and termination, and Franciscan is entitled to summary judgment on Duis's claim of pregnancy retaliation.

### 3. *FMLA Claims*

Franciscan is entitled to summary judgment on both of Duis's FMLA claims because Duis cannot establish a *prima facie* case for FMLA interference or FMLA retaliation. As explained above, Duis was terminated for unsatisfactory work performance and unsatisfactory work behavior, specifically her comment that "I don't give a fuck if that patient wants pain medication. He can wait. He should have taken it before" and her negative behavior on the unit (Steinhilber Dep., p. 65, l. 20 – p. 66, l. 6; Steinhilber Aff., ¶¶ 16, 18 at Exhibit A). At no time during the termination meeting was pregnancy, maternity leave, or FMLA discussed. (Wirkus Aff., ¶¶ 24-28; Smosna Aff., ¶¶ 14-18; Steinhilber Aff., ¶¶ 23-27; Thatcher-Curtis Aff., ¶ 15). The only reason

maternity leave is mentioned in Duis's termination paperwork is because she brought it up during her suspension call in response to witness statements. (Smosna Second Aff., ¶¶ 7, 8 at Exhibit A).

Duis's FMLA interference claim fails because she cannot prove she provided sufficient notice of her intent to take FMLA leave and that she was denied FMLA benefits to which she was entitled. *Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). Duis points to no evidence of any conversation with Steinhilber or anyone from Human Resources where Duis specifically mentioned her need for "maternity" and/or "FMLA leave". Further, Duis had previously taken leave under the FMLA and filled out paperwork for this prior leave. (Duis Dep., p. 107, ll. 6 – 13; Wirkus Aff., ¶ 19). Duis fails to designate evidence, and there is no evidence, that she requested FMLA or maternity leave or filled out any such paperwork prior to her termination. (Duis Dep., pp. 102, l. 13 – 103, l. 11; *id.* at p. 183, ll. 14-21). Further, Duis's employment was terminated for performance-based reasons and she would have been terminated for these reasons absent her pregnancy, or any future maternity or FMLA leave. *Simpson v. Office of Chief Judge of Cir. Ct. of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009).

Duis's FMLA retaliation claim fails because she cannot prove a causal connection between her termination and any future maternity or FMLA leave as detailed in Section III.C.2 above. Accordingly, Franciscan is entitled to summary judgment on Duis's FMLA claims.

### 4. *Retaliatory Discharge*

The undisputed facts reveal that Franciscan is entitled to summary judgment on Duis's retaliatory discharge claim. It was three Franciscan employees' understanding that an altercation occurred between Duis and Smith, but such altercation was not the subject or even a portion of the reasons for Duis's termination. (Steinhilber Aff., ¶¶ 12-15, 24-27; Thatcher Curtis Aff., ¶ 9; Wirkus Aff., ¶¶ 24-27; Smosna Aff., ¶¶ 15-17; Scott Aff., ¶¶ 15-18). Further, Duis admits that she

was not told to lie and thus she was not instructed to defame Smith and would not be subject to civil liability. (ECF No. 32-4 at Exhibit C, Duis Dep., p. 61, ll. 12-16; Steinhilber Aff. at ¶ 13). Finally, there was no risk of Duis being reported to the Nursing Board because a statement that a coworker caused a panic attack that is found to be untrue is not a violation of the Nursing Practices Act. 848 IAC 2-2-3. Accordingly, the undisputed facts entitle Franciscan to summary judgment on this claim.

### IV.     CONCLUSION

The designated, uncontroverted evidence shows that Franciscan did not discriminate against Duis based on her sex or pregnancy, interfere with her right to take FMLA leave, retaliate against her because of her pregnancy or for exercising her FMLA rights, or wrongfully discharge her in violation of Indiana law. Absent any genuine issues of material fact, this Court should grant Franciscan's Motion for Summary Judgment and enter judgment in favor of Franciscan and against Duis on her Complaint.

Respectfully Submitted,

By:   Amy J. Adolay, Atty. No. 23147-49
      Elizabeth M. Roberson, Atty. No. 34097-64
      KRIEG DEVAULT LLP
      12800 N. Meridian Street, Suite 300
      Carmel, IN 46032
      Telephone: (317) 238-6342
                 (317) 238-6330
      Facsimile: (317) 636-1507
      Email: aadolay@kdlegal.com
             eroberson@kdlegal.com

*Counsel for Defendant Franciscan Alliance, Inc.*

KD_13592937_3.docx