UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff. | ) |
| | )   CAUSE NO: 2:20-CV-78-TLS-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| Defendant. | ) |
| | ) |
| | ) |

## PROPOSED FINAL PRE-TRIAL ORDER

Pursuant to the order of the Court, the attorneys for the parties to this action appeared before the United States District Judge at Hammond, Indiana, at 2:00 P.M. on September 29, 2022 for a conference under Rule 16 of the Federal Rules of Civil Procedure.

Plaintiff Taryn Duis ("Duis") was represented by Ryan Fox of the firm of Fox & Sink, LLC. Defendant Franciscan Alliance, Inc., a/k/a Franciscan Health Crown Point ("Franciscan") was represented by Amy Adolay and Robert Anderson of the firm of Krieg DeVault LLP.

Thereupon, the following proceedings were had and the following engagements and undertakings arrived at:

### A. **JURISDICTION**.

Jurisdiction was conceded by counsel and found by the Court to be present.

### B. **ISSUES**.

The case is at issue on Plaintiff's complaint and the Defendant's answer.

### C. **PENDING MOTIONS**.

There are no pending motions.

### D. DUIS'S CONTENTIONS.

Plaintiff contends that Defendant is subject to liability under the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000(e)(k), which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), for pregnancy discrimination and retaliation. Plaintiff contends that Defendant terminated Plaintiff due to her pregnancy and/or in retaliation for Plaintiff's statutorily protected activity under the PDA and Title VII.

Plaintiff also contends that Defendant is also subject to liability under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq* for interference and retaliation. Plaintiff contends that Defendant interfered with Plaintiff's substantive legal rights under the FMLA, in particular her need to use medical leave for the birth of her child, by terminating her employment to prevent such leave. Plaintiff contends that Defendant terminated Plaintiff in retaliation for Plaintiff's statutorily protected activity under the FMLA.

### E. FRANCISCAN'S CONTENTIONS.

Franciscan decided to terminate Duis's employment due to her own unsatisfactory work performance and behavior. Specifically, another nurse reported that when Duis was told in the nurse's station that one of her patients was requesting pain medication, Duis responded, "I don't give a fuck if that patient wants pain meds. He can wait. He should have taken it before." When Franciscan investigated this alleged conduct, employees reported that Duis had been rude and confrontational with Franciscan staff assisting with a uniform fitting, Duis had stated that she hated being a nurse, and that float staff did not want to float to Duis's unit due to the negativity and behavior of the nurses, including Duis specifically, who served as a Charge Nurse. Finally, when Duis went to the Director of Nursing after she was suspended pending termination to complain

that she felt her supervisor was targeting her, the Director of Nursing found Duis's behavior and attitude to be so aggressive, nasty, and toxic that she was concerned about Duis's ability to provide compassionate care to patients and had grave concerns that Duis was the face of the hospital to patients and their families. Duis's own behavior, not the fact that she was pregnant or planned to take maternity leave, led to her termination of employment. Further, Franciscan contends that Duis never complained about pregnancy discrimination prior to her termination, and therefore has no valid claim of retaliation.

      F.      **ADMISSIONS / UNCONTESTED ISSUES OF FACT**.

The following facts are established by admissions in the pleadings or by stipulation of counsel:

      1.      Nurse Duis began her employment with Franciscan in 2015 as a Registered Nurse ("RN") providing direct bedside care to patients.

      2.      Nurse Duis provided care for patients in the Intermediate Care Unit ("IMCU"), which is also sometimes called the Progressive Care Unit ("PCU").

      3.      As an RN, Nurse Duis was responsible for providing total comprehensive bedside nursing to patients and their families through the development of a plan of care, including implementing, reassessing, evaluating and revising the plan of care.

      4.      Franciscan expected Nurse Duis to provide compassionate bedside care to her patients and implement each patient's plan of care, including pain management.

      5.      Franciscan's employee handbook contains an Equal Employment Opportunity Policy that prohibits discrimination on the basis of sex, including pregnancy.

      6.      Nurse Duis also served as the charge nurse on duty at times during her shift.

7. Whomever is assigned as charge nurse on a particular shift serves in a leadership role for the other nurses during that shift.

8. In March of 2019, Linda Steinhilber ("Steinhilber") became the Nursing Manager of the Intensive Care Unit ("ICU") and the IMCU.

9. By April 19, 2019, although Steinhilber was Nurse Duis's supervisor, Nurse Duis did not know Steinhilber and had only seen Steinhilber about four or five times during her employment.

10. The lack of significant interaction between Nurse Duis and Steinhilber was due to Nurse Duis caring for patients on the night shift and Steinhilber working the day shift.

11. When Steinhilber became Nurse Duis's direct supervisor, Nurse Duis was pregnant.

12. Franciscan has a policy governing leave under the Family and Medical Leave Act ("FMLA") entitled "Employee Leaves of Absence Policy."

13. According to Nurse Duis, the majority of nurses that she knew at Franciscan had taken maternity leave due to the fact that they were women in their 30s.

14. On April 11, 2019, Nurse Duis was caring for patients on a night shift that she described as "very chaotic."

15. Nurse Duis was serving as the charge nurse for her night shift on April 11, 2019.

16. At one point during the shift, Nurse Duis was evaluated by one of the hospitalist physicians at the hospital because Nurse Duis was experiencing a panic attack. Hospitalist physicians are hospital-based physicians trained in critical care.

17. Ultimately, as a precaution the hospitalist recommended Nurse Duis go home for the night, which she did.

18. On April 19, 2019, Nurse Duis, Nursing Manager Steinhilber, and Travis Thatcher-Curtis ("Thatcher-Curtis"), the Director of Nursing Operations, met with Nurse Duis.

19. On May 9, 2019, Franciscan suspended Nurse Duis.

20. On May 10, 2019, Nurse Duis and her mother, Renee Salmi, who was also employed by Franciscan at the time, went to Franciscan and met with Dawn Scott, the Director of Nursing.

21. On May 14, 2019, Franciscan terminated Nurse Duis and notified her of the same by telephone.

22. Steinhilber did not speak to Nurse Duis following her suspension meeting until Nurse Duis was terminated.

G. **CONTESTED ISSUES OF FACT.**

1. Whether Steinhilber mocked Duis's pregnancy.

2. Whether Steinhilber suggested that Duis could not perform her job as a nurse due to her pregnancy.

3. Whether Smosna told Duis that her employment was being terminated because she planned to take FMLA leave.

4. Whether Duis's employment was terminated due to her pregnancy.

5. Whether Duis complained about pregnancy discrimination during her employment.

6. Whether Duis's employment was terminated due to a complaint of

5

pregnancy discrimination by her during her employment.

7. Whether Duis's employment was terminated in retaliation of her future need for FMLA.

8. Whether Duis's employment was terminated for the purpose of interfering with her future need for FMLA.

9. Whether Steinhilber made discriminatory comments to Duis or others regarding Duis's pregnancy.

10. Extent of Duis's damages, if any.

**H.     CONTESTED ISSUES OF LAW.**

The contested issues of law not implicit in the foregoing issues of fact will be:

1. If the jury finds Franciscan liable on one or both of Duis's Title VII claims (Pregnancy Discrimination and Retaliation), were Franciscan's actions malicious or a reckless act of discrimination that would entitle Duis to punitive damages.

2. If the jury finds Franciscan liable on Duis's claims of FMLA interference and/or FMLA retaliation, is Duis entitled to reinstatement, or front pay in lieu of reinstatement as described in 29 U.S.C. § 2617(a)(1)(B).

3. If the jury finds Franciscan liable on Duis's claim of FMLA interference and/or FMLA retaliation, whether Franciscan's actions were taken in good faith and/or whether Franciscan had any reasonable grounds for believing that the termination of Duis's employment was not a violation of the FMLA for purposes of determining whether liquidated damages should be awarded as described in 29 U.S.C. § 2617(a)(1)(A)(iii).

4. Additional Contested Issues of Law will include how to properly instruct the jury, motions in limine, and additional evidentiary issues brought to the Court's

attention in the future.

**I.     EXHIBITS.**

There were received in evidence:

    1.    Plaintiff's exhibits:

        1. Defendant's Answer to the Complaint;

        2. Deposition of Taryn Duis;

        3. Deposition of Linda Steinhilber;

        4. Deposition of Dawn Scott;

        5. Taryn Duis Termination Form – Defendant Bate Stamp 28-30;

        6. Defendant's Corrective Action Policy – Defendant Bate Stamp 39-42;

        7. Discipline Documents of Dawn Smith – Defendant Bate Stamp 177-190;

        8. Performance Appraisal of Daniela Mendoza – Defendant Bate Stamp 142-151;

        9. Discipline Documents of Melissa Roberts – Defendant Bate Stamp 583-593;

        10. Discipline Documents of Nancy Georgakis – Defendant Bate Stamp 613-615;

        11. Discipline Documents of Celeste Reed – Defendant Bate Stamp 616-622;

        12. Declaration of Kim Buchanan;

        13. Defendant's Responses to Plaintiff's Interrogatories;

        14. Defendant's Responses to Plaintiff's Request for Admissions;

        15. Text messages Plaintiff and Travis Thatcher-Curtis – Defendant Bate Stamp 757-759;

        16. All documents related to wages of Plaintiff since 2019;

        17. All documents related to Plaintiff's claims for damages;

        18. All exhibits used in the deposition of Linda Steinhilber;

19. All exhibits used in the deposition of Dawn Scott;

20. Any exhibits necessary for impeachment or rebuttal purposes, the necessity of which cannot be determined until trial.

2. Defendant's exhibits:

A. Franciscan's Mission and Values from its Employee Handbook;

B. Franciscan's Equal Employment Opportunity Policy from its Employee Handbook;

C. Duis's Job Description;

D. Duis Employee Status Change Form, bates labeled FRANCISCAN000026;

E. Duis Corrective Action Form issued on May 14, 2019, bates labeled FRANCISCAN000028-FRANCISCAN000030;

F. Coworker Statement of Facts Forms from Jen Justice, Christine (Kristine) Rogalski, Heather Wyatt, Connie Snow, and Carrie Renchen, bates labeled FRANCISCAN000031- FRANCISCAN000036;

G. Letter written by Dawn Scott regarding meeting with Duis, bates labeled FRANCISCAN000037;

H. Duis's May 9, 2019 Text Messages to Travis Thatcher-Curtis;

I. Franciscan's Employee Leaves of Absence Policy;

J. Franciscan's Employee Handbook;

K. Plaintiff's Verified Answers to Defendant's Interrogatories;

L. Plaintiff's Supplemental Verified Answers to Interrogatories;

M. Plaintiff's Verified Answers to Defendant's Second Set of Interrogatories;

N. Deposition of Taryn N. Duis;

O. All exhibits used in the deposition of Taryn N. Duis;

P. Deposition of Linda Steinhilber;

Q. All exhibits used in the deposition of Linda Steinhilber;

R. Deposition of Dawn Scott;

      S.  All exhibits used in the deposition of Dawn Scott;

      T.  Any exhibits necessary for impeachment or rebuttal purposes, the necessity of which cannot be determined until trial;

      U.  All of Duis's Exhibits listed, whether or not used at trial.

3.  Except as otherwise indicated, the authenticity of received exhibits has been stipulated, but they have been received subject to objections, if any, by the opposing part at the trial as to their relevance and materiality. If other exhibits are to be offered, they may be done so only with leave of court.

Exhibits which can be obtained only by a subpoena duces tecum shall not be covered by this requirement, but counsel for party offering such exhibits shall advise opposing counsel of the nature of such exhibits at the pretrial conference or at least ten (10) days prior to trial.

**J.**    **WITNESSES.**

    1.  Duis's witnesses may include any or all of the following:

      a.    The plaintiff, Taryn Duis.

      b.    Linda Steinhilber

      c.    Dawn Scott;

      d.    Dawn Smith;

      e.    Kimberly Buchanan;

      f.    Anna Basham;

      g.    Renee Salmi;

      h.    Rhea Martin;

      i.    Lynette Dunham;

      j.    Any witness used for rebuttal / impeachment;

      k.    Any witness listed by Defendant, whether or not they are actually

called to testify;

    l.    Any witness used for document authentication.

2.    Franciscan's witnesses may include any or all of the following persons:

    a.    Linda Steinhilber, 1201 South Main Street, Crown Point, IN 46307.

    b.    Jessica Smosna, 1201 South Main Street, Crown Point, IN 46307.

    c.    Dawn Scott, 1201 South Main Street, Crown Point, IN 46307.

    d.    Nita Wirkus, 1201 South Main Street, Crown Point, IN 46307.

    e.    Travis Thatcher-Curtis, 1201 South Main Street, Crown Point, IN 46307.

    f.    Jen Justice, 1201 South Main Street, Crown Point, IN 46307.

    g.    Kristine Rogalski, 1201 South Main Street, Crown Point, IN 46307.

    h.    Heather Wyatt, 1201 South Main Street, Crown Point, IN 46307.

    i.    Connie Snow, 1201 South Main Street, Crown Point, IN 46307.

    j.    Carrie Renchen, 1201 South Main Street, Crown Point, IN 46307.

    k.    Daniel McCormick, 1201 South Main Street, Crown Point, IN 46307.

    l.    Any witness used for rebuttal / impeachment;

    m.    Any witness listed by Plaintiff, whether or not they are actually called to testify;

    n.    Any witness used for document authentication.

3.    In the event there are other witnesses to be called at the trial, their names and addresses and the general subject matter of their testimony will be reported to opposing counsel, with copy to the Court, at least ten (10) days prior to trial. Such witnesses may be called at trial only upon leave of Court. This restriction shall not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial.

K.     It is directed that requests for special instructions must be submitted to the Court, in writing and on a computer disk (or in another electronic format), with supporting authorities, at or prior to the commencement of the trial, subject to the right of counsel to supplement such requests during the course of the trial on matters that cannot reasonably be anticipated.

L.     **AMENDMENTS**.

No amendments to the pleadings are anticipated.

M.     **TRIAL BRIEFS**.

Trial Briefs, if any, will be filed by the deadline previously established by this Court's Order for the filing of such motions.

N.     **PRETRIAL ORDER**.

This pre-trial order has been formulated after conference at which counsel for the respective parties have appeared. Reasonable opportunity has been afforded counsel for corrections or additions prior to signing by the Court. Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court or by order of the Court to prevent manifest injustice. The pleadings will be deemed merged herein.

O.     **SETTLEMENT**.

The parties have discussed settlement, but have been unable to reach agreement. They will continue to negotiate and will advise the Court immediately if settlement is reached.

P.     **TRIAL**.

The probable length of trial is four days. The case is set for trial before a jury on October 24, 2022 at 9:30 a.m.

Entered this 6th day of March, 2023.

/s/ Andrew P. Rodovich
Magistrate Judge, United States District Court

APPROVED:

Ryan Fox
Attorney for Plaintiff

APPROVED:

Amy Adolay
Attorney for Defendant