UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
|     Plaintiff. | ) |
| | ) |
|     v. | )    CAUSE NO: 2:20-CV-78-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a FRANCISCAN HEALTH CROWN POINT, | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF BACK PAY, PREJUDGMENT INTEREST, AND TAX OFFSET AWARD**

Defendant Franciscan Alliance, Inc., a/k/a Franciscan Health Crown Point ("Franciscan"), by counsel, submits this Response in Opposition to the Motion to Award Back Pay, Prejudgment Interest, and Tax Offset Award [ECF 84] filed by Plaintiff Taryn N. Duis ("Duis").

## I.    INTRODUCTION

On March 9, 2023, the jury entered its verdict for Duis on her Title VII and FMLA claims. Because of that verdict, she now requests back pay, prejudgment interest, and a tax offset. Duis's calculation of her back pay is grossly overstated. After Duis's termination of employment with Franciscan, she obtained new employment at a higher rate of pay only 8 weeks and 6 days later. Duis worked for that employer for over a year and then chose to voluntarily resign. Duis's voluntary resignation is an intervening cause of her claimed damages that cuts off Franciscan's responsibility. While working for her new employer, she also chose not to enroll in the employer's short-term disability benefit which would have compensated her at 60% of her rate of pay during her leave. Her back pay must be reduced by this amount. Additionally, Duis does not reduce her

requested back pay by the amount of unemployment compensation she received. As a result, Duis's calculation for back pay is incorrect. Duis did not mitigate her damages as required by voluntarily resigning her position and thereafter accepting a lower paying position, and by choosing not to participate in the short-term disability benefit. *Stragapede v. City of Evanston, Illinois,* 865 F.3d 861, 868 (7th Cir. 2017).

Moreover, because Duis's calculation of back pay is overstated, her calculation of prejudgment interest is also overstated, and is an incorrect calculation, even if the back pay was not overstated. In addition, Duis's tax offset calculation is incorrect, as it erroneously assumes that all of her claimed backpay would be taxed at the 22% tax bracket.

Based on the foregoing, Franciscan requests that the Court: (1) prevent Duis from claiming backpay for any period after July 15, 2019 because she was earning a higher wage in a new position and voluntarily left that position and chose to not participate in short-term disability benefits at her new employer; (2) reduce Duis's back pay by the amount of unemployment compensation she received; and (3) adjust her prejudgment interest and tax offset to reflect the correct calculations explained below.

## II.  DUIS'S EMPLOYMENT SUMMARY

Duis worked as a registered nurse ("R.N.") at Franciscan. At the time of Duis's termination of employment on May 14, 2019, she was being paid $29.24 per hour. (Ex. A, Affidavit of Nita Wirkus at ¶ 8, Ex. 1 (Franciscan000653)). Duis worked the 7 p.m. to 7:30 a.m. shift and she worked 3 nights per week for an approximate total of 36 hours per week. (Ex. A, Affidavit of Nita Wirkus at ¶ 9; Ex. D, Deposition of Taryn Duis ("Duis Dep."), p. 29, ll. 18 – 25). Thus, her gross pay was $1,052.64 per week ($29.24 * 36).

After Duis's employment with Franciscan was terminated, she applied for unemployment through the Indiana Department of Workforce Development and received unemployment compensation in the amount of $3,120.00. (*See* Ex. B, Plaintiff's Supplemental Verified Answers to Defendant's Interrogatory Nos. 6, 8, and 15 at Interrogatory No. 8).

On July 15, 2019, Duis began working at Fresenius Kidney Care ("Fresenius") as an Acute Dialysis R.N. at a rate of $34.00, working 40 hours per week. (Ex. C, Fresenius Non-Party Discovery Response at Franciscan000795). Duis also received an additional $3.00 per hour because she was an "acute" R.N. (Ex. D, Duis Dep., p. 21, l. 25 – p. 22, l. 12; Ex. C at Franciscan 000832 – 848). Duis's average weekly pay at Fresenius was $1,480.00 ($37.00 * 40). Duis was also eligible for certain benefits through Fresenius, including Short-Term Disability Insurance. (Ex. C at Francsican000796). The offer letter that Duis received explained that Fresenius "offers eligible employees the opportunity to purchase short-term disability insurance which provides employees with 60% of their gross base earnings per week in the event of a qualifying illness or injury during their employment[.]" (*Id.*) Duis was also advised in her offer letter that "New employees of [Fresenius] are required to enroll in benefits programs in which they want to participate within **30 days** of their date of hire." (*Id.*) Duis voluntarily elected to not participate in Fresenius's Short-Term Disability Insurance. (Ex. D, Duis Dep., p. 18, l. 10 – p. 20, l. 4; Ex. C at Franciscan000849 (showing the only benefits Duis enrolled in are Medical, Basic Life, Disability (AD&D), and Long Term Disability (LTD) and those benefits were effective as of August 14, 2019).

Duis took leave for the birth of her child from August 21, 2019 through November 11, 2019, for a total of 12 weeks of leave. (Ex. C at Franciscan000803 and Franciscan000811). Under Fresenius's Short Term Disability Policy, if Duis purchased short-term disability insurance, she

would have received coverage 30 days after her employment began, or August 14, 2019. (Ex. C at Franciscan001061, Franciscan001071). Additionally, there is a 14-day elimination period, so the disability benefit begins on the third week of the disability (Ex. C at Franciscan 1071). Had Duis elected Short-Term Disability coverage under this plan, she would have received 60% of her weekly earnings during any period of disability. (*Id.*) This would have covered 10 of Duis's 12 weeks of leave, and during those weeks she would have earned $888.00 per week ($1480.00 * 60%). (Ex. C. at Franciscan001071 – 1072). Duis voluntarily resigned her employment with Fresenius on August 24, 2020. (Ex. C at Franciscan000806; Ex. D, Duis Dep., p. 16, l. 18 – p. 18, l. 1). Duis stated her reasons for resigning were the long hours and COVID-19 exposure with a premature baby (although her daughter was a year old when she resigned). (Ex. D, Duis Dep., p. 16, l. 18 – p. 18, l. 1).

After resigning her employment with Fresenius, Duis began working for Community Home Care on October 13, 2020, with pay ranging from $35.00 to $89.00 per visit. (*See* Ex. B at Interrogatory No. 8). Additionally, Duis also began working for Bayada Home Health Care Inc. ("Bayada") on October 22, 2020 and was making $24.50 per hour. (*Id.*).

### III.   ARGUMENT

Duis is a prevailing plaintiff as a result of the jury verdict in her favor and has requested back pay, prejudgment interest, and a tax offset. However, each of Duis's calculations and analyses regarding these damages are flawed in several ways, including as a result of her decision to resign from a higher paying job, her decision not to apply for Short-Term Disability benefits, as well as the need to deduct the unemployment compensation she received. Additionally, Duis has overestimated and incorrectly calculated her claimed prejudgment interest and tax offset. Her requested award is grossly overstated and should be reduced.

1. **Duis's Back Pay Request is Overstated.**

Duis requests back pay as a result of the jury verdict in her favor on her Title VII claims. However, her calculation of back pay is overstated and must be corrected.

A Title VII plaintiff is generally entitled to lost earnings or back pay as an equitable remedial measure. *Stewart v. General Motors Corp.*, 542 F.2d 445 (7th Cir.1976). "Back pay is measured as the difference 'between actual earnings for the period and those she would have earned absent the discrimination by the defendant.'" *Robinson v. City of Lake Station*, 630 F.Supp. 1052, 1062 (N.D. Ind. 1986) (quoting *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 786 (7th Cir. 1979)). Section 706(g) of Title VII provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g).

Once the plaintiff has established a gross amount of back pay due, the employer has the burden to show that the plaintiff did not exercise reasonable diligence in finding employment or mitigating her damages. *Sprogis v. United Air Lines, Inc.*, 517 F.2d 387, 392 (7th Cir. 1975). A plaintiff who voluntarily quits comparable interim employment fails to exercise reasonable diligence. *U.S. v. City of Chicago*, 853 F.2d 572, 579 (7th Cir. 1988) (citing *Brady v. Thurston Motor Lines, Inc.*, 753 F2d 1269, 1277 (4th Cir. 1985)). To give the "reasonable diligence" requirement effect, a Title VII claimant must "also use reasonable diligence to maintain any suitable employment which is secured." *Brady v. Thurston Motor Lines, Inc.*, 753 F2d 1269, 1277 (4th Cir. 1985). "To permit otherwise would force the Title VII defendant to pay for the misconduct of a claimant in subsequent employment." *Id.* Failing either the duty of finding reasonable employment or maintaining that job once accepted, results in a tolling or ending of the back pay period. *Id.* at 1277 – 79 (citing *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982)).

Duis began working for Fresenius on July 15, 2019, only 8 weeks and 6 days after her termination. (Ex. C at Franciscan000795). At Fresenius, Duis was employed as an Acute Dialysis R.N., making $37.00 per hour (which included an acute differential pay), which was *more* than she was making when employed by Franciscan. (Ex. C at Franciscan000795, Franciscan 000832 – 848; Ex. D, Duis Dep., p. 21, l. 25 – p. 22, l. 12). Duis voluntarily resigned her employment with Fresenius on August 24, 2020 (Ex. C at Franciscan000806; Ex. D, Duis Dep., p. 16, l. 18 – p. 18, l. 1). Duis stated her reasons for resigning were the long hours and COVID-19 exposure with a premature baby (although her daughter was a year old when she resigned).[1] (Ex. D, Duis Dep., p. 16, l. 18 – p. 18, l. 1). During her employment in 2020 with Fresenius, Duis earned $57,763.58 in less than 9 months, which was more than her yearly earnings at Franciscan would have been had she remained employed with Franciscan during such period. (ECF 84-1 at p. 5).

After voluntarily resigning from Fresenius, Duis began working for Community Home Care on October 13, 2020, with pay ranging from $35.00 to $89.00 per visit. (*See* Ex. B at Interrogatory No. 8; Ex. D, Duis Dep., p. 13, l. 6 – p. 14, l. 15). Duis only earned $485.00 in 2020 and $1050.00 in 2021 at Community Home Care. (ECF 84-1 at pp. 7, 14). Duis also began working for Bayada, making $24.50 per hour and was working between 24 and 32 hours per week. (*See* Ex. B at Interrogatory No. 8; Ex. D, Duis Dep., p. 10, 1. 1 – p. 12, l. 25). At Bayada, Duis earned $1,048.00 in 2020 and $27,083.93 in 2021 (ECF 84-1 at pp. 10, 16). By voluntarily leaving Fresenius, where she was making roughly $75,000 per year, to work to work at Community Home Care and Bayada, Duis chose to make about half the amount of income. Further, by taking this voluntary pay-cut, Duis failed to exercise reasonable diligence in mitigating her damages. *U.S. v. City of Chicago*, 853 F.2d at 579; *Brady*, 753 F2d at 1277 – 79. Accordingly, Duis's damages are

---

[1] Notably, Duis would not have been able to avoid COVID-19 exposure if she remained employed at Franciscan in the Progressive Care Unit.

cut off when she took her role with Fresenius on July 15, 2019, in which she was making more than she had at Franciscan.

Duis may also argue that due to her termination from Franciscan she had to take 12 weeks of unpaid maternity leave while employed by Fresenius. (Ex. C at Franciscan000803 and Franciscan000811). Duis may claim that had she remained employed at Franciscan, she would have been able to receive short-term disability benefits, but was not eligible for such benefits at Fresenius, thus increasing her back pay. This explanation omits important facts. First, if Duis had remained employed at Franciscan, she would have received short-term disability benefits of 60% of her income, after a 7-day elimination period, during her maternity leave. (Ex. A, Affidavit of Nita Wirkus at ¶¶ 11 – 12, Ex. 2 (Franciscan000267)). Duis also had the opportunity, however, to elect short-term disability coverage at Fresenius, and voluntarily chose not to. (Ex. D, Duis Dep., p. 18, l. 10 – p. 20, l. 4; Ex. C at Franciscan000849). Duis claimed in her deposition she was not eligible for short-term disability at Fresenius, but a review of her offer letter and the benefits available at Fresenius reveal that she was in fact eligible for this benefit. (Ex. D, Duis Dep., p. 18, l. 10 – p. 20, l. 4; Ex. C at Franciscan001061, Franciscan001071). Had Duis enrolled in short-term disability at Fresenius, she would have received 60% of her earnings during her leave after a 14-day elimination period. (Ex. C at Franciscan 1071). Therefore, Duis cannot now claim she must be paid for her maternity leave, despite the fact that short-term disability benefits were available to her and despite the fact that there would have been a 14-day elimination period. Duis failed to exercise due diligence in mitigating her damages by voluntarily choosing to not participate in the short-term disability benefit at Fresenius. *U.S. v. City of Chicago*, 853 F.2d at 579; *Brady*, 753 F2d at 1277 – 79.

Finally, Duis's back pay is overstated because it must be reduced by the unemployment compensation she received during the period she was out of work from May 14, 2019 until July 15, 2019. *See Perry v. Larson*, 794 F.2d 279, 285 – 86 (7th Cir. 1986) (noting that under the collateral source rule, the plaintiff should not benefit twice and unemployment compensation must be deducted); *Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149, 161 – 62 (7th Cir. 1981), overruled on other grounds in *Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988) ("the deduction of unemployment compensation received by the plaintiff was an appropriate exercise of the district court's discretion"). Duis received $3,120.00 in unemployment compensation, and that amount must be deducted from any back pay she may receive. (*See* Ex. B at Interrogatory No. 8).

    a. **Duis's Calculation of Back Pay is Lacking Relevant and Crucial Information and Incorrect**

Duis calculates her back pay by calculating her average weekly wage at Franciscan (based on her 2019 W-2), without considering whether her benefits or contributions to a 401K or other allocations are the same as other positions she has held. (ECF 84 at ¶ 4). Duis then calculates her income based on her W-2s relating to other employment she has had since leaving Franciscan, up to 2021 ("Interim Income"). (*Id.*) Duis does not identify how each number is derived, the employers her income came from, her rates of pay, or any benefits or deductions she had as a result of employment with each employer that would affect her W-2 during that year. (*Id.*). Duis subtracts this Interim Income from her calculated lost wages to determine her back pay entitlement. (*Id.*). Again, this calculation does not tell the Court any of the following relevant information:

    (1) what her rate of pay was at each of these employers;

    (2) how long she held each of these positions;

    (3) whether they were comparable employment;

8

(4) whether she received any additional income during each year that is not reported, such as unemployment compensation;

(5) what types of benefits she received that were deducted from her pay and whether those were comparable to the benefits she received at Franciscan; and

(6) what her reasons were for leaving each position she held.

All of this information is relevant to the calculation of Duis's back pay and would reveal to the Court that her back pay should be cut-off by the acceptance of her position with Fresenius, her failure to elect short-term disability coverage, and her failure to deduct her unemployment compensation from her calculated back pay. Accordingly, this Court should not accept Duis's calculation of her back pay as it lacks necessary information and is inaccurate.

### b. Franciscan's Calculation of Back Pay

Before Duis's termination at Franciscan, she was being paid $29.24 per hour and was working approximately 36 hours per week. (Ex. A, Affidavit of Nita Wirkus at ¶¶ 8 – 9, Ex. 1 (Franciscan000653); Ex. D, Duis Dep., p. 29, ll. 18 – 25). Duis obtained employment with Fresenius on July 15, 2019. (Ex. C at Franciscan000795, Franciscan 000832 – 848; Ex. D, Duis Dep., p. 21, l. 25 – p. 22, l. 12). Thus, her lost wages are as follows:

| Hourly Wage | Hours per week | Amount of time out of work | Calculation | Total |
|---|---|---|---|---|
| $29.24 | 36 | May 14, 2019 through July 15, 2019<br><br>(8 weeks and 6 days—round up to 9 weeks) | $29.24 * 36 = $1,052.64/week<br><br>$1,052.64 * 9 = $9,473.76 | **$9,473.76** |

While working for Fresenius, Duis took maternity leave for the birth of her child from August 21, 2019 through November 11, 2019, for a total of 12 weeks of leave. (Ex. C at Franciscan000803 and Franciscan000811). Duis would have received short-term disability

benefits at Franciscan in the amount of 60% of her income during her maternity leave, following a 7-day waiting period. (Ex. A, Affidavit of Nita Wirkus at ¶¶ 11 – 12, Ex. 2 (Franciscan000267)). However, she also had the opportunity to elect short-term disability coverage at Fresenius and voluntarily chose not to. (Ex. D, Duis Dep., p. 18, l. 10 – p. 20, l. 4; Ex. C at Franciscan000849). Had Duis enrolled in short-term disability at Fresenius, she would have received 60% of her earnings during her leave after the 14-day elimination period. (Ex. C at Franciscan 1071). Thus, Duis is not entitled to back pay as a result of her maternity leave.

Additionally, Duis's back pay must be reduced by the unemployment compensation ($3,120.00) she received during the period she was out of work from May 14, 2019 until July 15, 2019. (*See* Ex. B at Interrogatory No. 8).

Thus, after subtracting Duis's unemployment compensation, her back pay is **$6,353.76.**

| Lost Wages | Unemployment Compensation | Calculation | Total |
|---|---|---|---|
| $9,473.76 | $3,120.00 | $9,473.76 - $3,120.00 = $6,353.76 | **$6,353.76** |

This Court should only award Duis back pay in the amount of $6,353.76. Any amount over this would allow Duis a double recovery and require Franciscan to pay for Duis's voluntary resignation from a higher paying position, which is inconsistent with applicable law. Duis also does not reveal to this Court that she voluntarily elected to not participate in short-term disability coverage at Fresenius, which also reduces her claimed back pay. Finally, Duis does not reduce her requested recovery by the unemployment compensation benefits she received. All of these errors result in the need to correct Duis's claimed back pay.

    2. **Duis's Calculation of Prejudgment Interest is Incorrect**.

Duis requests prejudgment interest up to and including December 31, 2021. *See* ECF 84 at ¶ 7. Prejudgment interest is presumptively available for violations of federal law. *See Shott v. Rush-*

*Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 745 (7th Cir. 2003). "[T]here is no statutory rate of prejudgment interest; determining an applicable rate is left to the district court's discretion based on individual circumstances, although the best starting point is to award interest at the market rate, which means an average of the prime rate for the years in question." *Phillips v. City. of South Bend*, No. 3:15CV527-PPS, 2018 WL 2041798 at *11 (N.D. Ind. May 1, 2018) (citing *Cement Div., Nat'l Gypsum Co. v. City of Milwaukee,* 144 F.3d 111, 1114 (7th Cir. 1998) (quotations omitted).

Duis's calculation uses the prime rate, but she suggests that the prime rate may merely be averaged together to obtain a new rate and then compounded. *See* ECF 84 at ¶ 7. This may be an appropriate approach in years in which the prime rate did not fluctuate at multiple points throughout the year. However, given the frequent changes in rates during the time period at issue, the more accurate method is to split out each rate for the period such rate was effective. *See Baier v. Rohr-Mont Motors, Inc.*, 175 F.Supp.3d 1000, 1011 – 12 (N.D. Ill. 2016) (use of fluctuating rate for applicable periods of time to calculate prejudgment interest is appropriate when the prime rates vary). The Court in *Baier* explained its calculation of prejudgment interest by setting out each rate and the time period each rate was in effect. *Id.* It then multiplied the amount of back pay by the applicable prime rate and multiplied that number by the number of years (or fraction of years) the rate was in effect. *Id.* The Court held that this method was an appropriate method to calculate prejudgment interest. *Id.* This method is shown as follows:

| **Back Pay Award** | **Rate**[2] | **Time Period** | **Calculation** | **Total** |
|---|---|---|---|---|
| $6,353.76 | 5.5% | May 14, 2019 through August 1, 2019 (79 days or .22 years) | $6,353.76 * 5.5% * .22 = $76.88 | $76.88 |

---

[2] The historical prime rate can be found on J.P. Morgan Chase & Co's website at https://www.jpmorganchase.com/about/our-business/historical-prime-rate.

| | | | | |
|---|---|---|---|---|
| $6,353.76 | 5.25% | August 1, 2019 through September 19, 2019<br><br>(49 days or .13 years) | $6,353.76 * 5.25% * .13 = $43.36 | $43.36 |
| $6,353.76 | 5% | September 19, 2019 through October 31, 2019<br><br>(42 days or .12 years) | $6,353.76 * 5% * .12 = $38.12 | $38.12 |
| $6,353.76 | 4.75% | October 31, 2019 through March 4, 2020<br><br>(125 days or .34 years) | $6,353.76 * 4.75% *.34 = $102.61 | $102.61 |
| $6,353.76 | 4.25% | March 4, 2020 through March 16, 2020<br><br>(12 days or .03 years) | $6,353.76 * 4.25% * .03 = $8.10 | $8.10 |
| $6,353.76 | 3.25% | March 16, 2020 through December 31, 2021<br><br>(656 days or 1.78 years) | $6,353.76 * 3.25% * 1.78 = $367.57 | $367.57 |
| | | | $76.88 + $43.36 + $38.12 + $102.61 + $8.10 + $367.57 = $636.64 | **$636.64** |

Based on the applicable prime rates in effect from May 14, 2019 until December 31, 2021, Duis is only entitled to $636.64 in prejudgment interest.

3. **Duis's Tax Offset Analysis is Flawed.**

Duis also incorrectly calculates her requested tax offset. The Seventh Circuit has affirmed that a tax offset is appropriate in Title VII back pay awards. *EEOC v. Northern Star Hospitality, Inc.*, 777 F.3d 898, 903 – 04 (7th Cir. 2015). However, the offset must be calculated properly and work must be shown in order to not frustrate appellate review. *Id.*

Duis argues that the entire amount of her backpay award will be taxed at the 22% tax bracket. There is no support for this position given that Duis's past years of taxable income were

$36,155.00 (2020) and $21,685.00 (2021). *See* ECF 84-1 at pp. 13, 19. Based on Duis's filing status as Married Filing Jointly, the tax brackets and taxes owed for 2023[3] would be:

| Tax Rate | Taxable income bracket | Taxes owed |
|---|---|---|
| 10% | $0 to $22,000. | 10% of taxable income. |
| 12% | $22,001 to $89,450. | $2,200 plus 12% of the amount over $22,000. |
| 22% | $89,451 to $190,750. | $10,294 plus 22% of the amount over $89,450. |
| 24% | $190,751 to $364,200. | $32,580 plus 24% of the amount over $190,750. |
| 32% | $364,201 to $462,500. | $74,208 plus 32% of the amount over $364,200. |
| 35% | $462,501 to $693,750. | $105,664 plus 35% of the amount over $462,500. |
| 37% | $693,751 or more. | $186,601.50 + 37% of the amount over $693,750. |

For any income under $22,000.00, Duis will be taxed at 10%. For any income between $22,001.00 and $89,450.00, Duis will be taxed at 12%. And for any income between $89,451.00 and $190,750.00, Duis will be taxed at 22%.

Duis has presented no information regarding her 2023 salary or rate of pay. Further, she has presented no evidence that her current income plus $6,353.76 in back pay and $636.64 in prejudgment interest would push her over the $89,450.00 threshold of the 12% tax bracket. Even if it did, Franciscan would be responsible only for the amount over $89,450.00, as she would only be taxed at 22% for that amount. *See* Tax Rate Table (above) (showing that only an amount over $89,450.00 will be taxed at 22%, and the amount below $89,450.00 would be taxed at Duis's normal tax rate of 12%).

---

[3] *See* IRS.gov, IRS provides tax inflation adjustments for tax year 2023, at https://www.irs.gov/newsroom/irs-provides-tax-inflation-adjustments-for-tax-year-2023.

Without more information regarding Duis's potential 2023 income, this Court cannot determine if Duis's recovery of back pay and prejudgment interest would result in a higher tax rate. Accordingly, this Court should deny Duis's request unless she submits supporting documentation that shows she will be taxed on a part of her recovery at the 22% tax bracket.

### IV.     CONCLUSION

Duis's Motion to Award Back Pay, Prejudgment Interest, and Tax Offset Award should be denied as it overstates her entitled recovery, and as a result her prejudgment interest is also overstated and incorrectly calculated. Additionally, there is no support that Duis's recovery will shift a part of her 2023 income into the next tax bracket and she is not entitled to a tax offset. As set forth above by Franciscan, Duis is only entitled to $6,353.76 in back pay and $636.64 in prejudgment interest, for a total of **$6,990.40**.

Franciscan respectfully requests that Duis only be awarded $6,353.76 in back pay and $636.64 in prejudgment interest, for a total of **$6,990.40,** and for all other just and proper relief.

Respectfully Submitted,

By:   Amy J. Adolay, Atty. No. 23147-49
      Elizabeth M. Roberson, Atty. No. 34097-64
      KRIEG DEVAULT LLP
      12800 N. Meridian Street, Suite 300
      Carmel, IN 46032
      Telephone: (317) 238-6342
                 (317) 238-6330
      Facsimile:  (317) 636-1507
      Email: aadolay@kdlegal.com
             eroberson@kdlegal.com

      Robert A. Anderson, Atty. No. 15359-71
      KRIEG DEVAULT LLP
      8001 Broadway, Suite 400
      Merrillville, IN  46410
      Telephone: (219) 227-6100
      Facsimile:  (219) 227-6101
      Email: randerson@kdlegal.com
      *Counsel for Defendant Franciscan Alliance, Inc.*

KD_14564632_9.docx