**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| **TARYN N. DUIS,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO: 2:20-CV-78-APR** |
| | ) | |
| **FRANCISCAN ALLIANCE INC., a/k/a** | ) | |
| **FRANCISCAN HEALTH CROWN** | ) | |
| **POINT,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF POST-TRIAL MOTION FOR NEW TRIAL OR, ALTERNATIVELY, FOR REMITTITUR

Defendant Franciscan Alliance, Inc. ("Franciscan"), by counsel, submits this Memorandum of Law in support of its Post-Trial Motion for New Trial Or, Alternatively, for Remittitur pursuant to Rule 59(a)(1)(A) and 59(e) of the *Federal Rules of Civil Procedure*.

### INTRODUCTION

This case was tried before a jury on March 6 – 9, 2023, resulting in a verdict in favor of Plaintiff Taryn Duis ("Duis") in the total amount of $5.5 million. All told, the jury awarded Duis $500,000 in compensatory damages plus $5 million in punitive damages.

To reach such a ruling, the jury evidently determined Franciscan discriminated against Duis on the basis of her pregnancy and her plans to take maternity leave when it suspended and ultimately terminated her employment. In reality, Franciscan took these corrective actions against Duis based on her unacceptable attitude as demonstrated by her response to a patient's request for pain medication, stating "I don't give a fuck if that patient wants pain meds. He can wait. He

should have taken it before[,]" and her continued inappropriate attitude when meeting with Dawn Scott, Franciscan's Chief Nursing Officer.

Franciscan is entitled to a new trial in this case for three reasons. First, the "mixed motive" instruction to the jury on causation was in error. While the Court instructed the jury that it could find in favor of Duis if it determined that her pregnancy was a "motivating factor" in her termination, the instruction omitted language specifically recommended by the Committee on Pattern Civil Jury Instructions of the Seventh Circuit indicating that Franciscan could negate Duis's ability to establish damages if Franciscan would still have terminated in the absence of her pregnacny. *See* 7th Cir. Pattern Civ. Jury Inst., § 3.01, cmt. c (2017 rev.). The omitted language, parotting 42 U.S.C. § 2000e5(g)(2)(B), would have properly instructed the jury on the law and counterbalanced the more lenient standard of causation in Duis's favor. This manifest error significantly prejudiced Franciscan, as evidenced by the jury's grossly excessive damages award.

Second, a new trial is warranted based on the denial of Franciscan's Motion for Judgment as a Matter of Law on punitive damages, which the Court denied before handing the case to the jury for deliberation. Simply put, there was a complete lack of testimony at trial showing Franciscan acted with the requisite malice or reckless indifference to Duis's federally protected rights. Although Duis presented no evidence whatsoever to garner punitive damages, the Court nevertheless gave the jury a punitive damages instruction. The jury proceeded to award Duis $5 million in punitive damages.

Third, Franciscan is entitled to a new trial because the jury's compensatory and punitive damages awards are "monstrously excessive", such that the only possible conclusion is that the jury "was infected with such an irrational 'inflamed passion' that its liability determination must be questioned." *Fall v. Indiana Univ. Bd. of Trustees*, 33 F. Supp. 2d 729, 739, 1998 WL 941098

(N.D. Ind. 1998) (citing *Ustrak v. Fairman,* 781 F.2d 573, 578–79 (7th Cir. 1986). Given the jury's patently excessive damages award – which was wholly untethered to any evidence or testimony adduced at trial – this case presents the "unusual" situation in which a new trial on liability is warranted.

Alternatively, should the Court determine that Franciscan is not entitled to a new trial, a substantial remittitur of the jury's damages award is warranted. For starters, the $5.5 million award far exceeds the $300,000 statutory maximum Duis may recover under 42 U.S.C. § 1981a(b)(3)(D).

But given the evidence in this case (or lack thereof, as it pertains to Duis's burden), the Court should further reduce the jury's compensatory and punitive damages awards to an amount well below the cap. Nothing in Duis's scant testimony about her purported emotional distress bears any rational connection to the amount of compensatory damages the jury awarded her. To the contrary, the jury's $500,000 compensatory damages award is untethered to any evidence at all.

Similarly, the Court should also further reduce the jury's $5 million punitive damages award to an amount below the cap. The testimony at trial showed a complete lack of reprehensible conduct on Franciscan's part. The 10 to 1 ratio between the compensatory and punitive components awards strongly indicates the punitive award was excessive. And a $5 million punitive damage award dwarfs amounts given in comparable discrimination cases.

## ARGUMENT

**I.**    **Franciscan is Entitled to a New Trial.**

Franciscan respectfully submits that a new trial is warranted in this matter for multiple reasons. Under Fed. R. Civ. P. 59(a)(1)(A), a motion for a new trial may be granted where "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid-Am. Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d

1353, 1367 (7th Cir. 1996). Here, Franciscan is entitled to a new trial based on (1) an improper jury instruction on the mixed motive standard for discrimination cases; (2) denial of Franciscan's judgment as a matter of law on punitive damages; and (3) the jury's "monstrously excessive" damages award that had no rational basis in the evidence.

A.  A New Trial is Necessary Based on the Erroneous "Mixed Motive" Jury Instruction.

A new trial is necessary in this case based on an improper jury instruction related to causation. Specifically, the Court adopted Duis's tendered instruction on "mixed motive" causation and instructed the jury that it could find in favor of Duis if it determined that her pregnancy was a "motivating factor" in her termination. Over Franciscan's objection, the Court gave the instruction reproduced below:

**CAUSATION – TITLE VII AND PDA CLAIMS**

Plaintiff must prove that she was terminated because of her pregnancy/childbirth and/or protected activity.  "Because of" does not mean the sole or only factor, it means that her pregnancy and/or protected activity was a motivating factor, even though other reasons may be present.  Often, single events have multiple "because of" causes. Defendant cannot avoid liability just by citing some other factor that contributed to the termination of Plaintiff's employment, so long as Plaintiff's pregnancy/childbirth and/or protected activity was at least one cause of that decision.

A "mixed-motives" case is one in which "an employee alleges that he suffered an adverse employment action because of both permissible and impermissible considerations." *Rapold v. Baxter Int'l Inc.*, 718 F.3d 602, 609 (7th Cir. 2013) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 171 (2009)). The mixed motive standard is based on Congress' 1991 amendment of "Title VII to provide that an 'unlawful employment practice' is established where a plaintiff demonstrates 'that race, color, religion, sex, or national origin was a motivating factor for any

4

employment practice, even though other factors also motivated the practice.'" *Smith v. Wilson*, 705 F.3d 674, 679 (7th Cir. 2013) (quoting 42 U.S.C. § 2000e–2(m)). Thus, if "an employer can establish that the same result would have obtained even 'in the absence of the impermissible motivating factor,' a court may still grant the declaratory relief, injunctive relief, and attorneys' fees and costs (***but not damages***)." *Smith*, 705 F.3d at 679 (quoting 42 U.S.C. § 2000e5(g)(2)(B)( emphasis added).

Here, Franciscan's tendered jury instruction on causation included the language indicating that Franciscan could negate Duis's ability to establish damages if Franciscan would still have terminated her in the absence of her pregnancy. Importantly, the Committee on Pattern Civil Jury Instructions of the Seventh Circuit has expressly recommended that courts include similar language to what Franciscan tendered. *See* 7th Cir. Pattern Civ. Jury Inst., § 3.01, cmt. c (2017 rev.). As Comment (c) to § 3.01 makes clear, in mixed motive cases,

> the Committee recommends the following language instead of the pattern instruction:
>
> > Plaintiff must prove by a preponderance of the evidence that his [*protected class*] was a motivating factor in Defendant's decision to [*adverse employment action*] him. A motivating factor is something that contributed to Defendant's decision.
> >
> > ***If you find that Plaintiff has proved that his [protected class] contributed to Defendant's decision to [adverse employment action] him, you must then decide whether Defendant proved by a preponderance of the evidence that it would have [adverse employment action] him even if was not [protected class]. If so, you must enter a verdict for the Plaintiff but you may not award him damages.***
>
> The Committee recommends use of a verdict form that makes clear, if no damages are awarded, whether the jury decided the plaintiff had not proven her claim or decided that the defendant had met its burden on the mixed motive issue. Without clear guidance in the circuit case law, the Committee cannot offer assistance in determining when a "mixed motive" instruction is appropriate.

*See* 7th Cir. Pattern Civ. Jury Inst., § 3.01, cmt. c (2017 rev.) (emphasis added); *see also* 42 U.S.C. § 2000e5(g)(2)(B). Unfortunately, Duis's proffered instruction conveniently omitted the additional language that needed to be included in a proper instruction, and the Court adopted it over Franciscan's objections.

Given this omission, the causation instruction to the jury was in error because it failed to include the statement that Duis was not entitled to monetary damages if Franciscan could establish it would have taken the same action "even in the absence of the impermissible motivating factor." *Smith*, 705 F.3d at 679. In other words, while Duis was entitled to the benefit of the "motivating factor" instruction, Franciscan was entitled to a commensurate statement instructing the jury that Duis could not recover damages if Franciscan would still have terminated her irrespective of her pregnancy. Omitting this limiting language was clear error that resulted in significant prejudice to Franciscan. Indeed, the counterbalancing effect of the restrictions on a plaintiff's recovery are critical because the "motivating factor" language creates a "relatively lenient" standard. As one court aptly observed,

> the relatively lenient [mixed motive] standard is counterbalanced by potential restrictions on a plaintiff's recovery for a mixed-motive claim. Under Title VII, a plaintiff asserting a mixed-motive claim is entitled only to declaratory relief, limited injunctive relief, and attorney fees and costs where the employer demonstrates that it would have taken the same employment action in the absence of an impermissible motivating factor.

*Spees v. James Marine, Inc.*, 617 F.3d 380, 389–91 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(g)(2)(B).

Moreover, the evidence at trial clearly established Franciscan still would have terminated Duis based on her poor attitude and job performance, even had she not been pregnant. Indeed, the evidence showed Franciscan suspended Duis and ultimately terminated her for not meeting the

6

legitimate expectations of the job; including her unacceptable attitude shown by her response to a patient's request for pain medication, and her continued inappropriate behavior when meeting with Dawn Scott, Franciscan's Chief Nursing Officer.

Given this evidence, Franciscan sufficiently met the standard to preclude Duis's entitlement to monetary damages. Yet based on the erroneous mixed motive instruction, the jury had no understanding that Franciscan could (and did) negate Duis's ability to recover a money award. *See Rapold*, 718 F.3d at 609 (noting jury instructions are reviewed "to determine if taken as a whole they were sufficient correctly to inform the jury of the applicable law … [and are] reversible only if a litigant is prejudiced."). This omission greatly prejudiced Franciscan, as the jury proceeded to award Duis $5.5 million in monetary damages on a claim that garnered exactly none. This was clear error, and warrants a new trial.

B.   A New Trial is Likewise Warranted as to Punitive Damages.

Franciscan is also entitled to a new trial based on the Court's denial of Franciscan's motion for judgment as a matter of law on Duis's claim for punitive damages. This denial, and the subsequent instruction to the jury that Duis could recover punitive damages, was clear error. Duis wholly failed to establish that Franciscan acted in reckless disregard of her protected rights.

An employer can be held liable for punitive damages in a Title VII case when the employer "engage[s] in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the [plaintiff's] federally protected rights." *Clark v. Metro Health Found., Inc.*, 90 F. Supp. 2d 976, 983, 2000 WL 378040 (N.D. Ind. 2000) (quoting 42 U.S.C. § 1981a(b)(1)). "The punitive damage standard—which is higher than that for compensatory damages—does not require that the plaintiff show egregious or outrageous conduct independent of the employer's state of mind, but does require that the plaintiff show that an employer discriminated in the face of a

7

perceived risk that its actions violated federal law." *Clark*, 90 F. Supp. 2d at 983 (citing *Kolstad v. American Dental Assoc.,* 119 S. Ct. at 2124–2126)).

Here, following the close of evidence but prior to turning the case over to the jury for deliberation, Franciscan moved for a judgment as a matter of law on Duis's claim for punitive damages. The Court denied Franciscan's motion and proceeded (over Franciscan's objection) to instruct the jury that it could award punitive damages.[1]

Nothing presented at trial shows Franciscan acted with malice or with reckless indifference to Duis's federally protected rights. Indeed, Duis testified to only two alleged incidents even remotely touching on purported discrimination based on her pregnancy or FMLA leave. In the first alleged incident, Duis testified that her supervisor, Linda Steinhilber, mocked her and stated "Oh, I need to call the doctor to the floor for myself. I can't handle doing my job because I'm pregnant." (Trial Tr., p. 21, ll. 1 – 15). In the second, Duis claimed Franciscan's human resources manager, Jessica Smosna, indicated that Franciscan was "frustrated" that Duis was going to take FMLA for her maternity leave, that Duis cared more about her daughter than her job, and that those values don't coincide with Franciscan values. (Trial Tr., p. 41, l. 10 – p. 42, l. 13).

These incidents – even if true – come nowhere close to the reckless disregard for protected rights necessary to garner punitive damages. Moreover, at trial, Franciscan presented uncontroverted evidence that it engaged in good faith efforts to implement an anti-discrimination policy. Accordingly, even if Duis had met the required showing (she did not), Franciscan "may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to [Franciscan's] good faith efforts to comply with the law."

---

[1] At the parties' arguments on jury instructions and in the presence of both parties' counsel, the Court indicated its skepticism about Duis's proffered instruction on punitive damages and her ability to recover same. The Court further indicated it might need to "take another look" if the jury were to return a punitive damages award.

*U.S.E.E.O.C. v. R.R. Donnelley & Sons Co.*, 13 A.D. Cases 947 (N.D. Ill. July 29, 2002) (quoting *Kolstad,* 527 U.S. at 545-46)t ; *see also Bruso v. United Airlines, Inc.,* 239 F.3d 848, 858 (7th Cir. 2001) ("[e]ven if the plaintiff establishes that the employee's managerial agents recklessly disregarded his federally protected rights while acting within the scope of their employment, the employer may avoid liability for punitive damages if it can show that it engaged in good faith efforts to implement an anti-discrimination policy").

Given Duis's complete failure to prove Franciscan recklessly disregard her rights, coupled with the failure to consider Franciscan's evidence of good faith efforts to implement an anti-discrimination policy, the Court should have granted Franciscan's judgment as a matter of law on punitive damages. The jury proceeded to award Duis $5 million in punitive damages to which she was not entitled. Accordingly, a new trial should be granted.

C.  <u>Given the Grossly Excessive Damages Award, a New Trial is Warranted</u>.

Franciscan is further entitled to a new trial based on the grossly excessive jury award totaling $5.5 million. Franciscan recognizes that only in an "unusual case will a court order a new trial on liability because of an error in assessing damages[.]" *Davis v. Consol. Rail Corp.*, 788 F.2d 1260, 1263 (7th Cir. 1986). However, given the jury's manifestly excessive damages award, Franciscan submits this is the unusual case that should "indeed cause the Court to 'raise a suspicious judicial eyebrow[.]" *Fall v. Indiana Univ. Bd. of Trustees*, 33 F. Supp. 2d 729, 739, 1998 WL 941098 (N.D. Ind. 1998) (quoting *TXO Production Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 482, (1993) (O'Connor, J., dissenting)).

With due respect to the jury's service in this case, the jury's excessive award of $500,000 in compensatory and $5 million in punitive damages points to only one possible conclusion – that the jury was "swept away by passion and prejudice, in which event there must be a new trial … as

a jury whose judgment on damages was so impaired cannot be trusted to have determined liability accurately, either." *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1143 (7th Cir. 1985). As discussed in detail below, ***both*** the compensatory and punitive damages components of the jury's award are massive and legally flawed in multiple respects. This is not a case in which "the apparent reasonableness of the compensatory award supports a belief that the jury arrived at its liability determination in a calculated and proportionate manner." *Fall*, 33 F. Supp. 2d at 739. To the contrary, the size and evident irrationality of the jury's compensatory and punitive damages calculation – $5.5 million for purported pregnancy discrimination – strongly indicates the jury's liability determination was similarly flawed. *Contra id.* ("[T]he fact that the jury's punitive damages award may represent an unreasonable attempt at 'over deterrence,' or a disproportionate punishment, does not indicate that their liability determination was similarly flawed, particularly in light of the apparently reasonable compensatory award."). Indeed, Duis's evidence in this case gave the jury ***nothing*** – medical bills, treatment records, or otherwise – upon which to base an award of compensatory damages. Duis's counsel did not even attempt to "blackboard" damages for the jury in closing argument.

It follows that this case is one in which the damages award "was so excessive that the jury must have been carried away by 'passion and prejudice[.]'" *See Douglass*, 769 F.2d at 1145 (granting new trial and noting $300,000 award for emotional distress was an "absurd figure" where plaintiff "suffered no severe or permanent psychiatric harm – nothing more than transitory emotional distress"). As the Seventh Circuit has "repeatedly emphasized … we will not allow plaintiffs to throw themselves on the generosity of the jury; if they want damages they must prove them." *Id.* at 1144. Accordingly, Franciscan should be entitled to a new trial on liability.

II.   **Alternatively, Substantial Remittitur of the Jury's Damages Award is Warranted.**

Even if the Court decides not to order a new trial, the jury's damages award should be substantially reduced. For one thing, Duis is not entitled to a combined compensatory and punitive award exceeding the statutory cap of $300,000, necessitating a reduction. But the evidence at trial also necessitates a further remittitur of the jury's compensatory and punitive damages award to an amount well below the statutory maximum.

A.   The Court Must Apply the Mandatory Cap Pursuant to 42 U.S.C. § 1981a(b)(3)(D).

Pursuant to 42 U.S.C. § 1981a(b)(3)(D), Duis can recover no more than $300,000 in combined compensatory and punitive damages on her pregnancy and FMLA discrimination claims. As applied to employers with more than 500 employees, compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section" cannot exceed $300,000. 42 U.S.C. § 1981a(b)(3)(D). "[A] district court may independently reduce the amount of damages without affording plaintiff the option of a new trial when the amount of damages is regulated by statute or law." *Jonasson v. Lutheran Child & Family Servs.*, 1996 WL 327965, at *2 (N.D. Ill. June 12, 1996), *aff'd*, 115 F.3d 436 (7th Cir. 1997).

Here, the jury awarded Duis $5.5 million in combined compensatory and punitive damages, far exceeding the mandatory statutory cap. Accordingly, at the absolute minimum, the Court must reduce Duis's damages to a total of $300,000. *See, e.g., Williams v. Pharmacia Opthalmics, Inc.*, 926 F. Supp. 791, 793 (N.D. Ind. 1996) ("Both the compensatory and the punitive damage award exceed the combined limit. Accordingly, Ms. Williams's verdict must be reduced from a combined $1,250,000.00 to $300,000.00[.]").

The Seventh Circuit has noted that there is no prescribed method for adjusting punitive and compensatory damages to an amount within the cap. *See Lust v. Sealy, Inc.*, 383 F.3d 580, 589 (7th Cir. 2004). The "common method is to cut punitive damages first, and compensatory damages second, until the award is within the cap." *Chapin v. Mid-States Motors, Inc.*, 2007 WL 2164527, at *1 (N.D. Ind. July 25, 2007). However, the Seventh Circuit has also upheld adjustments taking "the entire cut out of the award of compensatory damages" and pro rata reductions of both the compensatory and punitive damages components. *See, e.g., Jonasson*, 115 F.3d at 441 (reducing compensatory damages award to $100,000 but leaving undisturbed the award of $100,000 in punitive damages); *Lust*, 383 F.3d at 590-91 (upholding reduction to 1/11th of compensatory damages before further reducing punitive damages to $150,000).

B.  The Jury's Compensatory Damages Award Must be Reduced Below the Cap.

In addition to the applying the statutory cap, fairness also requires the Court to further reduce the compensatory damages component of the jury's award, which was grossly excessive and wholly untethered to any evidence adduced at trial. Specifically, the jury awarded Duis $500,000 in compensatory damages for emotional distress she purportedly suffered following her termination. However, the evidence of Duis's claimed emotional distress at trial was scant at best and in no way bore a rational connection to the $500,000 award. It follows that the Court should substantially reduce Duis's compensatory damages.

Courts "evaluate an award of compensatory damages by asking (1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 446 (7th Cir. 2010). "The decision to set aside a jury verdict lies within the sound discretion of the trial judge." *Haluschak v. Dodge City of*

*Wauwatosa, Inc.*, 909 F.2d 254, 256–57 (7th Cir. 1990); *see also David v. Caterpillar*, 324 F.3d 851,864 (7th Cir. 2003) (noting district court's decision on remittitur is reviewed under an abuse of discretion standard).

"[T]he slighter the emotional distress, the lower the ceiling on a reasonable award of damages[.]" *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1229 (7th Cir. 1995). "[A]n award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress." *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1068 (7th Cir. 2001); *see also Deloughery v. City of Chicago*, 422 F.3d 611, 620 n.5 (7th Cir. 2005) (noting that a jury is entitled to conclude that plaintiff need not consult a mental health professional to establish emotional distress).

Nevertheless, "[i]t's not enough for the plaintiff to just spout off some buzzwords in order to get [his] case to a jury. [He] can't just say in a conclusory way that 'I'm a wreck' or 'my grief is overwhelming' and then expect to get [his] case to a jury. Rather, [he] has to show that the emotional toll is real." *Rosen v. MLO Acquisitions LLC*, 505 F. Supp. 3d 823, 827 (N.D. Ind. 2020). The Seventh Circuit has stated: "[W]hen the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003).

Thus, "bare allegations by a plaintiff that the defendant's conduct made him 'depressed,' 'humiliated,' or the like are not sufficient to establish injury unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action." *Id.* at 929-30 (affirming judgment as a matter of law in favor of former employer, concluding that bare allegations of embarrassment and humiliation "were insufficient to justify sending the issue to the jury"); *see also Biggs v. Village*

*of Dupo*, 892 F.2d 1298, 1305 (7th Cir. 2990) (holding that statements by plaintiff that he was "depressed, a little despondent, or even completely humiliated" were not enough to establish injury). Moreover, a plaintiff must "show demonstrable emotional distress, not just point to circumstances . . . which might support an inference of . . . injury." *Alston v. King*, 231 F.3d 383, 388 (7th Cir. 2000) (internal quotation marks omitted). In short, "a plaintiff must offer specific facts as to the nature of his or her claimed emotional distress and its causal connection to the allegedly violative actions[.]" *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000).

At trial, Duis did not proffer an expert witness to substantiate her emotional distress or testify as to any treatment she received. Nor did she admit any medical records establishing treatment for emotional distress or other injuries. Uncontroverted evidence at trial also showed Duis's anxiety predated the termination and therefore was not attributable to Franciscan's actions. For example, Duis had suffered a panic attack in April serious enough to be examined by a doctor and sent home from work prior to any alleged wrongdoing on the part of Franciscan; (2) Duis had recently suffered a miscarriage; and, (3) Duis was pregnant. She failed to prove that Franciscan's conduct caused any of her alleged mental distress.

Duis supported her claim for emotional distress with nothing except her own testimony and her mother's testimony (Renee Salmi), which was conclusory and unsubstantiated. Indeed, over the span of a four-day trial, the entire universe of testimony pertaining to Duis's alleged emotional distress comprises less than three whole transcript pages, reproduced below.

11    So I instantly -- I started having panic attacks.  I was
12 losing weight.  I couldn't eat.  I was terrified.  This was the
13 first and only nursing job I had had.  I was so excited to get
14 it because I was able to get a critical care position right out
15 of school.
16    And I was terrified that only having one nursing job in
17 my, you know, almost five years of nursing at this point, I
18 didn't know how it was going to look being fired.  That
19 scared me.
20    I was worried that I didn't know anybody who would hire a
21 nurse that was six months pregnant.  Nursing orientation is
22 three months.  So if you figure starting at six months, by the
23 time three months comes, it's pretty much time for maternity
24 leave.  So it's very hard to hire a nurse that's, you know,
25 more than halfway through their pregnancy.

[Trial Tr., Duis testimony, p. 46, ll. 3 – 25].

1    So I was having a lot of anxiety.  I was -- I couldn't
2 sleep.  I couldn't eat.  My blood pressure was through the
3 roof.
4    I was hospitalized every single weekend in July.  Every
5 single weekend, I had four hospital admissions for multiple
6 days with my blood pressure in the 200s and just --

[Trial Tr., Duis testimony, p. 47, ll. 1 – 6].

```
 5   Q.   As soon as you got off the phone that day you were
 6   terminated, what was your emotional state for the next few
 7   hours?
 8   A.   I cried and cried.  I was devastated.  I was heartbroken
 9   and devastated.
10   Q.   And how long did that feeling last?
11   A.   For quite some time.  I would say even -- even when I was
12   lucky enough to get a new job, probably a little bit past that,
13   because it was very stressful to start a new job six-and-a-half
14   months pregnant and -- or six months pregnant and -- It was
15   very stressful.
```

[Trial Tr., Duis testimony, p. 48, ll. 5 – 15].

```
10   Q.   So based on your observation and experience, how did this
11   termination impact Ms. Duis?
12   A.   Taryn is very -- She's very Type A.  She does everything
13   you know, by the book.  She's -- And when she was fired, it was
14   really hard for her, and it was really hard for the fact that
15   they said that she had done things that -- that weren't true.
16   And she was extremely depressed.
17        She was extremely stressed out.  She started having blood
18   pressure problems.  She was -- She was very depressed.  She was
19   very upset.
20        I mean, she was -- It was hard for her to function.  She
21   said many times that, if it wasn't for her baby and her son,
22   she said, "I just wouldn't even want to live," because she knew
23   that it was going to be so hard to, like, try to find a job
24   while she's pregnant, who's going to hire somebody who's going
25   to take off in two months while she's pregnant.  And, you know,
```

[Trial Tr., Salmi testimony, p. 11, ll. 10 – 25].

```
 1   and then she, you know, wouldn't have any time off.
 2        So it was very hard.  It was very upsetting.
```

16

[Trial Tr., Salmi testimony, p. 12, ll. 1 – 2].

Taking Duis's and her mother's testimony at face value, there is no rational nexus whatsoever between the emotional distress Duis claims and the amount the jury awarded. To be sure, the jury was not tallying medical bills or computing costs of doctor visits – because no such evidence was introduced – in order to arrive at a baseline amount of compensatory damages. Instead, the jury appears to have simply pulled a compensatory damages number (and a grossly excessive one at that) out of thin air based on Duis's conclusory statements that she was "devastated", "heartbroken", and "having a lot of anxiety." Nothing in Duis's or her mother's scant testimony about Duis's emotional distress bears any rational connection to the amount of compensatory damages the jury awarded her. To the contrary, the jury's $500,000 compensatory damages award is untethered to any evidence *at all*. That alone warrants a reduction of the compensatory damages component of the jury's award.

Moreover, the jury's compensatory damages award is both "monstrously excessive" and nowhere close to being "roughly comparable to awards made in similar cases." *See Pickett*, 610 F.3d at 446. "[E]motional damages awards within the Seventh Circuit typically fall within the range of $500 to $50,000 or more." *Spina v. Forest Pres. Dist. of Cook Cnty.*, 207 F. Supp. 2d 764, 773 (N.D. Ill. 2002). "Only in a few cases involving special circumstances has the Seventh Circuit deviated from this norm and affirmed awards in greater amounts." *Flanagan v. Office of Chief Judge of Circuit Court of Cook Cnty., Illinois*, 2008 WL 11516424, at *3 (N.D. Ill. June 2, 2008) (citations and internal quotations omitted). As the Seventh Circuit has noted, an "out of the ordinary" award of $200,000 for pain and suffering was warranted where the discriminatory conduct threatened the plaintiff's safety. *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999). But *Neal* was a clear outlier given the "palpable" risk of physical harm to the plaintiff. See

*Id.* ("But Neal's claim is out of the ordinary, given the threats of physical injury. Neal feared that Young would figure out her role in the affair and "get" her as promised. So palpable was the risk that even Honeywell felt that the best course of action was to send Neal off on a one-month leave of absence, because it could not guarantee her safety."). Indeed, the Seventh Circuit made clear that such an award would be excessive if the plaintiff had only suffered "ostracism, a year-long depression, and upheaval in her life." *Id.*

Awards in other pregnancy and FMLA discrimination cases with similar facts come nowhere close to the $500,000 the jury awarded here. For example, in *Hollingsworth v. Time Warner Cable*, 861 N.E.2d 580, 599 (2006), the plaintiff was a "young expectant mother" who had been anticipating closing on a new home and was "dependent on her job at Time Warner to pay for the new home." The trial testimony established that on the day of her termination she was "devastated, hysterically crying, and an emotional wreck." *Hollingsworth*, 861 N.E.2d at 599. In the month after the termination, she had "become unmotivated and withdrawn from her husband and daughters, and she had visited her obstetrician to discuss her depression." *Id.* Two months prior to her termination, she had also visited a psychiatrist, allegedly because of humiliation she had suffered at the hands of coworkers and managers as a result of her pregnancy-related absences. *Id.* The jury awarded her $32,500 in compensatory damages for this emotional distress, an amount upheld on appeal. *Id.*

The following table illustrates even further the excessive nature of the compensatory damages award in this case:

| Case | Compensatory Damages Award | Case Details |
|------|----------------------------|--------------|
| *Avita v. Metro Club of Chicago, Inc.*, 49 F.3d 1219, 1228 (7th Cir. 1995). | $10,500 (reduced by remittitur from an initial award of $21,000) | • Retaliation<br>• Court held that $21,000 was excessive for a plaintiff who was still "deeply depressed" years after |
| *Marion Cnty. Cornorer's Office v. EEOC*, 612 F.3d 924 (7th Cir. 2010). | $20,000 (reduced by remittitur from an initial award of $200,000) | • Race discrimination and retaliation<br>• Plaintiff in weekly therapy for months<br>• Plaintiff diagnosed with "situational depression" |
| *David v. Caterpillar, Inc.*, 185 F.Supp.2d 918, 926 (C.D. Ill. 2002), *aff'd*, 324 F.3d 851 (7th Cir. 2003). | $50,000 (reduced by remittitur from an initial award of $100,000) | • Retaliation –failure to promote<br>• Plaintiff testified she "felt robbed", "cheated", "like a truck had just run [her] over", and "she became very depressed"<br>• Plaintiff would go home and go right to bed for a two-week period, had difficulty sleeping, cried, and experienced stomach aches |

Given the amount of emotional distress awards in similar cases, it is beyond dispute that the jury drastically over-compensated Duis. Indeed, the compensatory damages the jury awarded Duis are **ten times** the upper limit of the "typical range" for awards within the Seventh Circuit. *See Spina*, 207 F. Supp. 2d at 773. Nothing presented at trial brings Duis's emotional distress within the set of unusual cases necessitating a deviation from the typical range. *See Flanagan*, 2008 WL 11516424, at *3. Yet the jury awarded Duis half a million dollars in compensatory damages alone, even surpassing awards in "outlier" cases involving significantly more serious suffering. *See e.g. Naeem v. McKesson Drug Co.*, 444 F.3d 593, 600 & 611 (7th Cir. 2006) (upholding a $240,000 award where the plaintiff suffered many physical symptoms of stress, contemplated suicide, and changed careers as a result of the abuse); *Farfaras v. Citizens Bank & Trust*, 433 F.3d 558, 566-67 (7th Cir. 2006) (upholding $200,000 compensatory damages award where plaintiff was

regularly physically and verbally assaulted by her employer). Franciscan therefore respectfully submits that a substantial remittitur of the compensatory damages award is warranted here.

C. The Punitive Damages Award Also Must Be Overturned or Significantly Reduced.

In conjunction with reducing the jury's compensatory damages award, the Court should also vacate – or at the very least, substantially remit – the jury's grossly excessive $5 million punitive damages award. As previously discussed, the jury awarded Duis punitive damages without any evidence whatsoever showing Franciscan acted with malice or reckless indifference to Duis's rights. But even if Duis had made such a showing at trial (which she did not), the circumstances do not merit a punitive damages award of the full amount available under the cap.

"Although the 'primary responsibility for deciding the appropriate amount[ ] of [punitive] damages rests with the jury,' the Court has a duty to review the size of punitive awards." *Mendez v. Perla Dental*, 2008 WL 821882, at *6 (N.D. Ill. Mar. 26, 2008) (quoting *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1287 (7th Cir. 1995)), *aff'd in part*, 646 F.3d 420 (7th Cir. 2011); *see also Honda Motor Co., Ltd. v. Oberg,* 512 U.S. 415, 432 (1994) (emphasizing the importance of judicial review in preventing unjust punitive awards). "The decision to set aside a punitive damages award and grant a remittitur is committed to the sound discretion of the district court." *Clark*, 90 F. Supp. 2d at 988 (citing *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.,* 106 F.3d 1388, 1397 (7th Cir. 1997)). The district court may vacate the jury's verdict "if the award is either monstrously excessive, shocks the judicial conscience, has no rational connection to the evidence, or clearly appears to be the result of passion and prejudice." *Clark*, 90 F. Supp. 2d at 987 (citations and internal quotations omitted). Where an award of punitive damages "exceeds an amount necessary to achieve the objective of punishment and deterrence[,]" it should be set aside. *Allahar v. Zahora*, 59 F.3d 693, 696 (7th Cir. 1995). A punitive damage award "may not

constitute merely a windfall to the prevailing party." *Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1314 (7th Cir. 1985).

The Supreme Court has established three "guideposts" to assist courts in determining whether punitive damages are constitutionally excessive: (1) the "degree of reprehensibility" of the defendant's improper conduct; (2) the "disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award;" and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575 (1996).

As to the degree of reprehensibility, the testimony at trial showed a complete lack of reprehensible conduct on Franciscan's part. "Courts determine the reprehensibility of a defendant's conduct by considering whether 'the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.'" *Mendez*, 2008 WL 821882, at *6 (quoting *State Farm,* 538 U.S. at 418). The Supreme Court has further counseled that "[t]he existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id.*

Viewing Duis's testimony in a light most favorable to the verdict the jury reached, there were only two alleged incidents that had anything to do with purported discrimination based on her pregnancy or FMLA leave. In the first alleged incident, Duis testified that her supervisor, Linda Steinhilber, mocked her and stated "Oh, I need to call the doctor to the floor for myself. I can't handle doing my job because I'm pregnant." (Trial Tr., Duis testimony, p. 21, ll. 1 – 15). In the

second, Duis claimed Franciscan's human resources manager, Jessica Smosna, indicated that Franciscan was "frustrated" that Duis was going to take FMLA for her maternity leave, that Duis cared more about her daughter than her job, and that those values don't coincide with Franciscan values. (Trial Tr., Duis testimony, p. 41, l. 10 – p. 42, l. 13). Importantly, these two isolated incidents (wholly denied by the Franciscan employees themselves and eyewitnesses), come nowhere close to exhibiting any of the factors for reprehensibility listed above. Even assuming *arguendo* that these incidents displayed at least some reprehensibility, the degree of the conduct in no way justifies a $5 million punitive damages award against Franciscan. *See Mendez*, 2008 WL 821882, at *6 ($250,000 punitive damages award matched degree of reprehensibility, where although retaliation did not involve physical harm of a bodily injury nature, it involved a series of deliberate reprehensible acts).

As to the second factor, the ratio between the compensatory and punitive damages awards further shows the jury's verdict was excessive. The Supreme Court has expressed concern with punitive damages "awards in excess of four times compensatory damages," especially where the compensatory damages award is also high. *Alexander v. City of Milwaukee*, 474 F.3d 437, 454 (7th Cir. 2007) (citing *State Farm,* 538 U.S. at 418); *see also Mendez*, 2008 WL 821882, at *7 (noting the Supreme Court and Seventh Circuit "have both recognized that high ratios are less alarming when compensatory damages are small"). Here, as previously discussed, the jury's compensatory damages award was ten times the typical range for cases in the Seventh Circuit, yet the jury still applied a 10:1 ratio in assessing punitive damages. In other words, the jury took an already monstrously excessive compensatory damages amount and multiplied it tenfold. That is the definition of an "alarming" ratio and warrants remittitur in and of itself.

Finally, the third guidepost "requires the Court to consider the difference between the punitive damages awarded here and the civil penalties authorized or imposed in comparable cases." *Mendez*, 2008 WL 821882, at *8. To be sure, the jury's $5 million punitive damages award positively dwarfs any reported pregnancy discrimination case Franciscan has located within the Seventh Circuit. For example, in *Buffone v. Rosebud Restaurants, Inc.*, 2007 WL 9817882, at *1 (N.D. Ill. Jan. 3, 2007), the jury awarded $75,000 in compensatory damages and $250,000 in punitive damages to a plaintiff claiming discrimination on the basis of her pregnancy. The jury's punitive damages award here is ***twenty times*** that amount, and drastically above awards in other cases too. *See also Pisut v. Pasavare, Inc.*, 2005 WL 1138638, at *1 (N.D. Ill. Apr. 29, 2005) (awarding plaintiff $500 in compensatory damages and $5,000 in punitive damages based on finding of pregnancy discrimination); *Richard v. Mahajan Corp.*, 2009 WL 6490095, at *1 (S.D. Ind. Dec. 31, 2009) (awarding punitive damages of $5,000 where "evidence received by the court demonstrates that the defendant blatantly discriminated against the plaintiff because of her pregnancy"); *E.E.O.C. v. HCS Med. Staffing, Inc.*, 2012 WL 529593, at *5 (E.D. Wis. Feb. 17, 2012) (awarding $50,000 in punitive damages against employer for intentional discrimination on basis of sex (pregnancy) when it terminated plaintiff's employment).

Given the massive disparity between the jury's punitive damages award in this case and awards upheld in similar pregnancy cases, a substantial remittitur below the statutory cap is warranted. This "case is [not] so egregious that an award at 100 percent of what can legally be awarded against a company of [Franciscan's] size is appropriate … [especially] given the much more egregious nature of some sex discrimination cases … [therefore] the punitive damages must be reduced to a smaller figure." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1356 (7th Cir. 1995) (holding evidence was sufficient to support punitive damages, but holding punitive

damages award of $300,000 had to be reduced to an amount below $100,000 statutory cap); *see also Lust*, 383 F.3d at 589 – 91 (additional reduction of punitive damages award to $150,000 after district court remittitur of jury's $1 million punitive award to $273,000).

## CONCLUSION

Based on the foregoing, pursuant to Fed. R. Civ. P. 59(a)(1)(A), Franciscan respectfully requests a new trial of this matter as outlined herein. Alternatively, pursuant to Fed. R. Civ. P. 59(e), Franciscan requests substantial remittitur of the jury's compensatory and punitive damages awards.

Respectfully Submitted,

By:    Amy J. Adolay, Atty. No. 23147-49
Elizabeth M. Roberson, Atty. No. 34097-64
KRIEG DEVAULT LLP
12800 N. Meridian Street, Suite 300
Carmel, IN 46032
Telephone: (317) 238-6342
           (317) 238-6330
Facsimile:  (317) 636-1507
Email: aadolay@kdlegal.com
       eroberson@kdlegal.com

Robert A. Anderson, Atty. No. 15359-71
KRIEG DEVAULT LLP
8001 Broadway, Suite 400
Merrillville, IN  46410
Telephone: (219) 227-6100
Facsimile:  (219) 227-6101
Email: randerson@kdlegal.com

*Counsel for Defendant Franciscan Alliance, Inc.*

KD_14557231_3.docx