UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 2:20-cv-0078-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF BACK PAY, PREJUDGMENT INTEREST, AND TAX OFFSET AWARD**

Plaintiff, Taryn N. Duis ("Duis"), by counsel, hereby respectfully submits the following Reply in Support of her Motion for Back Pay, Prejudgment Interest, and Tax Offset Award:

**A.    Duis' Weekly Rate is $1,352.3078 per week**

Defendant ignores its own 2019 W-2 documentation given to Duis, and instead contends that Duis' weekly rate is $1,052.64 based upon a general rate of $29.24 per hour X 36 hours per week. But this computation fails to take into account Duis' actual hours, as well as premium shift rates and overtime rates earned by Duis. Duis' computation, on the other hand, is much more reliable because it is based on Defendant's own documentation, in particular the 2019 W-2 given to Duis by Defendant. In 2019, Duis worked 19 weeks, and per her W-2 she earned $25,693.85 with Defendant, which equates to $1,352.3078 per week.

### B.   Duis' Resignation from Fresenius Does Not Cut Off Back Pay

Distilled down, Defendant's main objection to Duis' calculation of back pay is that she voluntarily resigned from Fresenius, thereby allegedly cutting off her back pay. The burden is on Defendant to prove this contention, and a full reading of the applicable standard at play demonstrates that Defendant cannot meet this high burden. Defendant cited *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269 (3rd Cir. 1985), along with Seventh Circuit cases adopting *Brady*, but conveniently failed to mention that this rule is not absolute, as resignations due to unreasonable working conditions, earnest efforts to find better employment, and/or resignations due to compelling or justifying reasons do *not* cut off back pay. *Id*. at 1278. Per *Brady*:

> [T]he rule that voluntary termination of interim employment tolls the back pay period is not unqualified. Thus, a voluntary quit does not toll the period when it is prompted by unreasonable working conditions or the earnest search for better paying employment . . . The back pay period is tolled, however, when the voluntary termination is without compelling or justifying reasons. . . For example, the period is tolled when the quit is motivated by personal reasons unrelated to the job or as a matter of personal inconvenience.

*Id*.

For example, in *U.S. v. City of Chicago*, 853 F.2d 572 (7th Cir. 1988), the Seventh Circuit affirmed that an employee who quit work to find a higher paying and more challenging job did not cut off back pay. *Id*. at 579. Here, Duis did not resign from Fresenius because of personal reasons unrelated to the job or as a matter of personal inconvenience. Duis had compelling, legitimate, justifiable reasons to resign from a job with unreasonable working conditions. Specifically, Duis resigned from Fresenius because she was working extreme hours, plus significant Covid exposure while caring for her baby, who was born premature. [Exh. B, Duis Dep. pp. 16-17]. To elaborate further:

2

> I resigned my employment from Fresenius because from the time I started, until when I resigned, almost every aspect of my job significantly changed due to Covid-19.  When I first started at Fresenius as a dialysis nurse, Fresenius represented that I would work approximately 36-42 hours per week, then maybe 1 on-call shift per week where you could work anywhere from 0-5 hours.  However, Covid-19 changed everything, because doctors began trying to use dialysis on Covid patients as a way to pull fluid from the patients' lungs, in an attempt to help Covid pneumonia.  This resulted in a substantial increase in hours and exposure to Covid-19 patients.  For example, by June 2020 I was working approximately 52-68 hours per week, sometimes up to 73 hours per week.  By August of 2020, nearly all of my patients were Covid-19 patients, the treatments per patient had increased from 3-4 hours to 6-hour treatments, and I was working approximately 65-75 hours a week.  After working 25 hours straight, I contacted my manager to tell her that I did not think it was safe to be working these kinds of hours, and she said it was fine "because we are dialysis."  Then, management held a meeting and informed us that if we are "only working 75 hours a week" then we are barely helping, and if we are working less than 75 hours a week then we might as well quit.  I quit because it was not safe for me to be working these extreme hours and around nearly all Covid-19 positive patients, especially with a baby who was born premature.  Had I not been terminated from Defendant, I would have continued to work my standard schedule of 3-12 hour shifts per week, with the option of picking up additional shifts at overtime and premium rates.  Further, I would not have been exposed to so many Covid-19 positive patients at Franciscan compared to Fresenius, where nearly every patient had Covid.

[Exh. C, Duis Second Decl. ¶ 2].

These are unreasonable working conditions, and Duis had compelling, legitimate, and justifiable reasons for her resignation.  Therefore, Defendant has not met its burden of proving that Duis' back pay award should be reduced.

    **C.**    **Duis was Not Eligible for STD at Fresenius**

Defendant claims that Duis is not entitled to 60% of back pay for 11 weeks of maternity leave because she did not enroll in short term disability insurance benefits.  But Duis was not eligible for STD at the time her baby was born.  [Exh. B, Duis Dep. pp. 18-19].  Nothing in the offer letter to Duis states the terms and conditions of eligibility for short term disability benefits at Fresenius.  Fresenius verbally informed Duis an "Introductory Employee" was not eligible for short term disability benefits, she must

3

work ninety (90) days before graduating from her status as an "Introductory Employee." [Exh. C, Duis Second Decl. ¶ 1]. During those 90 days, Duis did not accrue PTO and she was not eligible for STD. [*Id*.]. Duis gave birth to her daughter thirty-six (36) days after she started at Fresenius. [*Id*.]. Therefore, Duis was not eligible for STD at Fresenius, and had she not been unlawfully terminated from Defendant, Duis would have received 60% of her pay during for 11 weeks of her maternity leave.

### D.   Amended Calculations Based on UB and STD

In terms of these calculations and to avoid drawn out satellite litigation, Duis is mindful that the goal here is "rough justice, not to achieve auditing perfection." *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014). With that in mind, Duis presents a simple method of calculating hard damages. Duis concedes that her unemployment benefits in the amount of $3,120.00 should reduce her back pay award, and 11 weeks of back pay at 40% (Duis would have earned 60% of her pay, so a reduction would be by 40%) should further reduce her award to account for of maternity leave when Duis was unable to work. Accordingly, Duis' amended calculation of back pay is as follows:

Rate based on 2019 W2:  $25,693.85 / 19 weeks = $1,352.3078 per week

| | |
|---|---|
| DOT: | May 14, 2019 |
| Lost Wage Time Period End: | December 31, 2021 |
| Time Period of Lost wages: | 137 weeks |

Lost Wages:   137 weeks X $1,352.3078 =   $185,266.16

| | |
|---|---|
| Interim Income: | 2019: $11,994.06 |
| | 2020: $61,126.00 |
| | 2021: $46,885.00 |
| | $120,005.06 |

| | |
|---|---|
| Unemployment: | $3,120.00 |
| 11 weeks 40%: | $5,950.15 |

4

**Lost Wages – Interim Income – UB – Maternity Leave offset = $56,190.95**

  E.  **Prejudgment Interest**

  The Court could adopt Defendant's methodology and use six (6) different prime rates over a three (3) year period, but again, the goal here is rough justice, not auditing perfection. The Court has plenty of discretion to use an average prime interest rate over this time period, as Courts in the Northern District of Indiana have often used an average prime rate over a period of years to determine prejudgment interest. *See Staples v. Parkview Hospital*, Inc., 1:07-cv-0327 (N.D. Ind. 2010)(using average prime rate and discussing other cases that used average prime rate).

  The average prime interest rate in 2019 was 5%, and the average prime interest rate in 2020 and 2021 was 3.75%. This totals an average prime interest rate of 4.167%. With lost wages at $56,190.95, compounded monthly (using an online monthly compound calculator) this equates to prejudgment interest in the amount of **$7,468.59.**

  F.  **Tax Offset Award**

  Because Duis' originally advised the Court that she has earned more money since 2022, and because Duis originally requested back pay in the amount of $73,935.24, it is self-evident that this amount would be taxed at the higher rate of 22%, thus entitling Duis to a tax offset. To help clarify matters, Duis has earned approximately $13,000.00 in 2023, and she expects to earn at least approximately $70,000.00 by the end of 2023. [Exh. C, Duis Second Decl. ¶ 3]. She is married and will file jointly, so these payments will bump her into the higher tax bracket at 22%. Thus, because these wages should have been taxed at a lower rate of 12%, Duis requests a tax award of **$6,365.95**, calculated as follows:

22% X $63,659.54= $14,005.10

12% X $63,659.54= $7,639.15

Difference: **$6,365.95**

**G.     Conclusion**

In conclusion, Duis respectfully requests an award of **$56,190.95** for her back pay, an award of **$7,468.59** for prejudgment interest, and an award of **$6,365.95** to offset her tax liability, totaling **$70,025.49**.

Respectfully Submitted,

*/s/ Ryan P. Sink*
Ryan C. Fox
Ryan P. Sink

Attorneys for Plaintiff

Fox & Sink, LLC
6177 North College Avenue
Indianapolis, IN 46220

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 14th day of April, 2023, by the Court's electronic filing system to the following counsel of record:

Amy J. Adolay: aadolay@kdlegal.com
Elizabeth M. Roberson: eroberson@kdlegal.com
Robert A. Anderson: randerson@kdlegal.com

*/s/ Ryan P. Sink*
Ryan P. Sink