UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 2:20-cv-0078-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL OR, ALTERNATIVELY, FOR REMITTER**

Plaintiff, Taryn N. Duis ("Plaintiff" and/or "Duis"), by counsel hereby respectfully submits the following Opposition to Defendant's Post-Trial Motion for New Trial Or, Alternatively, For Remittitur.

**INTRODUCTION AND STANDARD OF REVIEW**

Defendant omitted the applicable standard of review for a reason. "Relief under Rule 59(e) is an 'extraordinary remed[y] reserved for the exceptional cases." *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 463 (7th Cir. 2021). This is not one of those cases. Defendant does not cite newly discovered evidence to support its motion, but instead relies upon a manifest error of law, but "[a] 'manifest error' is not demonstrated by the disappointment of the losing party." *Oto v. Metropolitan Life Insurance Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Instead, Defendant must prove the wholesale disregard, misapplication, or failure to recognize controlling precedent. *Id.* As will be shown below, and as would be apparent to anyone who sat in the gallery at trial, Defendant has woefully failed to meet this extremely high burden.

On March 6, 2023, a jury, after hearing three and a half days of testimony and deliberating for 5.5 hours, returned a verdict in favor of Duis in the amount of $500,000.00 in compensatory damages and $5,000,000.00 in punitive damages.  Defendant now seeks a new trial in this matter, or alternatively to substantially decrease Ms. Duis's damages.  First, Defendant contends that the "mixed motive" jury instruction was in error.  Second, Defendant contends that there "was a complete lack of testimony of testimony at trial showing Franciscan acted with the requisite malice or reckless indifference to Duis's federally protected rights." Finally, Defendant argues that the jury's compensatory and punitive damages awards are "monstrously excessive." [See Dkt. No. 91, p. 2].  Defendant's arguments for a new trial are without merit.  The *Bostock* jury instruction was not in error, and the testimony and evidence offered at trial clearly showed an employer that engaged in discriminatory practices with malice or reckless indifference.  Most notably the jury instruction cited by the Defendant is not the actual jury instructions provided to the jury.  Simply put Defendant's contentions for a new trial lack any merit.

Similarly, Defendant's request to substantially limit Duis's compensatory and punitive damages claims misses the mark.  While Duis concedes the Title VII statutory cap for compensatory and punitive damages cannot exceed $300,000.00, this comp/punitive damage award should not be lowered beyond that threshold.  The evidence presented and heard by the jury saw a Defendant that was, and apparently still is, completely numb as to the numerous violations of Duis's rights which they engaged in under Title VII, the Pregnancy Discrimination Act, and the Family Medical Leave Act.  Here, the emotional trauma suffered by Duis at the hands of the Defendant, and Defendant's complete refusal to protect Duis from ongoing discrimination and retaliation supports the jury verdict in this case.

**I.     Defendant is Not Entitled to a New Trial:**

"A new trial is appropriate where the verdict is against the clear weight of the evidence or the trial was not fair to the moving party." *Johnson v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church,* 733 F.3d 722, 730 (7th Cir. 2013). Neither is evident here.

**A.     The *Bostock* Jury Instruction was Proper:**

Defendant loses all credibility at the outset on this issue by claiming that the Court gave the following instruction, which it did <u>not</u>:

> Plaintiff must prove that she was terminated because of her pregnancy/childbirth and/or protected activity. 'Because of' does not mean the wole or only factor, it means that her pregnancy and/or protected activity was a motivating factor, even though other reasons may be present. Often, single events have multiple 'because of' causes. Defendant cannot avoid liability just by citing some other factor that contributed to the termination of Plaintiff's employment, so long as Plaintiff's pregnancy/childbirth and/or protected activity was at least one cause of that decision.

Instead, had Defendant actually looked at the jury instructions, it would have found that the Court properly gave the following instruction:

> Plaintiff claims that she was terminated by Defendant because of her pregnancy. To succeed on this claim, Plaintiff must prove by a preponderance of the evidence that she was terminated by Defendant because of her pregnancy. To determine that Plaintiff was terminated because of her pregnancy, you must decide that Defendant would not have terminated Plaintiff had she not been pregnant but everything else had been the same.
>
> Often, events have multiple but-for causes. When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.
>
> If you find that Plaintiff has proved this by a preponderance of the evidence, then you must find for Plaintiff. However, if you find that Plaintiff did not prove this by a preponderance of the evidence, then you must find for Defendant.

[Dkt. No. 60, Court's Instruction No. 12].

Prior to closing, counsel for Duis made it unequivocally clear to the Court and Defendant that Duis did *not* request a "mixed motive" motivating factor jury instruction under 42 U.S.C. § 2000e-2(m). Instead, Duis requested and the Court appropriately added *Bostock* but-for causation language to the standard Seventh Circuit but-for causation jury instruction 3.01. In *Bostock v. Clayton County*, 140 S.Ct. 1731 (2020), the United States Supreme Court, when addressing but-for causation in general (not motivating factor causation under 42 U.S.C. § 2000e-2(m)), held as follows:

> In the language of the law, this means that Title VII's 'because of' test incorporates the 'simple' and 'traditional' standard of but-for causation. *Nassar*, 570 U.S. at 346, 360, 133 S.Ct. 2517. That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause. *See Gross*, 557 U.S. at 176, 129 S.Ct. 2343. In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause.
>
> This can be a sweeping standard. Often, events have multiple but-for causes . . . When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law.

*Id*. at 1739. The Court's Instruction No. 12, in particular the middle paragraph, directly quotes language from the Supreme Court in *Bostock*. Because this is not a motivating factor test under 42 U.S.C. § 2000e-2(m), but rather but-for language directly from the Supreme Court to supplement the standard pattern instruction 3.01, this instruction does not give rise to a mixed motive defense to cut off damages under 42 U.S.C. § 2000e-2(m).

For example, the Ninth Circuit's pattern jury instruction number 10.3 now also includes *Bostock* but-for language, without invoking the mixed motive affirmative defense. https://www.ce9.uscourts.gov/jury-instructions/node/169. In *Barrick v. Parker-Migliorini Intl., LLC*, 2:12-cv-00381 (D. Utah May 25, May 27, 2022), the District Court of Utah gave a similar

*Bostock* jury instruction and denied Defendant's Rule 59 motion arguing that such instruction was wrong or misleading.  "Indeed, the *Bostock* Court's statement about events having multiple but-for causes and the car accident example are not themselves cabined by language limiting their applicability to Title VII cases; they are general statements about but-for causation . . . In short, the court finds that Final Instruction No. 27 was neither misleading or prejudicial."

Here, the Court's Instruction No. 12 is neither misleading, nor prejudicial.  It is an accurate statement of the law.  Duis could have asked for a motivating factor test under 42 U.S.C. § 2000e-2(m), but she opted for the traditional but-for causation standard with the added explanation of but-for causation directly from the Supreme Court in *Bostock*.  The jury was properly instructed and the jury had ample evidence to conclude that Defendant terminated Duis because of her pregnancy.

**B.      Denial of Defendant's Motion for Judgment as a Matter of Law was Proper:**

Defendant claims that Duis failed to establish that Defendant acted in reckless disregard of her protected rights.  Defendant claims that Duis "testified to only two alleged incidents even remotely touching on purported discrimination based on her pregnancy or FMLA leave." [See Dkt. No. 91, p. 8].  That Linda Steinhilber mocked Duis and stated, "Oh, I need to call the doctor to the floor for myself.  I can't handle my job because I'm pregnant," and that Jessica Smosna, "indicated that Franciscan was 'frustrated' that Duis was going to take FMLA for her maternity leave, that Duis cared more about her daughter than her job, and that those values don't coincide with Franciscan's values." [*Id* at 8].  Notably, Defendant contends that "these two incidents – even if true come nowhere close to the reckless disregard for protected rights necessary to garner punitive damages. [*Id.*].

5

Defendant goes on to state that "Duis's complete failure to prove Franciscan recklessly disregarded her rights, coupled with the failure to consider Franciscan's evidence of good faith efforts to implement an anti-discrimination policy, the Court should have granted Franciscan's judgement as a matter of law on punitive damages." [*Id* at 9]. Defendant's arguments are not only mistaken but completely ignore the three and a half days of testimony provided to the jury from multiple witnesses besides Duis illustrating Defendant's continuous disregard and indifference to federal discrimination and employment laws.

Time and time again during the trial the jury was provided testimony and evidence of discriminatory actions taken against Duis after she began reporting to her new nursing manager Linda Steinhilber and suddenly occurring after Duis became pregnant and informed the Defendant of her intent to take Family Medical Leave. Here, Defendant, despite being aware of laws prohibiting discrimination and retaliation instead chose to blatantly disregard these laws as it pertained to Duis's employment. Moreover, not only did Defendant disregard the law and fail to investigate Duis's claims of pregnancy discrimination, but also purposely warned the individual (Steinhilber) accused of discrimination that Duis had complained about her, and thereafter let that same individual (who clearly had a conflict of interest) "investigate" Duis for wrongdoing. Defendant did not engage in any good faith efforts to protect Duis or put an end to the discriminatory conduct to which she endured. Rather, Defendant's discriminatory and retaliatory actions only increased unabated.

Judgment as a matter of law is appropriate if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *Martin v. Milwaukee County,* 904 F.3d 544, 550 (7th Cir. 2018). The Court may not assess credibility or

weigh evidence, and it must "construe the evidence in favor of the party who won before the jury." *Martin,* 904 F.3d at 550. Here, it is undisputed that prior to Steinhilber becoming Duis's supervisor and Duis becoming pregnant that Duis had never been subjected to any discipline whatsoever by Defendant. Prior to Steinhilber, Duis's past evaluations met Defendant's expectations, and such evaluations were based on Defendant's mission values. Witness after witness including, Dawn Scott, Jessica Smosna, Travis Thatcher-Curtis, and Steinhilber all testified to this undisputed fact. Moreover, it is undisputed that not one employee of Defendant ever investigated the actions of Steinhilber after Duis reported discrimination. This is not a case of a Defendant acting in good faith, but exactly the opposite. As discussed below, ample evidence was presented to deny Defendant's Motion for a New Trial. Moreover, the Jury's Damages Award was Based on the Evidence and Testimony at Trial. Indeed, a short summation of some of the evidence and testimony at trial clearly shows the unlawful actions taken by Defendant.

**C.     The Jury's Damages Award was Based on the Evidence and Testimony at Trial:**

Defendant relies upon a case involving Illinois common law from 1985 to make the fantastical and completely speculative argument that the jury was swept away by passion and prejudice so much so to warrant a miscarriage of justice. Defendant's argument is simply not tethered to reality. The jury deliberated for over 5.5 hours. The jury asked multiple questions to the Court, none of which reflected that they were swept away by passion or prejudice, or that they were considering evidence outside of the record. To the contrary, based on the questions presented, the jury was closely examining trial testimony, exhibits, and adhering to jury instructions. Counsel for Duis had no obligation to "blackboard" damages, and the jury instructions did not provide any mathematical formula or damage caps to the jury. Defendant's

disappointment with the large verdict is not grounds to grant the extraordinary relief requested under Rule 59(e), and Defendant's reliance on *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128 (7th Cir. 1985) is misplaced.

The *Douglass* case is from 1985, it involved Illinois common law claims of invasion of privacy, and most notably the jury in that case rendered a verdict and damages based upon evidence (a 1 hour slide show of 128 pictures showing the most vile photographs of Hustler magazine) that the Seventh Circuit concluded should have been excluded under Fed. R. Evid. 403. Here, damage numbers from 1985 do not translate to numbers in 2023, we are dealing with federal statutory claims and not state common law tort claims, and there is absolutely no evidence in this case that the jury considered evidence that should have been excluded under the Federal Rules of Evidence.

Defendant also contends that due to the jury's manifestly excessive damages award that this is the unusual case that the court should order a new trial on liability because of an error in assessing damages. [Dkt. No. 91, p. 9]. The evidence and testimony in this case as presented to the jury support the jury's verdict. Under Federal Rule of Civil Procedure 59, the party seeking a new trial must show that the verdict is against the clear weight of the evidence or the trial was unfair to the moving party. *Martinez v. City of Chicago,* 900 F.3d 838, 844 (7th Cir. 2018). "[A] court will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Whitehead v. Bond,* 680 F.3d 919, 928 (7th Cir. 2012) (alteration in original). Here, the jury was not carried away by passion or prejudice but rather justice as a result of Defendant's discriminatory and retaliatory actions as provided. Indeed, a short summation of some of the evidence and testimony at trial clearly shows the unlawful actions taken by Defendant.

1.     **The Evidence and Testimony Warranted the Verdict for Punitive Damages:**
        a. **Steinhilber Discriminates and Suspends Duis:**

Upon becoming Duis's supervisor Steinhilber began discriminating against Duis due to her pregnancy and her anticipation of taking Family Medical Leave. Both Duis and Kimberly Buchanan testified as to direct and mocking comments made by Steinhilber regarding Duis's pregnancy and upcoming Family Medical Leave. In addition, comments regarding Duis's pregnancy in a mocking manner were made in front of Travis Thatcher-Curtis on April 19, 2019. Thatcher-Curtis did not discipline or engage in any discipline of Steinhilber despite hearing the comments. Here, there was an established pattern by Defendant of turning a blind eye to the discriminatory actions of Steinhilber allowing the unlawful treatment of Duis to continue.

On May 9, 2019, Duis was suspended by Steinhilber without receiving any progressive discipline. Throughout the trial Duis continually poked holes in Defendant's alleged reasoning for termination. While Defendant claimed it was due to unacceptable attitude and a comment in response to a patient's request for pain medication and an intentional delay in said pain medication, Duis and Buchanan presented evidence that this was not the case. Defendant's witnesses and alleged decisionmakers continually admitted that there was no patient complaint against Duis and that they could not establish how long or if this alleged delay in medication even occurred. Indeed, no one even bothered to talk to the patient. Defendant also alleged that Duis's use of profanity was the reason for termination yet only had one witness (Jen Justice) brought forward to attempt to corroborate such profanity while Duis brought forth Buchanan who was working with her the night in question to rebut along with Duis that she did not use profanity. Indeed, Buchanan told Steinhilber that Duis did not make the profane statement. Not surprisingly Steinhilber chose not to include any statement by Buchanan into her alleged

investigation into Duis. Regardless, witness after witness including alleged decisionmakers testified that profanity was commonplace in the workplace without discipline being issued including even Steinhilber proving again such reason offered by Defendant was clearly pretextual.

Defendant also attempted to justify the termination via an event that Connie Smith had witnessed on April 11, 2019, weeks prior to Duis suspension. At trial it was discovered that Smith did not feel that the event was that important to report and that it was actually a result of Duis suffering a panic attack none of which was on Smith's statement procured by Steinhilber well after the fact. Defendant also attempted to convince the jury that Duis behavior during a scrub fitting was part of the reason to justify termination. Yet when Carrie Renchen was called to the stand, Defendant's only alleged witness to said behavior, Renchen could not point to anything specifically that Duis had done during the fitting to justify any discipline whatsoever. Here these reasons for suspending and terminating Duis can easily be seen as pretextual and orchestrated by Steinhilber and clearly allowed by Defendant. Defendant's actions did not stop there for as soon as Duis engaged in protected activity Defendant retaliated against Duis.

**b. Defendant's Management Discriminates and Retaliates against Duis:**

Realizing she was the victim of pregnancy discrimination Duis texted Thatcher-Curtis and then met with Dawn Scott accompanied by her mother who also worked as a nurse for Defendant. Duis reported to Scott's Steinhilber's discriminatory statements and sought assistance from her. In short, Duis engaged in protected conduct. However, instead of assisting Duis, investigating Steinhilber, or even stopping Steinhilber from being in charge of the alleged investigation into Duis, Scott instead chose to inform Steinhilber of Duis's complaint that Duis was going to report her to human resources. Scott's notes from that day, Scott's original

deposition testimony, and Scott's signed declarations, all failed to disclose this very important fact, yet Scott admitted that she tipped of Steinhilber at trial. Notably, instead of taking action to curb the discriminatory treatment to which Duis was subjected or at the minimum investigate Duis's claims, Scott instead attempted to use the meeting and Duis's engagement in protected activity as a reason to terminate Duis. Incredibly, Scott also testified that after this short meeting with Duis she had determined Duis was unfit to be a nurse. This was despite the fact that Scott had previously had no interaction with Duis and was not aware of any complaints against Duis prior to this meeting where Duis engaged in statutorily protected conduct. The jury easily saw through this testimony.

Subsequently and prior to Duis's termination, Jessica Smosma (Human Resource Manager), reviewed Scott's notes from her meeting with Duis which noted how Duis had reported being targeted by Steinhilber. [Dkt. No. 71, Trial Exhibit 9]. In response, Smosma also took no action except continuing to allow Steinhilber to be in charge of the investigation into Duis suspension and termination. Smosna herself during the termination call to Duis, stated that Franciscan was "frustrated" that Duis was going to take FMLA for maternity leave, that Duis cared more about her daughter than her job, and that those values don't coincide with Franciscan's values. (Trial Tr.,p. 41, l. 10 -p, 42, l. 13) (Dkt. No. 91, p. 8). Moreover, the termination form which Steinhilber testified authoring and writing down what was important noted "Taryn stated she said she couldn't wait until October to be on maternity leave" both referencing Duis's pregnancy and upcoming FMLA leave. [Dkt. No. 71, Trial Exhibit 1].

### c. Testimony from Duis's Co-Workers:

Here, via the evidence presented, it was clear Defendant did not have any reason to justify their suspension or termination of Duis. Indeed, Defendant admitted that prior to

Steinhilber, there were not any complaints regarding Duis's performance throughout her employment. Similarly witnesses such as Buchanan, Anna Basham, and Lynette Dunham, with whom Duis had worked closely with Defendant all testified as to Duis being a good nurse. Buchanan also testified that Steinhilber had made discriminatory remarks to her regarding Duis and her pregnancy while Dunham testified Steinhilber would approach her trying to get information about Duis yet did not do the same with regard to other nurses.

### d. Duis Brought Forth Comparators:

Throughout the trial repeated testimony from management of Defendant all concurred that whatever discipline Steinhilber recommended for employees that was the discipline they received. Her authority as a nursing manager was never overruled. Duis provided evidence that fellow registered nurses who were neither pregnant, seeking FMLA leave, and/or who reported discrimination were afforded preferential treatment and/or progressive discipline as compared with Duis. Such nurses included Dawn Smith, Melissa Roberts, and Celeste Reed. [Dkt. No. 71, Trial Exhibit 10].

### e. Defendant's Attempt to Hide the Decisionmaker:

Nita Wirkus, Director Human Resources at Franciscan Health Crown Point, was called to testify as the last witness of the trial of this matter. During her direct examination Wirkus testified that she made the decision to terminate Wirkus. [Dkt. No. 97, Trial Tr., Wirkus testimony pp. 27, 28, 30, and 31]. On cross examination, Wirkus was presented with Defendant's Response to Plaintiff's Interrogatories verified under oath by Wirkus. In response to Interrogatory No. 5 Defendant responded "The following individuals made the decision to terminate Plaintiff's employment: Linda Steinhilber, Dawn Scott, and Travis Thatcher Curtis." Wirkus is not listed. [Dkt. No. 97, Trial Tr. Wirkus testimony, p. 37, ll. 13-21. Wirkus then

admitted she was not only not the ultimate decision maker but not even a decision maker at all. [Dkt. No. 97, Trial Tr. Wirkus testimony p. 38, ll. 2-18] Wirkus also admitted that Linda Steinhilber first uttered "Let's terminate Ms. Duis." [Dkt. No. 97, Trial Tr. Wirkus testimony pp. 39, ll. 23-25; p. 40, ll. 1-4].

As also outlined above, the trial evidence presented here adequately support the jury's finding that Defendant acted with the state of mind necessary to impose punitive damages under Title VII / PDA.  Punitive damages are appropriate if "the employer `engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Gracia v. SigmaTron Int'l,* 842 F.3d 1010, 1025 (7th Cir. 2016)(quoting 42 U.S.C. § 1981a(b)(1)).  Time and time again Defendant's managerial employees testified that they knew it was illegal to discriminate against on the basis of gender and/or pregnancy and also that they were well aware of Defendant's own written policies against discrimination and/or retaliation.  Yet based upon the evidence it was clear Defendant did not follow their own policies, and the jury was free to find that management (including and beyond Steinhilber) acted in reckless disregard for Duis's rights.

Defendant points to its good faith efforts to implement an anti-discrimination policy (See Dkt. 91, p. 8) as evidence of its good faith, but those policies do not preclude the punitive damages award. *See EEOC v. Mgmt. Hosp. of Racine, Inc.,* 666 F.3d 422, 438 (7th Cir. 2012) (noting that the existence of anti-discrimination policies "is not sufficient in and of itself to insulate an employer from a punitive damages award. Otherwise, employers would have an incentive to adopt formal policies in order to escape liability for punitive damages, but they would have no incentive to enforce those policies.").  The jury could have reasonably concluded that Defendants were ineffective at achieving their purpose given Defendant's discriminatory

conduct. *See EEOC v. AutoZone, Inc.,* 707 F.3d 824, 838 (7th. Cir. 2013) (holding that punitive damages were appropriate against AutoZone where "a rational jury could [] have concluded" that the relevant decisionmaker "disregarded AutoZone's anti-discrimination procedures"). Moreover, and of special significance, Defendant here, as referenced above, tried to cover up their conduct in many respects including their blatant attempt to hide the decisionmaker in this matter and tip off Steinhilber as to Duis's complaints/grievances with Scott and HR. As the Seventh Circuit has noted, "[o]ne of the purposes of punitive damages is to limit the defendant's ability to profit from its wrongful conduct by escaping detection." *Gracia.* 842 F.3d at 1025; *see also Lampley v. Onyx Acceptance Corp.,* 340 F.3d 478, 486 (7th Cir. 2003).

> **2. The Evidence and Testimony Warrant the Verdict for Compensatory Damage:**

The jury's award for compensatory damages is reasonable. Here the evidence presented was sufficient to permit the jury to find that Duis's' termination caused her significant mental and emotional distress. Her evidence was sufficient to permit the jury to find that Defendant's treatment of her caused significant mental and emotional distress. *See Gracia* 842 F.3d at 1022, ("Juries are responsible for evaluating the credibility of witness who testify to emotional distress . . . ."). As the Seventh Circuit explained in *Gracia,* "brevity and self-control in a judicial proceeding need not be interpreted as a weak case." *Id.* at 1023. Defendant is therefore not entitled to judgment as a matter of law on the question of compensatory damages. Moreover, as outlined above and below, the facts clearly support the jury's verdict with regard to compensatory damages.

Defendant contends that Duis only supported her claim for emotional distress "with nothing except her own testimony and her mother's testimony (Renee Salmi) which was conclusory and unsubstantiated. [Dkt. No. 91, p. 14]. Nevertheless, medical evidence is not

14

necessary and to anyone present in court, the testimony presented was more than credible. There is no requirement that injured parties prove compensatory damages with medical records or expert testimony, and the plaintiff's testimony is alone sufficient. *Deloughery v. City of Chicago*, 422 F.3d 611, 619-620 (7th Cir. 2005); *Tullis v. Townley Engineering & Man. Co., Inc.*, 243 F.3d 1058, 1068 (7th Cir. 2001); *Merriweather v. Family Dollar Stores of Indiana, Inc.*, 103 F.3d 576, 580 (7th Cir. 1996). Duis testified that after being terminated she cried and cried, was devasted and heartbroken. [Trial Transcript Duis p. 48]. Indeed, Duis testified how the termination affected her. She was five and half months pregnant, with a disabled husband, and the sole provider of her family and she was pregnant with a three-year-old son. She started having panic attacks, losing weight, couldn't eat, and was terrified as this was the first nursing job she ever had. Duis went on to explain that after having only one nursing job after almost five years of nursing how it would look being fired. Duis was especially worried as to how someone would hire a nurse six months pregnant. Duis was having a lot of anxiety, couldn't eat, sleep, and her blood pressure was through the roof that culminated her in being hospitalized four times in July. [Dkt. No. 81, Trial Tr. Duis testimony pp. 46-47].

Similarly, Salmi testified that Duis was upset and needed to work as the sole provider of the family, and being pregnant she had to pay her bills so she needed to work up and until her pregnancy. [Dkt. No. 80, Trial Tr. Salmi testimony p. 7]. Salmi went on to testify that Duis does everything by the book and it was really hard for her when she was fired it was really hard since they said things that she had done were not true and she was extremely depressed. [Dkt. No. 80, Trial Tr. Salmi testimony p. 11] Duis was extremely depressed and began having blood pressure problems. It was hard for her to function. Duis also said many times that, if it wasn't for her

baby and her son, she said, "I just wouldn't want to live. [*Id*]. Duis also knew it would be hard to find another job while she was pregnant. [*Id*].

## II.     Substantial Remittitur of the Jury's Damages are not Warranted:

Defendant contends that even if the Court decides not to order a new trial, the jury's damages award should be substantially reduced even below the mandatory cap for both compensatory and punitive damages.  Based on the evidence presented at trial Defendant's request should be denied.   In determining if remittitur is appropriate, the Court considers three factors: "whether the award is `monstrously excessive,' whether there is a rational connection between the award and the evidence, and whether the award is roughly comparable to awards made in similar cases." *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478, 483 (7th Cir. 2003). Here, Defendant primarily focuses on the comparison with other cases. The Seventh Circuit has explained that although comparable cases "provide a reference point that assists the court in assessing reasonableness [,] they do not establish a range beyond which awards are necessarily excessive. Due to the highly fact-specific nature of Title VII cases, such comparisons are rarely dispositive." *Farfaras v. Citizens Bank & Tr. of Chi.,* 433 F.3d 558, 566 (7th Cir. 2006). Therefore, Defendant's table elevates form over substance, as each case is unique and sits on an island.  Regardless, Defendant's comparison argument is strongly undermined by *Vega v. Chicago Park District*, 954 F.3d 996 (7th Cir. 2020).

In *Vega*, the Seventh Circuit affirmed the District Court's remittitur of compensatory damages to the maximum amount of $300,000.00, even with only garden variety emotional distress damages under Title VII without expert testimony and without medical evidence.  The Seventh Circuit held as follows:

> And here, the 'reference point' of other cases shows this award to be roughly comparable to other awards supported by 'first- and third-person testimony

16

> regarding ongoing emotional and physical effects of the discrimination . . . [f]or instance, in *Farfaras*, we upheld the jury's decision to award the plaintiff $200,00 for loss of dignity, humiliation, emotional distress, and pain and suffering when that emotional distress was supported by testimony highlighting the fact that plaintiff 'lost self-esteem, gained weight, [and] had problems sleeping' as a result of the discrimination . . . While remitting Vega's damages to the statutory maximum was undoubtedly generous, we cannot say that it was an abuse of discretion.

*Id*. at 1009.  Here, similar to *Vega* and *Farfaras*, the jury heard in part, as follows:

- Duis, as the sole provider of her family, cried and cried, she was devasted and heartbroken.
- Duis started having panic attacks, losing weight, could not eat, and was terrified as this the first nursing job she ever had.
- Duis was especially anxious as to how someone would hire a nurse six months pregnant.
- Duis was having a lot of anxiety, couldn't eat, sleep, and her blood pressure was through the roof that culminated her in being hospitalized four times in July.
- Salmi verified that Duis was upset and extremely depressed.
- Salmi verified that Duis had blood pressure problems, it was hard for her to function, and Duis even stated, many times, that if it was not for her baby and her son, she did not want to live.

Thus, the record reflects that any compensatory damage award in the $300,000.00 range is reasonable, supported by the record, and is roughly comparable to other reference-point cases, such as *Vega*.

### III. Conclusion:

For the foregoing reasons, Defendant's Motion for a New Trial should be Denied and the Jury's Verdict for punitive and compensatory damages should not be remitted below $300,000.00.

Respectfully Submitted,

*/s/ Ryan C. Fox*
Ryan C. Fox
Ryan P. Sink
Attorneys for Plaintiff

17


Fox & Sink, LLC
6177 North College Avenue
Indianapolis, Indiana 46220
rfox@foxsinklaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 14th day of April, 2023, by the Court's electronic filing system to the following counsel of record:

Amy J. Adolay: aadolay@kdlegal.com
Elizabeth M. Roberson: eroberson@kdlegal.com
Robert A. Anderson: randerson@kdlegal.com

*/s/ Ryan C. Fox*
Ryan C. Fox