UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
|    Plaintiff. | ) |
| | ) |
|    v. | )    CAUSE NO: 2:20-CV-78-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| | ) |
|    Defendant. | ) |
| | ) |

**DEFENDANT'S REPLY IN SUPPORT OF POST-TRIAL MOTION FOR NEW TRIAL OR, ALTERNATIVELY, FOR REMITTITUR**

Defendant Franciscan Alliance, Inc. ("Franciscan"), by counsel, submits this Reply in support of its Post-Trial Motion for New Trial Or, Alternatively, for Remittitur [ECF No. 90] pursuant to Rule 59(a)(1)(A) and 59(e) of the *Federal Rules of Civil Procedure*.

For the reasons stated herein, Plaintiff Taryn N. Duis's ("Duis") Response in Opposition [ECF No. 99] ("Response") raises no valid argument precluding a new trial in this case. Nor does Duis provide any persuasive opposition to Franciscan's alternative prayer for relief – that the jury's $500,000 compensatory and $5 million punitive damages award should be substantially remitted to an amount far below the $300,000 statutory maximum permitted under 42 U.S.C. § 1981a(b)(3)(D).

**I.   Any Way It is Viewed, Instruction No. 12 was a Mixed-Motive Instruction.**

Duis is right about one thing: Franciscan inadvertently quoted the wrong language for jury instruction No. 12 its initial brief. Franciscan acknowledges that, by an oversight, it quoted Duis's

*proposed* instruction instead of the final instruction approved by the Court and given to the jury. This was a drafter's error. Franciscan respectfully seeks to clarify the record.

Nevertheless, based on the express language of Final Jury Instruction No. 12, Franciscan's argument still stands. Duis argues that the actual final instruction given to the jury on causation was not, in fact, a mixed motive instruction. According to Duis, while she at first proposed a "motivating factor" instruction to the Court, "she opted for the traditional but-for causation standard with the added explanation of but-for causation directly from the Supreme Court in *Bostock*." [ECF No. 99, p. 6].

Contrary to Duis's claim, jury instruction No. 12 – particularly the second and third paragraphs – is very much a "mixed motive" instruction. A review of the pertinent portions of instruction No. 12 bears this out:

> Often, events have ***multiple*** but-for causes. When it comes to Title VII, the adoption of the traditional but-for causation standard means a defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. ***So long as plaintiff's sex was <u>one</u> but-for cause of that decision, that is enough to trigger the law***.
>
> If you find that Plaintiff has proved this by a preponderance of the evidence, then you must find for the Plaintiff. However, if you find that Plaintiff did not prove this by a preponderance of the evidence, then you must find for Defendant.

[ECF No. 69, p. 13] (emphasis added). Thus, as much as Duis insists that instruction No. 12 was a "but for" instruction, the Court specifically instructed the jury that it could find liability "so long as plaintiff's sex was one but-for cause of that decision[.]" [Doc. 69, p. 13]. In other words, the jury was told it could hold Franciscan liable if Duis's pregnancy was a contributing factor among multiple factors. Duis's self-serving characterizations aside, that is the essence of a mixed motive instruction. *See Serafinn v. Local 722, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of Am.*, 597 F.3d 908, 914 (7th Cir. 2010) (mixed-motive instruction follows a prior instruction that permits a plaintiff to establish liability merely by showing that the improper consideration was but one "motivating factor" in the defendant's contested action).

Moreover, the given instruction did not *also* include the language Franciscan proposed indicating that Franciscan could negate Duis's ability to recover monetary damages if Franciscan would still have terminated her in the absence of her pregnancy. This omitted language is critical because it counterbalances the "relatively lenient" standard a plaintiff in a mixed motive case must meet. *Spees v. James Marine, Inc.*, 617 F.3d 380, 389-91 (6th Cir. 2010). The Committee on Pattern Civil Jury Instructions of the Seventh Circuit has expressly recommended that courts include this language, which is precisely what Franciscan proposed during the jury instruction meeting. *See* 7th Cir. Pattern Civ. Jury Inst., § 3.01, cmt. c (2017 rev.). As Comment (c) to § 3.01 makes clear, in mixed motive cases,

> the Committee recommends the following language instead of the pattern instruction:
>
> > Plaintiff must prove by a preponderance of the evidence that his [*protected class*] was a motivating factor in Defendant's decision to [*adverse employment action*] him. A motivating factor is something that contributed to Defendant's decision.
> >
> > ***If you find that Plaintiff has proved that his [protected class] contributed to Defendant's decision to [adverse employment action] him, you must then decide whether Defendant proved by a preponderance of the evidence that it would have [adverse employment action] him even if was not [protected class]. If so, you must enter a verdict for the Plaintiff <u>but you may not award him damages.</u>***

*Id*. (emphasis added). Without the statement that Duis was not entitled to monetary damages if Franciscan could establish it would have taken the same action "even in the absence of the impermissible motivating factor", the jury instruction was clear error. *See Smith v. Wilson*, 705

3

F.3d 674, 679 (7th Cir. 2013) (quoting 42 U.S.C. § 2000e–2(m)). Franciscan is entitled to a new trial on this basis alone.

**II.     Duis's Attempts to Point to Evidence of "Malice or Reckless Indifference" to Support Punitive Damages Are Unavailing.**

Franciscan also maintains a new trial is warranted based on the Court's denial of Franciscan's motion for judgment as a matter of law on Duis's claim for punitive damages, coupled with the subsequent jury instruction allowing Duis to recover punitive damages. Duis tries without success to point to evidence that Franciscan acted with malice or reckless indifference to her federally protected rights, as required for punitive damages in a Title VII case. *See Bruso v. United Airlines, Inc.*, 239 F.3d 848, 857 (7th Cir. 2001). But there was simply no such evidence presented at trial. Instead, Duis mischaracterizes the undisputed testimony in multiple ways in an attempt to show that punitive damages were warranted, when in fact they were not.

Duis claims without merit that Franciscan "purposely warned" Duis's supervisor, Linda Steinhilber, that Duis had accused Steinhilber of discriminating against her based on her pregnancy. From this, Duis claims Franciscan then allowed Steinhilber – now allegedly warned of Duis's discrimination accusations – to investigate Duis's workplace behavior. [Doc. 99, p. 6]. Contrary to Duis's mischaracterization of the evidence, the undisputed testimony at trial was that Dawn Scott's understanding of Duis's claim of targeting was because Steinhilber was investigating Duis's comment that she "didn't give a fuck", not accusations of pregnancy discrimination. Therefore, from Scott's perspective, there was nothing to tip Steinhilber off to and no purported "conflict of interest" with Steinhilber continuing with the investigation. Even so, the trial testimony was clear and undisputed that Duis did not report her allegations of pregnancy discrimination until ***after*** her suspension and termination. Nothing in the trial record supports Duis's claim that she

reported discrimination prior to Steinhilber's investigation. Duis's mischaracterizations cannot and do not malice or reckless indifference.

Duis also makes much of the fact that she did not receive any disciplinary action from Franciscan until after Steinhilber became her supervisor and Duis announced she was pregnant and needed to take leave. [ECF No. 99, p. 7]. But the mere fact that Duis did not receive any prior disciplinary action in no way shows Franciscan acted with the requisite malice or reckless indifference to Duis's protected rights. The conduct Duis engaged in – stating "I don't give a fuck if that patient wants pain meds. He can wait. He should have taken it before" in response to a patient's request for pain medication and her conduct during her meeting with Scott – was severe enough to warrant suspension and termination.

There likewise is no merit to Duis's accusation that Franciscan "turn[ed] a blind eye to the discriminatory actions of Steinhilber [by] allowing the unlawful treatment of Duis to continue." [ECF No. 99, p. 9]. For example, Duis claims Travis Thatcher-Curtis heard Steinhilber's allegedly discriminatory comments on April 19, 2019 yet failed to discipline Steinhilber. Duis again mischaracterizes the testimony here. Thatcher-Curtis did not discipline Steinhilber because he testified under oath that Steinhilber did not make ***any*** mocking comments toward Duis or ***any*** comments about Duis's pregnancy or taking leave under FMLA.

Given the complete lack of evidence sufficient to support punitive damages, it was error to deny Franciscan's motion for judgment as a matter of law on this point and error to give the jury a punitive damages instruction. Accordingly, the Court should grant Franciscan's motion for a new trial. *See Esperson v. Cellco P'ship*, 2018 WL 11219944, at *2 (N.D. Ill. Jan. 26, 2018) ("[N]o reasonable jury could conclude that Verizon acted with malice or reckless indifference to

Esperson's rights, and judgment as a matter of law is appropriate on Esperson's claim for punitive damages resulting from her sexual harassment.").

**III.** **Duis's Argument Against a New Trial Fails – The Jury Clearly Was "Swept Away By Passion and Prejudice."**

Duis characterizes Franciscan's request for a new trial as "fantastical", "completely speculative", and "not tethered to reality". [Doc. 99, p. 7]. Rhetoric aside, Franciscan's right to request a new trial is rooted in Seventh Circuit and federal jurisprudence. A new trial is clearly warranted here based on the jury's grossly excessive damages verdict, which clearly shows the jury was "swept away by passion and prejudice" such that the jury "cannot be trusted to have determined liability accurately[.]" *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1143 (7th Cir. 1985).

Duis takes issue with the Seventh Circuit's decision in *Douglass*, which Duis discounts because it "is from 1985 [and] involved Illinois common law claims of invasion of privacy." [Doc. 99, p. 8]. Of course, that in no way diminishes the legal principle *Douglass* stands for – namely, that a district court judge has discretion to grant a new trial where the jury was swept away by passion and prejudice. *See id*.

To be sure, *Douglass* is by no means the only opinion standing for this proposition of law. For example, in a more recent case, *Arroyo v. Volvo Grp. N. Am. LLC*, 2022 WL 17960686 (N.D. Ill. Dec. 27, 2022), the district court granted the defendant employer's motion for a new trial "because the jury awarded Plaintiff $2.6 million in compensatory damages on her ADA claim, notwithstanding Plaintiff's failure to present any evidence justifying such an award." *Id*. at *4. As the *Arroyo* court aptly observed,

> Not only was the jury's damages verdict unsupported by evidence, it "dwarf[ed] the amount of compensatory damages awarded in cases in which the plaintiff actually presented evidence of

6

> compensatory damages." In light of these concerning facts, the Court "conclude[d] that the [damages] verdict was irrational ... or, put another way, [a product of] passion and prejudice...."
>
> The question became what to do about this defect in the jury's verdict. The Court considered the possibility of ordering a partial new trial solely on the issue of damages, but ultimately concluded that a new trial was necessary on the jury's underlying finding that Defendant violated the USERRA as well. In so holding, ***the Court drew on precedent of the Seventh Circuit and other jurisdictions counseling that where an irrational damages verdict calls into question the rationality of the jury's underlying findings of liability, a new trial on both damages and liability is appropriate***.

*Id*. (emphasis added, internal citations omitted).

*Arroyo* is highly instructive here. For starters, the $2.5 million *Arroyo* verdict – which the district court judge characterized as "irrational" and a clear product of passion and prejudice – was less than *one half* what the jury awarded *Duis* in this case. If the *Arroyo* verdict called into question the rationality of the jury's finding on liability, the same is (literally) doubly true here. Based on the sheer dollar amount of the jury's award – which is staggering by any measure – the jury undoubtedly was carried away by passion and prejudice such that its determination on liability must be questioned. Duis's attempt to undermine established Seventh Circuit precedent fails. With due respect to the jury's service in this case, a new trial on liability is warranted.

### IV.     **<u>Duis Concedes the Award Must be Reduced At Least to the Statutory Cap</u>.**

Duis concedes in her Response (as she must) that the jury's $5.5 million damages award cannot stand in the face of the mandatory statutory maximum set forth in 42 U.S.C. § 1981a(b)(3)(D). [ECF No. 99, p. 2] ("… Duis concedes the Title VII statutory cap for compensatory and punitive damages cannot exceed $300,000[.]"). There is no dispute on this point. Accordingly, at the absolute minimum, the Court must reduce Duis's compensatory and punitive damages to a total of $300,000. *Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 2015 WL

143977, at *1 (N.D. Ind. Jan. 12, 2015) (agreeing that the combined award for compensatory and punitive damages must be capped at $300,000).

V. **This is Absolutely the "Exceptional Case" Warranting Substantial Remittitur Below the Statutory Maximum.**

While the statutory maximum for recovery under Title VII is $300,000 for an employer of Franciscan's size, a far more substantial remittitur is necessary in this case. Contrary to Duis's claim, the jury's $5.5 million verdict makes this very much the "exceptional case" warranting relief under Fed. R. Civ. P. 59(e). [ECF No. 99, p. 1]. Franciscan is entitled to substantial remittitur of both the compensatory and punitive damages awards to an amount well below the cap. Duis's arguments to the contrary are unavailing.

A. *The Compensatory Damages Award Must Be Further Reduced*.

As to the jury's $500,000 compensatory damages award, the Court must evaluate: "(1) whether the award is monstrously excessive; (2) whether there is no rational connection between the award and the evidence; and (3) whether the award is roughly comparable to awards made in similar cases." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 446 (7th Cir. 2010). All three elements clearly cut in favor of a substantial reduction here. Duis's arguments to the contrary are not well taken.

Duis's Response tries to shirk the seminal question – whether the award had any *rational connection* to the evidence of her emotional distress presented at trial. It did not. In reality, the $500,000 compensatory damages award was wholly untethered to any evidence of Duis's alleged emotional distress. Again, Duis put forth no expert witness substantiating her emotional distress and offered not a single record establishing treatment for the same. Collectively, Duis's and her mother's testimony amounts to a few isolated, conclusory statements that Duis was "devastated", "heartbroken", "having a lot of anxiety", "stressed out", and "upset." These are the exact types of

8

buzzwords that are insufficient to sustain a finding of emotional distress. A plaintiff "can't just say in a conclusory way that 'I'm a wreck' or 'my grief is overwhelming' … Rather, she has to show that the emotional toll is real." *Rosen v. MLO Acquisitions LLC*, 505 F. Supp. 3d 823, 827, 2020 WL 7129018 (N.D. Ind. 2020). As a matter of law, Duis and her mother's testimony is not enough to establish emotional distress. *See Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003) (judgment as a matter of law upheld where plaintiff presented only "bare allegations" that termination "concerned", "troubled", "embarrassed and humiliated" him).

Conclusory statements aside, Duis's Response does not even address the causal connection (or lack thereof) between her claimed emotional distress and the termination itself. As Franciscan emphasized in its initial brief, the evidence at trial showed that Duis's anxiety – which supposedly underpins her entire claim of emotional distress – predated Duis's termination and therefore cannot have been attributable to Franciscan's conduct. Indeed, Duis suffered a panic attack in April serious enough to be examined by a doctor and sent home from work prior to any alleged wrongdoing on the part of Franciscan; (2) Duis had recently suffered a miscarriage; and, (3) Duis was pregnant. Duis's silence on this point is deafening.

Moreover, in an apparent attempt to pump up the magnitude of her alleged distressed, Duis points to a variety of situational factors, including the following:

- Duis was "five and a half months pregnant, with a disabled husband, and the sole provider of her family"
- Duis was "pregnant [and had] a three-year-old son."
- "… this was the first nursing job she ever had[.]"

[Doc. 99, pp. 15, 17]. But these statements are not evidence of a causal connection between Duis's termination and her anxiety either. They are situational circumstances having nothing to do with Franciscan's conduct or the corrective actions it took. They would have existed whether Duis had

9

been terminated or not. Clearly no rational connection exists between the evidence at trial of Duis's purported emotional distress and the jury's damages award.

Likewise, the $500,000 compensatory damages award was both monstrously excessive and nowhere comparable to similar Title VII cases. Duis's arguments to the contrary are without merit. While Duis relies on *Vega v. Chicago Park Dist.*, 954 F.3d 996 (7th Cir. 2020) to justify only remitting the compensatory damages to the $300,000 maximum, *Vega* is distinguishable. For one thing, the plaintiff in *Vega* "testified *extensively* about the emotional, mental, and physical distress that she suffered" as a result of her termination. *Id*. at 1008 (emphasis added). But as discussed herein, Duis has done nothing of the sort here. She has provided only conclusory "buzzwords" of harm not even attributable to Franciscan's conduct. *See Rosen*, 505 F. Supp. 3d at 827. And although the Seventh Circuit upheld the district court's remittitur to $300,000 in *Vega*, it pointedly called the remitted award "undoubtedly generous." *Vega*, 954 F.3d at 1009.

Duis's reliance on *Farfaras v. Citizens Bank & Tr. of Chi.*, 4433 F.3d 558 (7th Cir. 2006) is also misplaced. Unlike Duis, the plaintiff in *Farfaras* suffered far more than mere emotional distress purportedly based on corrective action. Indeed, she was repeatedly assaulted – verbally, physically, and sexually – by multiple men at her job, conduct the Seventh Circuit correctly characterized as "egregious". *Id*. at 561 – 64, 566. Therefore, the $200,000 compensatory damages award was "rationally related to the repeated physical and verbal harassment Farfaras suffered." *Id*. at 566. That is not the case here, on any level.

*Vega* and *Farfaras* are clear outliers. Pitted against them is the host of Title VII cases remitting compensatory damages awards far below the statutory maximum, to the tune of hundreds of thousands of dollars. *See e.g. Hollingsworth v. Time Warner Cable*, 861 N.E.2d 580, 599 (Ohio App. 2006) (upholding award of **$32,5000** for emotional distress based on pregnancy

discrimination, where "young expectant mother" testified she was "devastated, hysterically crying, and an emotional wreck", withdrew from her husband and daughter and became unmotivated, suffered depression, and visited a psychiatrist); *Avita v. Metro Club of Chicago, Inc.*, 49 F.3d 1219, 1228 (7th Cir. 1995) (finding $21,000 award was excessive in retaliation case where plaintiff was still "deeply depressed" years after, and remitting award to **$10,500**); *Marion Cnty. Coroner's Office v. EEOC*, 612 F.3d 924 (7th Cir. 2010) (remitting initial $200,000 award to **$20,000** where plaintiff in race discrimination and retaliation attended weekly therapy for months and was diagnosed with "situational depression"); *David v. Caterpillar, Inc.*, 185 F. Supp. 2d 918, 926 (C.D. Ill. 2002), *aff'd*, 324 F.3d 851 (7th Cir. 2003) (remitting initial $100,000 award in retaliation case to **$50,000** where plaintiff "became very depressed", would go home and go right to bed for a two-week period, had difficulty sleeping, cried, and experienced stomach aches).

Given the weight of this authority, the jury not only exceeded the "typical range" for awards within the Seventh Circuit, but it also obliterated that range altogether. *See Spina v. Forest Pres. Dist. of Cook Cnty.*, 207 F. Supp. 2d 764, 773 (N.D. Ill. 2002) ("[E]motional damages awards within the Seventh Circuit typically fall within the range of $500 to $50,000 or more."). Clearly the compensatory damages award is not "roughly comparable to similar cases" and is far "beyond the pale" of any reasonable amount. *Farfaras*, 433 F.3d at 567. A substantial remittitur of the compensatory damages award is necessary.

B. *The Punitive Damages Component Must Also be Further Reduced*.

In similar fashion, Duis's Response raises no valid basis justifying imposition of the full amount of punitive damages against Franciscan, or any amount for that matter. Indeed, Duis's

11

Response does not even attempt to justify the jury's staggering $5 million punitive damages award which was, by any measure, monstrously excessive.[1]

In determining whether punitive damages are excessive, courts look to the following "guideposts": (1) the "degree of reprehensibility" of the defendant's improper conduct; (2) the "disparity between the harm or potential harm suffered by [the plaintiff] and [the] punitive damages award;" and (3) the difference between the punitive damages and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 575 (1996). Here, each of the guideposts strongly supports vacating or substantially remitting the punitive damages award to an amount far below the statutory maximum.

As already discussed herein (*see* Part II, *supra*), Duis failed to present evidence at trial that Franciscan acted with malice or reckless indifference to her federally protected rights. Duis's claim that Franciscan "purposely warned" Steinhilber that Duis had complained of discrimination mischaracterizes the evidence. Scott specifically testified that she understood Duis's complaint about Steinhilber was based on the fact that Steinhilber was investigating Duis for her inappropriate comment in response to a patient's request for pain medication, not discrimination. Indeed, Duis did not allege pregnancy discrimination until after her suspension and termination. Likewise, Duis's insinuation that Franciscan acted with malice by failing to discipline Steinhilber ignores Thatcher-Curtis's testimony – namely, that Steinhilber did not make any mocking comments about Duis's pregnancy or taking leave under FMLA. Given the complete lack of evidence to establish that Franciscan acted with malice or reckless disregard for Duis's rights, the degree of reprehensibility is not simply low; it is **non-existent**. *Contra, U.S. E.E.O.C. v. Custom*

---

[1] Instead, Duis appears to argue that the compensatory damages award, on its own, should be reduced to $300,000, the statutory maximum. [ECF No. 99, p. 17] ("Thus, the record reflects that any compensatory damages award in the $300,000 range is reasonable, supported by the record, and is roughly comparable to other reference-point cases such as *Vega*.").

*Companies, Inc.*, 2007 WL 1810495 (N.D. Ill. June 21, 2007) (finding defendants' actions were reprehensible for punitive damages guidepost where there was evidence of repeated touching, sexually explicit comments and jokes, sexual advances, and a sexually charged atmosphere)

The second guidepost – the ratio between the compensatory and punitive damages components – further emphasizes the grossly excessive nature of the jury's award in this case. "The proper focus of analysis of the ratio itself is the adequacy of the combined award of compensatory and punitive damages[.]" *Gavin v. AT & T Corp.*, 464 F.3d 634, 641 (7th Cir. 2006). "If compensatory damages are slight, a single-digit ratio is likely to be insufficient." *Id*. Here, as Franciscan indicated in its initial Brief, the jury's $500,000 compensatory damages award was ten times higher than the typical range for Seventh Circuit cases. *See Spina*, 207 F. Supp. 2d at 773. But the jury did not stop there. It increased that amount ten times over in assessing punitive damages. A 10:1 ratio of punitive to compensatory damages is alarming, to say the least. But it is especially alarming where the compensatory damages award itself is already excessive, as it clearly was here. *Hare v. Zitek*, 2006 WL 4069052, at *6 (N.D. Ill. Dec. 28, 2006) ("[T]he Court is persuaded that a substantial reduction is appropriate, given that the compensatory damages award was relatively large.").

Finally, as to the third guidepost, it is beyond dispute that the jury's $5 million punitive damages award positively dwarfs any civil penalty imposed in comparable cases. Indeed, there is simply no comparison in any pregnancy discrimination case Franciscan has located within the Seventh Circuit. *See Buffone v. Rosebud Restaurants, Inc.*, 2007 WL 9817882, at *1 (N.D. Ill. Jan. 3, 2007) ($250,000 punitive damages award in pregnancy discrimination case); *Pisut v. Pasavare, Inc.*, 2005 WL 1138638, at *1 (N.D. Ill. Apr. 29, 2005) ($5,000 in punitive damages based on finding of pregnancy discrimination); *Richard v. Mahajan Corp.*, 2009 WL 6490095, at *1 (S.D.

Ind. Dec. 31, 2009) (punitive damages of $5,000 where "defendant blatantly discriminated against the plaintiff because of her pregnancy"); *E.E.O.C. v. HCS Med. Staffing, Inc.*, 2012 WL 529593, at *5 (E.D. Wis. Feb. 17, 2012) ($50,000 in punitive damages against employer for pregnancy discrimination).

Given the grossly excessive nature of the jury's $5 million punitive damages award, the Court should either vacate the punitive damages award altogether or, at the very least, substantially remit same to an amount below the statutory cap.

## CONCLUSION

Based on the foregoing, pursuant to Fed. R. Civ. P. 59(a)(1)(A), Franciscan respectfully requests a new trial of this matter as outlined herein. Alternatively, pursuant to Fed. R. Civ. P. 59(e), Franciscan requests substantial remittitur of the jury's compensatory and punitive damages awards.

Respectfully Submitted,

By:   Amy J. Adolay, Atty. No. 23147-49
Elizabeth M. Roberson, Atty. No. 34097-64
KRIEG DEVAULT LLP
12800 N. Meridian Street, Suite 300
Carmel, IN 46032
Telephone: (317) 238-6342
             (317) 238-6330
Facsimile:  (317) 636-1507
Email: aadolay@kdlegal.com
       eroberson@kdlegal.com

Robert A. Anderson, Atty. No. 15359-71
KRIEG DEVAULT LLP
8001 Broadway, Suite 400
Merrillville, IN  46410
Telephone: (219) 227-6100
Facsimile:  (219) 227-6101
Email: randerson@kdlegal.com

*Counsel for Defendant Franciscan Alliance, Inc.*

KD_14600358_3.docx