UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) CAUSE NO: 2:20-CV-78-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**FRANCISCAN'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO VACATE AND/OR
AMEND ORDER FOR NEW TRIAL**

Defendant Franciscan Alliance, Inc. ("Franciscan"), by counsel, submits this Response in Opposition to Plaintiff Taryn N. Duis's ("Duis") Motion to Vacate [ECF No. 111] the Court's Opinion and Order (the "Order") entered May 3, 2023 [ECF No. 105] ordering a new trial of this matter. For the foregoing reasons, Duis's Motion to Vacate should be denied, as it raises no valid basis warranting reconsideration of the Court's Order.

**INTRODUCTION AND SUMMARY**

Following the jury's monstrously excessive $5.5 million verdict in favor of Duis, Franciscan filed a Post-Trial Motion for New Trial or, Alternatively, for Remittitur [ECF No. 90] ("Post-Trial Motion"). Following briefing, the Court issued its Order granting Franciscan's Post-Trial Motion and ordering a new trial. As the Court noted in its Order, "[t]he fact that the damages award was 'monstrously excessive,' or in a 'staggering amount,' suggests that the verdict was based on passion and prejudice. As such, the verdict cannot stand." [ECF No. 105, p. 20].

Duis's Motion to Vacate takes issue with the Court's Order on three distinct grounds. First, Duis claims the Court erred by ordering a new trial outright without first offering her the choice between remittitur or a new trial. In Duis's view, she "expected to be offered a remittitur in [the] range" of $300,000, which is the maximum statutory cap on compensatory and punitive damages. [ECF No. 111, p. 1]. This argument fails because the Court held the jury's damages award was based on passion and prejudice, thereby necessitating a new trial outright. In such situations, the Seventh Circuit has made clear that a new trial, not a remittitur, is required.

Second, Duis argues that in ordering a new trial, the Court improperly assessed the credibility of witnesses, substituted its own credibility determinations for that of jury, and took evidence in favor of Duis "off the scales". But Duis's singular focus on liability misconstrues the entire basis for the Court's Order – namely, that the jury's monstrously excessive $5.5 million *damages* award was the product of passion and prejudice, which calls into question the jury's decision on liability. In other words, the monstrously excessive damages award is what casts significant doubt on the jury's fairness and impartiality in reaching its decision on liability. And the Court correctly held that the compensatory and punitive components of the jury's damages award lacked any rational evidentiary basis.

Third and finally, Duis claims the Court discounted evidence that the jury supposedly relied upon in awarding $5 million in punitive damages. This argument fails because it conflates Duis's substantive right to recover punitive damages with whether there was a rational basis to support the *amount* of punitive damages ultimately awarded. The Court correctly determined that the $5 million punitive damages award was monstrously excessive (by any measure) and was unsupported by any evidence Duis put on at trial.

2

**ARGUMENT**

To call a spade a spade, Duis's Motion to Vacate is a motion to reconsider couched under Fed. R. Civ. P. 59. Duis has already laid out the standard for a motion to reconsider in her Response to Franciscan's Post-Trial Brief, and it applies equally to her: "A manifest error is not demonstrated by the disappointment of the losing party. Instead, [the party seeking reconsideration] must prove the wholesale disregard, misapplication, or failure to recognize controlling precedent." [ECF No. 99, p. 1] (quoting *Oto v.Metropolitan Life Insurance Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations omitted).

"The Seventh Circuit has cautioned that 'motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Rangel v. Schmidt*, 2010 WL 11680340, at *1 (N.D. Ind. Apr. 13, 2010) (quoting *Publishers Resource Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985)). Motions for reconsideration are appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension … or [where there has been] a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). "Such problems rarely arise and the motion to reconsider should be equally rare." *Id*.

"Because the decision whether to grant a new trial is committed to the discretion of the district court, the grant or denial of a motion for new trial is not subject to review by [the court of appeals], except upon exceptional circumstances showing a clear abuse of discretion." *Nephew v. City of Rock Island*, 46 F.3d 1133 (7th Cir. 1994) (citations and quotations omitted).

The Court was well within its discretion to order a new trial in this case. None of the viable grounds for reconsideration exist here. As such, Duis's Motion to Vacate must be denied.

## I. The Court Did Not Have to Offer Duis the Option of Remittitur or a New Trial.

Duis first argues the Court's Order was in error because it "failed to offer Duis the option of a remittitur or a new trial." [ECF No. 11, p. 1]. Notably, Duis did not raise this argument in her Response to Franciscan's Post-Trial Motion. "Reconsideration is not an appropriate forum for … arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (collecting cases). Duis therefore has waived this argument, and the Court should not entertain it. *See Holden v. Deloitte & Touche LLP*, 390 F. Supp. 2d 752, 757 (N.D. Ill. 2005) ("Nor are reconsideration motions properly used to advance new arguments that could have been made before so as to attempt to avoid a waiver-bar on appeal.")

Even so, Duis's newfound argument would have failed her in opposing Franciscan's Post-Trial Motion and it fails equally on reconsideration. Duis claims that by granting Franciscan's Post-Trial Motion, the Court had to offer her the option of either remittitur or a new trial. Not so. Duis's argument misconstrues the alternative forms of relief Franciscan requested in its Post-Trial Motion and the legal basis for the Court's Order. Franciscan's Post-Trial Motion requested one of two alternative forms of relief: (1) a new trial based on the jury's monstrously excessive damages award calling into question the jury's findings on liability; or (2) remittitur of the jury's damages award. Contrary to Duis's position, the Court had wide discretion to grant either form of alternative relief.

As the Order makes clear, the Court chose the first path – holding the jury's damages award was based on passion and prejudice, thereby necessitating a new trial outright. The Seventh Circuit

has made clear that in such situations, "***a new trial, and <u>not a remittitur</u>, is <u>required</u> when an award is the result of passion or prejudice***, because the prejudice may have infected the verdict itself." *Dresser Indus., Inc. v. The Gradall Co.*, 965 F.2d 1442, 1448 (7th Cir. 1992) (emphasis added). Certainly, this is a remedy reserved for the "unusual case" where the jury's error is "of such magnitude as to call into question the rationality of its verdict on whether the defendant was liable." *Davis v. Consol. Rail Corp.*, 788 F.2d 1260, 1263 (7th Cir. 1986). But Franciscan submits – and the Court agreed – that a $5.5 million verdict based on Duis's claims in this case presents just such an unusual case. Indeed, as one court aptly observed, "at some point on the scale an excessive award becomes so large that it can no longer be considered merely excessive. At that point, when an award is so exaggerated as to indicate bias, passion, prejudice, corruption, or other improper motive, remittitur is inadequate and the only proper remedy is a new trial." *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 683–84 (5th Cir. 1986) (internal citations and quotations omitted).

Given the Court's express determination that the jury's damages award was the result of passion and prejudice, the Court had no discretion to offer Duis remittitur. Instead, a new trial is required. *See Arroyo v. Volvo Group North America LLC*, 2022 WL 17960686, at *4 (N.D. Ill. Dec. 27, 2022) (where the court found the "jury's $2.6 million compensatory verdict was a product of passion and prejudice, it had no discretion to offer Plaintiff remittitur."). To be sure, Duis would have had the right to choose between remittitur and a new trial had the Court decided to remit Duis's damages to a lesser amount. But that did not occur. Duis's right to choose never arose because the Court determined a new trial was warranted based on the jury's monstrously excessive damages award, which was the product of passion and prejudice. This was not error.

## II. Duis Misconstrues the Legal Basis for the Court's Order and Focuses Only on Evidence Related to Liability.

Duis next argues that the Court "erred by applying the wrong standard of review in assessing the credibility of witnesses, substituting its credibility determinations in place of the jury without any deference, and taking evidence in favor of Duis off the scales." [ECF No. 111, p. 5]. According to Duis, the Court erred because it "afforded no deference to the jury's verdict and discarded extremely important evidence[.]" [ECF No. 111, p. 5]. Duis then devotes a significant portion of her Motion to Vacate – seventeen single-spaced bullet pointed paragraphs – to rehashing evidence on liability that she believes the Court disregarded.

Duis's focus on liability is misplaced and misses the lynchpin of the Court's ruling. Whether the jury had sufficient evidence to rule in Duis's favor on liability (which it did not) has no bearing on why the Court ordered a new trial here. Indeed, the entire point of the Court's Order is that the jury's monstrously excessive $5.5 million ***damages*** award was the product of passion and prejudice, which calls into question the jury's decision on liability. Therefore, while Duis claims the Court went too far in judging the credibility of witnesses, evidence on liability was never the basis for the Court's Order in the first place. To the contrary, the Court's Order hinges on a finding that the compensatory and punitive components of the jury's damages award were unsupported by any rational evidentiary basis brought forth at trial and were untethered to any specific facts or testimony Duis offered. The Court's holding in this regard should stand.

On compensatory damages, the Court correctly noted that Duis did not introduce any medical records or bills to support her contention that emotional distress led to her high blood pressure. [ECF No. 105, p. 17]. The Court also found it persuasive that Duis did not seek any professional help or counseling for her claimed anxiety. [ECF No. 105, p. 14] ("However, no evidence was introduced relating to the emergency room visits or the medical expenses, and Duis

6

did not seek any counseling for her emotional problems."). Accordingly, the Court determined that the jury's $500,000 compensatory damages award was "not supported by any special damages and not based on a fair assessment of the evidence." [ECF No. 105, p. 18]. Duis's Motion to Vacate offers nothing new to refute or undermine this finding on reconsideration.[1]

Likewise, the Court's assessment of the jury's findings on punitive damages is equally well taken. To justify an award of punitive damages against Franciscan, Duis had to do more than show misconduct by individual employees. Rather, she had to come forward with evidence establishing misconduct **by <u>Franciscan</u>** as a corporate body. [ECF No. 105, p. 18] (citing *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 537 (1999) ("[I]n the punitive damages context, an employer may not be vicariously liable for the discriminatory decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII.'")). "In order to be liable for punitive damages, the employer's conduct must be 'considerably more blameworthy' than 'carelessness' or 'general thoughtlessness.'" *May v. Chrysler Grp. LLC*, 2011 WL 2669207, at *11 (N.D. Ill. July 7, 2011) () (quoting *E.E.O.C. v. Ind. Bell Tel. Co.,* 256 F.3d 516, 527 (7th Cir. 2001)).

Duis failed to make this showing at trial. Indeed, as much as Duis focuses on alleged discriminatory comments by her supervisor, Linda Steinhilber – which were not corroborated at trial by anyone beyond Duis herself – she forgets "her burden of showing improper conduct by

---

[1] In conclusory fashion, Duis claims she "did present evidence supporting compensatory and punitive damages" and refers to her Response to Franciscan's Post-Trial Motion. [ECF No. 111, p. 4]. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale*, 90 F.3d at 1270. Even so, Duis's briefing fails to address the complete lack of causal connection between her claimed emotional distress and her termination. Indeed, the evidence at trial showed that Duis's anxiety – which supposedly underpins her entire claim of emotional distress – predated Duis's termination and therefore cannot have been attributable to Franciscan's conduct. Duis suffered a panic attack in April serious enough to be examined by a doctor and sent home from work prior to any alleged wrongdoing on the part of Franciscan; (2) Duis had recently suffered a miscarriage; and, (3) Duis was pregnant.

Franciscan, even if one or more employees engaged in illegal conduct." [ECF No. 111, p. 19]. As the Court noted in its Order:

> The undisputed evidence demonstrated that Franciscan recognized its obligations under federal law and established procedures to enforce the antidiscrimination laws. (See Employee Handbook, Plaintiff's Ex. 8). No evidence was presented that Franciscan enacted these policies as a pretext or repeatedly failed to follow its own policies in other employment cases. In fact, [Nita] Wirkus [Franciscan's Director of Human Resources] testified without contradiction that no termination was final until she reviewed the file to determine that the department managers had complied with Franciscan Policies. Both factually and legally, the award of punitive damages was improper.

[ECF No. 105, p. 19]. Given that Duis presented no competent evidence to establish a legal basis for imposing punitive damages against Franciscan as a matter of law, the jury clearly erred in awarding Duis $5 million in punitive damages.

Accordingly, because the compensatory and punitive damages components of the jury's award against Franciscan lacked evidentiary support and were monstrously excessive (or in a "staggering amount" as Duis has readily conceded), the Court correctly determined that the jury's award was based on passion and prejudice, warranting a new trial on both liability and damages. *See Ustrak v. Fairman*, 781 F.2d 573, 579–80 (7th Cir. 1986) ("The damages awarded by the jury … were so extraordinary as to suggest that not only the jury's assessment of damages but also its assessment of liability may have been tainted by 'passion and prejudice,' thereby requiring that the entire verdict, and not merely the damages part of it, be set aside."); *C.f. Fall v. Indiana Univ. Bd. of Trustees*, 33 F. Supp. 2d 729, 740, 1998 WL 941098 (N.D. Ind. 1998) ("[T]he jury's relatively reasonable compensatory damages award does not support an inference that its liability decision was tainted by passion or prejudice.").

### III. Duis's Third Claimed "Error" Conflates Entitlement to Punitive Damages With the *Amount* of Those Damages, Which was Monstrously Excessive.

Duis's final argument is that the Court "violated the standard of review" in granting Franciscan's Motion for Judgment as a Matter of Law on punitive damages. Specifically, Duis claims the Court improperly discounted evidence that the jury evidently relied upon in awarding $5 million in punitive damages to Duis.

Once again, Duis has missed the crux of the Court's Order. Duis's argument conflates two interrelated but distinct concepts: (1) whether there was evidence to support Duis's substantive right to recover punitive damages at all; and (2) whether the amount the jury awarded had any rational basis in the evidence. Duis's argument focuses entirely on the former but ignores the latter. Thus, while Duis claims the Court erred by reweighing the evidence and making credibility determinations, the evidence she cites goes only to whether she met the substantive legal standard to recover some amount of punitive damages, however large or small.[2] But that same evidence has little to no bearing on the ***amount*** of punitive damages.

Assuming *arguendo* that the jury had sufficient evidence to support a punitive damages award in some dollar amount (which it did not), the calculation the jury actually settled upon went far beyond large or small. It was monstrously excessive. Indeed, it was so excessive as to call into question the jury's decision on liability. That is the problem with the jury's verdict necessitating a new trial. The Court made this distinction quite clear in its Order:

> In addition to a lack of evidence to support an award of punitive damages, even Duis has conceded that the verdict of $5 million [in punitive damages] was a "staggering amount." (Motion to Award Liquidated Damages [DE 85], at ¶ 4). Query: is there a material distinction between a "staggering amount" and "monstrously excessive"? ***The amount awarded for punitive damages had no***

---

[2] As discussed in Part II *supra*, the jury had no rational evidentiary basis upon which to impose punitive damages against Franciscan.

9

>  ***rational basis***, especially considering the fact that it lacked evidentiary support for corporate liability.

[ECF No. 111, p. 15] (emphasis added).

Tellingly, Duis makes virtually no attempt to argue that the amount of the punitive damages award was ***not*** monstrously excessive. At most, she points to the difficult task a jury has in determining the amount of money necessary to punish a large corporation like Franciscan. [ECF No. 111, p. 3]. Duis cites *Gracia v. Sigmatron Intl., Inc.*, 842 F.3d 1010, 1026 (7th Cir. 2016), for the proposition that determining punitive damages "is a subjective and discretionary notion not capable of precise mathematical calculation." [ECF No. 111, p. 3]. But *Gracia* offers Duis no help. In fact, it supports the Court's Order. The jury in *Gracia* awarded $250,000 in punitive damages to a Title VII plaintiff asserting a claim for retaliatory discharge after she complained of sexual harassment. In upholding this amount, the Seventh Circuit observed, "[s]o long as the award has a reasonable basis in the evidence, a jury has wide discretion in determining damages. This is especially so where the trial judge, who has had the opportunity to hear the evidence and observe the jury, has seen fit to uphold the award in the face of a post-trial challenge." *Id*. at 1026-27.

Unlike the $250,000 award in *Gracia*, the jury's punitive damages award here had no rational basis in the evidence. The $5 million amount the jury settled upon was tethered to exactly nothing and is $4,750,000 more than what the *Gracia* jury awarded. To be sure, the jury here did not fall short of its duty by slightly over-inflating an otherwise supportable damages amount.[3] It arrived at a grossly excessive amount ten times higher than the typical range for emotional distress damages in Seventh Circuit cases and then increased that amount ten times over in assessing punitive damages. *See Spina v. Forest Pres. Dist. of Cook Cnty.*, 207 F. Supp. 2d 764, 773 (N.D.

---

[3] As a reference point, the $250,000 punitive damages award in *Gracia* was a mere $50,000 more than what the plaintiff herself had requested. The Seventh Circuit saw no reason to disturb this award.

10

Ill. 2002) ("[E]motional damages awards within the Seventh Circuit typically fall within the range of $500 to $50,000 or more."); *see also Pisut v. Pasavare, Inc.*, 2005 WL 1138638, at *1 (N.D. Ill. Apr. 29, 2005) (awarding plaintiff $500 in compensatory damages and $5,000 in punitive damages based on finding of pregnancy discrimination); *Richard v. Mahajan Corp.*, 2009 WL 6490095, at *1 (S.D. Ind. Dec. 31, 2009) (awarding punitive damages of $5,000 where "evidence received by the court demonstrates that the defendant blatantly discriminated against the plaintiff because of her pregnancy") The Court correctly determined that the $5 million punitive damages award lacked any rational evidentiary basis and was the product of passion and prejudice. It follows that a new trial is warranted, and the Court's Order must stand.

## CONCLUSION

Based on the foregoing, Duis's Motion to Vacate should be denied, as it raises no valid basis upon which the Court should reconsider its Order. A new trial of this matter is warranted.

Respectfully Submitted,

By:  Amy J. Adolay, Atty. No. 23147-49
Elizabeth M. Roberson, Atty. No. 34097-64
KRIEG DEVAULT LLP
12800 N. Meridian Street, Suite 300
Carmel, IN 46032
Telephone: (317) 238-6342
                (317) 238-6330
Facsimile:  (317) 636-1507
Email: aadolay@kdlegal.com
          eroberson@kdlegal.com

Robert A. Anderson, Atty. No. 15359-71
KRIEG DEVAULT LLP
8001 Broadway, Suite 400
Merrillville, IN  46410
Telephone: (219) 227-6100
Facsimile:  (219) 227-6101
Email: randerson@kdlegal.com

*Counsel for Defendant Franciscan Alliance, Inc.*

KD_14669539_3.docx