UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 2:20-cv-0078-APR |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO VACATE AND/OR AMEND THE ORDER DATED MAY 3, 2023

Plaintiff, Taryn N. Duis ("Plaintiff" and/or "Duis"), pursuant to Fed. R. Civ. P. 59(e) and/or Fed. R. Civ. P. 60(b)(6), hereby files her Reply in Support of her Motion to either vacate or amend its Order dated May 3, 2023, for the following reasons:

1. Defendant claims that "Duis did not raise this argument [Court's requirement to offer a remittitur or new trial] in her Response to Franciscan's Post-Trial Motion." [Dkt. 112, p. 4]. But Duis did respond to Defendant's Rule 59 Motion by stating "Duis concedes the Title VII statutory cap for compensatory and punitive damages cannot exceed $300,000.00 . . . ." [Dkt. 99, p. 2]. Further, Duis could not have anticipated that the Court would fail to offer Duis a remittitur, especially considering the litany of cases mandating that Duis be given this choice.

2. Duis has ample legal support for the argument that the Court erred in its May 3rd Order by failing to present Duis with the option of a remittitur or new trial. *See Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 256-57 (7th Cir. 1990)("Even where a jury verdict meets this severe standard, we demand that the trial court present the plaintiff with the option of a reduction of damages or a new trial."); *see also Hill v. City of Hammond,* 2:10-cv-0393-TLS

(N.D. Ind. Jan. 2023)("The Seventh Circuit has ruled that 'where an award is not rationally connected to the evidence,' a district court may 'order a remittitur, if the plaintiff is willing to accept that remedy,' or 'order a new trial limited to damages, if the plaintiff is not willing to accept a remittitur.'"); *Spinnenweber v. Red River Supply, Inc.*, 2:14-cv-101-JEM (N.D. Ind. June 24, 2019)("Viewing the trial record in the light most favorable to the verdict, there is no rational connection between the scant evidence presented and compensatory award of one million dollars. Accordingly, Plaintiff may choose remitter or a new trial."); *Burton v. American Cyanamid Co.*, 07-cv-0303, 07-cv-0441, 10-cv-0075 (E.D. Wisconsin April 10, 2020)("When a jury verdict meets this standard, Seventh Circuit law requires that I present the plaintiff with the option of a reduction of damages or a new trial."); *Hardy v. City of Miluakee*, 88 F.Supp.3d 852, 884 (E.D. Wisc. 2015)("The punitive damages award, on the other hand, is excessive. Ultimately, the Court is obliged to offer Mr. Hardy the choice between a new trial and a reduced punitive damages award . . . ."); *Carter v. Watson*, 18-cv-0727-BHL (E.D. Wisc. June 16, 2022)("The Seventh Circuit has recognized the power of a district court to grant remittitur where a jury's damages award is excessive . . . Failure to offer the choice between a new trial and remittitur is reversable error because '[t]he Seventh Amendment reserves the determination of damages, in jury trials within its scope, to the jury.'").

      3.      The manifest weight of legal authority sits with Duis on this point. Defendant's reliance upon *Dresser Industries, Inc. v. Waukesha Engine Division*, 965 F.2d 1442 (7th Cir. 1992) is misplaced. The Seventh Circuit in *Dresser* warned that a high damages award, alone, would likely not be grounds to order a new trial on liability without offering a remittitur. *Id*. at 1448-1449. Per *Dresser*, "Gradall's theory, however, is that passion and prejudice may be inferred from the size of the award, an unclear proposition . . . Older cases from this circuit,

however, seem to reject that idea . . . We need not decide which rule to follow today, though." Notably, the Seventh Circuit did not order a new trial in *Dresser* and strongly indicated that evidence of actual bias, passion, or prejudice is needed beyond a large verdict if a Court intends to skirt its mandate of offering a remittitur.  Here, outside of the Court relying upon its own subjective view of an excessive jury verdict, there is a complete absence of evidence showing that the jury was improperly swayed by passion and prejudice.  The *Dresser* opinion cited *Butcher v. Krause*, 200 F.2d 576 (7th Cir. 1952), which held that when addressing whether "passion and prejudice on the part of the jury could, in the case of an excessive verdict, be inferred from the enormity of the sum awarded[,]" the Seventh Circuit held "**[t]his Court has rejected such a rationale**."  *Id*. at 586 (emphasis added).

4.      Defendant cited *Arroyo v. Volvo Group North America LLC*, 2022 WL 17960686 (N.D. Ill. Dec. 27, 2022).  But again, *Arroyo* is an Illinois district court case which is currently under appeal in the Seventh Circuit (Case No. 23-1165).  Further, the plaintiff in *Arroyo* allegedly did not present any evidence of compensatory damages, whereas here Duis and Renee Salmi provided testimonial evidence of compensatory damages.  *Id*.  Defendant also cited *Ustrak v. Fairman*, 781 F.2d 573 (7th Cir. 1986), which relied upon *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128 (7th Cir. 1985).  But as previously explained, *Douglass* involved actual evidence that the jury considered inadmissible and prejudicial information thereby leading to an excessive verdict.  The *Douglass* case is from 1985, it involved Illinois common law claims of invasion of privacy, and most notably the jury in that case rendered a verdict and damages based upon evidence (a 1 hour slide show of 128 pictures showing the most vile photographs of Hustler magazine) that the Seventh Circuit concluded should have been excluded under Fed. R. Evid.

403. These cases offer no legal support for bypassing the mandate to offer a remittitur solely because of a large jury verdict.

5.  Finally, Defendant cited *Davis v. Consolidated Rail Corp.*, 788 F.2d 1260 (7th Cir. 1986), wherein the Seventh Circuit refused to order a new trial based on alleged passion or prejudice from the large award. The Seventh Circuit, in *Davis*, did say "[o]nly in an unusual case will a court order a new trial on liability because of an error in assessing damages or in apportioning them among multiple defendants." *Id*. at 1263. Not only does this statement fail to contain any legal citation, but this statement clearly conflicts with *Butcher v. Krause*, 200 F.3d 576 (7th Cir. 1952), wherein the Seventh Circuit made clear – "[t]his Court has rejected such a rationale." Further, how is this such an unusual case? It is not. Because juries are not given the caps on Title VII damages, jury instructions are inherently vague, and notions of deterrence and emotional harm are impossible to mathematically quantify, juries often award large amounts, without the Court concluding that the entire case, including liability, needs to be completely discarded because of alleged passion and prejudice. For example, consider the following substantial employment discrimination verdicts that were not deemed a result of passion and prejudice:

- *EEOC v. Wal-Mart Stores East, LP*, 1:17-cv-70 (E.D. Wisc. 2021): Jury awarded $125,000,000.00 in punitive damages on individual disparate treatment ADAAA case. [Dkt. 236]. In spite of this $125 million punitive damages award being 25X the size of the jury's punitive damages verdict in this case, the Court in *EEOC v. Wal-Mart Stores East, L*P, simply reduced the award down to the statutory cap of $300,000.00. [Dkt. 283]. In fact, the Court did so orally immediately after the verdict was read. *Id*.

- *Jennifer Harris v. Fedex Corporate Services, Inc.*, 4:21-cv-01651 (S.D. Texas 2022): jury verdict of $365,000,000.00 in punitive damages and $1,160,000.00 in compensatory damages for individual disparate treatment race case. [Dkt. 99]. The Court did not Order a new trial based on this large jury verdict.

- *EEOC v. Hill Country Farms, Inc.*, 3:11-cv-00041 (S.D. Iowa 2013): jury verdict of $240 million for 32 plaintiffs (each awarded $5.5 million in compensatory damages and $2 million in punitive damages). [Dkt. 92]. The Court remitted this award down to $1,600,000.00 ($50,000.00 per plaintiff), but did not make a finding that the award was so inflamed by passion and prejudice to warrant a new trial. [Dkt. 99].

- *Rosario Juarez v. Autozone Stores, Inc.*, 3:08-cv-0417 (S.D. Cal. 2014): jury verdict of $185,000,000.00 in punitive damages and $250,000.00 in compensatory damages for individual disparate treatment pregnancy discrimination case. [Dkts. 282, 281, 266]. The Court did not find such an award so inflamed by passion and prejudice to warrant a new trial.

- *EEOC, et al v. Showbiz Pizza Time, Inc.*, 3:98-cv-0698 (W.D. Wisc. 1999): jury verdict of $13,000,000.00 in punitive damages and $70,000.00 in compensatory damages for individual disparate treatment ADAAA case. [Dkt. 200]. The Court reduced this award to the statutory cap of $300,000.00, then used that reduced number[1] when analyzing whether such an award was monstrously excessive. [Dkt. 235, p. 35].

- *EEOC v. EchoStar Communications Corp.*, 1:02-cv-0581 (D. Col. 2005): jury verdict of $8,000,000.00 in punitive damages for ADAAA individual disparate treatment case. [Dkt. 127].

- *EEOC v. Wal-Mart Stores, Inc.*, 3:17-cv-0739 (W.D. Wisc. 2019): jury verdict of $5,000,000.00 in punitive damages and $200,000.00 in compensatory damages for individual disparate treatment ADAAA case. [Dkt. 197]. In addressing the punitive damages award, the Court noted "the only evidence of prejudice cited by Walmart is the size of the $5,000,000.00 punitive damages award, which the court reduced to $100,000 to comply with the statutory cap, 42 U.S.C. § 1981a(b). That's not enough to show unfair prejudice. '[T]he size of a punitive award reflects the jury's assessment of the defendant's blameworthiness.'" [Dkt.

---

[1] A common theme in these cases is that the Court will automatically reduce the award to the applicable statutory cap, and then use that reduced number when analyzing whether a verdict is monstrously excessive. The Seventh Circuit has indicated support for this procedure. *Lust v. Sealy, Inc.*, 383 F.3d 580, 589 (7th Cir. 2004); *Hennesy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1356, (7th Cir. 1995); *EEOC v. AIC Security*, 55 F.3d 1276, 1287 (7th Cir. 1995). Per *EEOC et al v. Showgiz Pizza Time, Inc.*, 3:98-cv-0698 (W.D. Wisc. 1999)(Dkt. 235, pp. 35-36), the Court found "no basis to conclude the jury ignored the evidence, disobeyed the court's instructions, acted with passion rather than reason, or otherwise abandoned its duty to provide a just verdict. This is not to say that the $13,000,000 verdict would necessarily stand if it were before the court, **but it's not before the court: we've already had a de facto remittitur of 98.23% of the award**. To argue over the fraction that remains could be viewed as denigrating the jury's very function in this trial . . . **I will apply the case law to determine whether the remaining $230,000 [court subtracted $70,000 in compensatory damages] in punitive damages should be reduced further still**." [emphasis added]. Indeed, in addition to failing to offer Duis a remittitur, the Court in this matter should have utilized this framework and considered whether the $300,000.00 cap was monstrously excessive, not $5.5 million.

5

244, p. 27]. The Seventh Circuit affirmed on appeal. *EEOC v. Wal-Mart Stores, Inc.*, 38 F.4th 651 (7th Cir. 2022).

- *McPadden v. Wal-Mart Stores East, LP*, 1:14-cv-0475 (D. N.H. 2016): jury verdict of $15,000,000.00 in punitive damages and $500,000.00 in compensatory damages for individual disparate treatment gender discrimination case. [Dkt. 138]. The Court automatically reduced these awards to the statutory cap instead of ordering a new trial on liability. [Dkt. 186].

- *Davis v. Packer Engineering, Inc*., 1:11-cv-07923 (N.D. Ill. 2018): jury verdict of $3,000,000.00 in punitive damages and $150,000.00 in compensatory damages for one plaintiff, and $3,000,000.00 in punitive damages and $300,000.00 in compensatory damages for the other plaintiff. [Dkt. 286]. The Court automatically reduced the combined damages down to $50,000.00 due to the statutory cap for an employer of this size, and thereafter used that $50,000.00 per plaintiff number when determining that the award was not monstrously excessive. [Dkt. 286, p. 10].

This is only a small sample of large employment verdicts. Of course every case is unique, but these verdicts illustrate that Duis' verdict of $5.5 million was not shockingly and monstrously excessive to the point that passion and prejudice can be inferred. Duis' verdict is not an extreme outlier. In fact, it is on the low end of these other verdicts. As the Seventh Circuit has cautioned, "[d]amages assessed by a jury are largely discretionary with it . . . 'the trial judge is not called upon to say whether the amount is higher than he personally would have awarded . . . .'" *Galard v. Johnson*, 504 F.2d 1198, 1200 (7th Cir. 1974). The jury instructions are vague and provide no mathematical formulas, just as the Court has no mathematical formula by which to subjectively declare a verdict of $5.5 million so monstrously excessive that liability was allegedly borne out of passion and prejudice.

For example, per jury instruction number 19, the "purposes of punitive damages are to punish a defendant for his conduct and to serve as an example or warning to Defendant and others not to engage in similar conduct in the future . . . Punitive damages, if any, should be in an amount sufficient to fulfill the purposes that I have described to you . . . ." [Dkt. 69, p. 20]. A

verdict of $5 million in punitive damages easily meets this guidance without being irrational, especially given the size of Defendant and the conduct at issue.  Duis did present evidence of compensatory and punitive damages, and the jury did the best they could within this framework.  As shown in *Vega v. Chicago Park District*, 954 F.3d 996 (7th Cir. 2020), garden variety compensatory damages without medical records and expert testimony can reach the statutory maximum, demonstrating that $200,000.00 above that figure is not irrational or monstrously excessive.  *See also Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003)(sustaining compensatory award of $500,000.00 per plaintiff without any medical evidence in case involving racially motivated transfer); *Peyton v. DiMario,* 287 F.3d 1121, 1126-28 (D.C. Cir. 2002)(reducing compensatory award of $482,000 to $300,000 based on statutory cap, but affirming award at statutory max over arguments that it was excessive, even where no medical evidence was indicated).  Duis conceded the statutory caps and Duis' award is on the small end of even larger verdicts where the Court did not order a new trial on liability.

6. The rationality behind the Seventh Circuit rejecting the idea that passion and prejudice can be inferred from the size of the verdict, alone, has been explained by a few different courts.  For example, the Supreme Court of Tennessee back in 1980 recognized the inherent flaws in this approach:

> Finally, an examination of the judicial process necessarily involved in a finding that a jury verdict is tainted by passion, prejudice or caprice, based upon the size of the award alone, requires first, that the line marking the upper limit of the range of reasonableness be established, and second, that the line marking the upper limit of the range of mere excessiveness be established, beyond which, theoretically, would lie the passion, prejudice and caprice range.  **No court, to our knowledge, has been so bold as to suggest any definite guidelines for determining the upper limits of the range of mere excessiveness, and we decline to attempt such a precarious adventure.  It is inevitable therefore that the validity of a finding that a jury verdict evidences passion, prejudice or caprice from the size alone is always suspect and with justification could be characterized as**

7

> **an arbitrary basis for the imposition upon the parties and the judicial system of a new trial.**

*Pitts v. Exxon Corp.*, 596 S.W.2d 830 (Tenn. 1980)(emphasis added). More recently, the Supreme Court of Washington explained why something more is needed, beyond the size of the verdict, to find passion or prejudice:

> The size of the verdict alone cannot be proof that it was based on passion, prejudice, or any other improper consideration . . . Instead, there must be something in the record showing that the jury's verdict was improperly influenced by 'untoward incidents of such extreme and inflammatory nature that the court's admonitions and instructions could not cure or neutralize them.' . . . These compounding layers of deference effectively limit the ability of an appellate court to overturn a verdict supported by substantial evidence to one scenario: when the only reasonable view is that something other than the evidence at trial unmistakably caused the jury's verdict.

*Coogan v. Borg-Warner Morse Tec., Inc.*, 490 P.3d 200, 2015 (Wash. 2021). With these principles in mind, along with the Seventh Circuit cases cited above, the Court should reconsider its May 3rd Order, as there is simply no actual evidence (outside of the Court's subjective view of the size of the verdict) that the jury acted out of bias, passion, or prejudice.

7. Defendant next contends that the May 3rd Order never took issue with liability. [Dkt. 112, p. 6]. Defendant is simply wrong. The May 3rd Order devoted 14+ pages summarizing its view of facts, often in direct contradiction of the jury's verdict, related to both liability and damages. [Dkt. 105, pp. 1-14]. The May 3rd Order also explicitly stated "[t]he verdict for compensatory damages was contrary to the clear weight of the evidence, *both on the issue of liability* and the amount of damages." [Dkt. 105, p. 16, emphasis added]. The Court then went on for 1.5 pages to discuss *liability*, not damages, and in the process violated the legal principles set forth in *Whitehead v. Bond*, 680 F.3d 919 (7th Cir. 2012), *Latino v. Kaizer*, 58 F.3d 310 (7th Cir. 1995), and *Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012).

8

For example, the May 3rd Order improperly held **"[t]he comment Duis attributed to Steinhilber, 'you care for your family more than your job,' could not have been believed by a fair-minded jury . . . [and] Duis testified that not once, but twice, Steinhilber made pregnancy comments which clearly violated federal law.  It strains credibility to believe an experienced supervisor would make discriminatory remarks directly to the employee, in effect an admission of liability."**  [Dkt # 105, p. 17, emphasis added].  This is just one of many instances wherein the May 3rd Order offered no deference to the jury's verdict and discounted facts without indisputable proof of falsity.  Defendant makes no effort to justify these legal errors in light of *Whitehead*, *Latino,* and *Galvan*.  Instead, Defendant ignores Duis' bullet points and diverts attention away by arguing that the May 3rd Order solely rests on the high damages award, alone.  But if that is the sole basis for Ordering a new trial, then the Court was required to offer Duis a remittitur or a new trial.  Further, if the issue is solely the damages award, and not whether the verdict was against the manifest weight of the evidence on liability, then "to determine whether the jury's verdict was irrational, the district court must review the trial record as a whole in the light most favorable to the verdict," which the Court did not do in its May 3rd Order.  *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015).

8.      Notably, Defendant also contends that Steinhilber's pregnancy biased comments "were not corroborated at trial by anyone beyond Duis herself[.]". [Dkt. 112, p. 7].  To the contrary, Kim Buchanon testified that Linda Steinhilber made very similar comments, in a hostile and aggressive tone, to her about Duis when it became clear that Buchanon would not provide the information she wanted.  The jury credited Duis and Buchanon over Defendant's witnesses.

9. With respect to the Court granting judgment as a matter of law on punitive damages, Defendant completely glosses over the fact that Defendant did not even move for judgment as a matter of law under Fed. R. Civ. P. 50(b) post-trial. Defendant requested a new trial under Fed. R. Civ. P. 59, not judgment as a matter of law on punitive damages. [Dkt. 90, p. 2]. This is something the Court did, *sua sponte*, and could only do so by violating the proper standard of review. Defendant also ignores the fact that the May 3rd Order construed facts in a manner contradictory to the jury's verdict in order to grant judgment as a matter of law on punitive damages. Under Fed. R. Civ. P. 50(b) the Court "must construe the facts strictly in favor of the party that prevailed at trial." *Schandelmeier-Bartels v. Chic. Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011). The Court failed to follow this standard of review, and could only grant judgment as a matter of law on punitive damages by adopting facts contrary to the jury's verdict. For example, the May 3rd Order completely ignored the following facts, which must be accepted as true:

- Travis Thatcher-Curtis ignored Duis' texts for help.
- Dawn Scott failed to investigate Duis' complaints of discrimination and harassment, and instead warned Steinhilber that Duis was in her office and was going to HR to file a grievance against her.
- HR then refused to meet with Duis and her mother, thereby preventing Duis from formally filing a grievance of pregnancy discrimination and harassment against Duis.
- Not only did Steinhilber make inappropriate statements showing bias against Duis because of her pregnancy to both Kim Buchanon and Duis, but Jessica Smosna also uttered such inappropriate statements.
- Management and HR completely ignored Duis' concerns, yet permitted Steinhilber to control the entire investigation and make the ultimate decision to terminate Duis, without taking any efforts to test the reliability of her investigation results.
- Then management and HR played the familiar game of hide-the-decision-maker, resulting in purported lack of memory combined with outright impeachment of Ms. Wirkus.
- On top of all of this, non-pregnant comparators, such as Dawn Scott, Melissa Roberts, and Celeste Reed, received progressive discipline for similar (if not much worse) behavior.

With respect to management outside of Steinhilber, Defendant's Opposition cites the May 3rd Order, which stated:

> The undisputed evidence demonstrated that Franciscan recognized its obligations under federal law and established procedures to enforce the antidiscrimination laws. (See Employee Handbook, Plaintiff's Ex. 8). No evidence was presented that Franciscan enacted these policies as a pretext or repeatedly failed to follow its own policies in other employment cases. In fact, [Nita] Wirkus [Franciscan's Director of Human Resources] testified without contradiction that no termination was final until she reviewed the file to determine that the department managers had complied with Franciscan Policies. Both factually and legally the award of punitive damages was improper. Given that Duis presented no competent evidence to establish a legal basis for imposing punitive damages against Franciscan as a matter of law, the jury clearly erred in awarding Duis $5 million in punitive damages.

[Dtk. 112. p. 8].

However, Duis did present such evidence, Wirkus did in fact contradict herself, and Wirkus did not interview witnesses or vet any information conveyed by Steinhilber. During her direct examination Wirkus testified that she made the decision to terminate Duis. [Dkt. No. 97, Trial Tr., pp. 27-31]. On cross examination, Wirkus was presented with Defendant's Response to Plaintiff's Interrogatories verified under oath by Wirkus. In response to Interrogatory No. 5 Defendant responded, "[t]he following individuals made the decision to terminate Plaintiff's employment: Linda Steinhilber, Dawn Scott, and Travis Thatcher Curtis." Conspicuously absent from this list is the name Nita Wirkus. [Dkt. No. 97, Trial Tr. Wirkus testimony, p. 37, ll. 13-21. So Wirkus either lied under oath on her interrogatories, or she lied under oath at trial. Wirkus then admitted that she was *not* the ultimate decision maker, she was not even a decision maker at all, and that Steinhilber was the ultimate decision-maker. [Dkt. No. 97, Trial Tr. Wirkus testimony p. 38, ll. 2-18]. Wirkus admitted that Linda Steinhilber first uttered "Let's terminate Ms. Duis." [Dkt. No. 97, Trial Tr. Wirkus testimony pp. 39, ll. 23-25; p. 40, ll. 1-4].

Wirkus also admitted that Dawn Smith received progressive discipline prior to her termination. [Dkt. 97, Tr. Tr. P. 51].

With the facts viewed in a light most favorable to the verdict, even Defendant apparently concedes that Duis is *entitled* to punitive damages. [Dkt. 112, p. 9]. And again, to the extent only the *amount* is at issue, then the appropriate procedure is to offer a remittitur or new trial. *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 256-57 (7th Cir. 1990); *Spinnenweber v. Red River Supply, Inc.*, 2:14-cv-101-JEM (N.D. Ind. June 24, 2019); *Burton v. American Cyanamid Co.*, 07-cv-0303, 07-cv-0441, 10-cv-0075 (E.D. Wisconsin April 10, 2020); *Hardy v. City of Miluakee*, 88 F.Supp.3d 852, 884 (E.D. Wisc. 2015). Finally, the Defendant received a *Kolstad* good faith jury instruction, and the jury wholeheartedly rejected this affirmative defense after hearing the evidence.

10. The May 3rd Order is fundamentally flawed because (1) the Court failed to offer Duis the option of a remittitur versus new trial, (2) the Court violated the legal principles set forth in *Whitehead*, *Latino*, and *Galvan* (no deference to jury verdict, taking evidence off the scales without indisputable proof of falsity, and asking what a reasonable or fair minded jury could find versus simply asking whether the jury had a rational basis for its verdict), and (3) the Court violated the Rule 50(b) standard of review on punitive damages. Accordingly, the May 3rd Order should be vacated and/or at the minimum amended to offer Duis an option of remittitur, the jury's verdict should be reinstated with the option of a remittitur, the new trial should be vacated, and Duis is entitled to a ruling on her remaining post-trial motions.

Respectfully Submitted,

*/s/ Ryan C. Fox (w/perm)*
Ryan C. Fox

*/s/ Ryan P. Sink*
Ryan P. Sink

Attorneys for Plaintiff

Fox & Sink, LLC
6177 North College Avenue
Indianapolis, Indiana 46220
rsink@foxsinklaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 9th day of June, 2023, by the Court's electronic filing system to the following counsel of record:

Amy J. Adolay: aadolay@kdlegal.com
Elizabeth M. Roberson: eroberson@kdlegal.com
Robert A. Anderson: randerson@kdlegal.com

*/s/ Ryan C. Fox (w/perm)*
Ryan C. Fox

*/s/ Ryan P. Sink*
Ryan P. Sink