UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TARYN N. DUIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:20-cv-78 |
| | ) |
| FRANCISCAN ALLIANCE INC., a/k/a | ) |
| FRANCISCAN HEALTH CROWN | ) |
| POINT, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on the Motion to Reconsider [DE 111] filed by the plaintiff, Taryn Duis, on May 29, 2023. For the following reasons, the Motion to Reconsider is **DENIED**.

## BACKGROUND

The plaintiff, Taryn Duis, was a charge nurse in the progressive care unit (PCU) at the Crown Point facility of the defendant, Franciscan Alliance, Inc. Duis was discharged on May 14, 2019, and claimed that the discharge was motivated by her pregnancy and her plan to take a maternity leave following the birth of her child. Franciscan contended that the discharge was justified based on a profane comment Duis made in reference to a patient and her unprofessional attitude during the investigation into the allegations about her misconduct.

After a four-day trial, the jury returned a verdict for Duis in the amount of $500,000 in compensatory damages and $5 million in punitive damages. Based on the evidence introduced at trial, the verdict was a miscarriage of justice and was vacated in an order dated May 3, 2023, for three reasons. First, the finding that the discharge related to her pregnancy was against the

manifest weight of the evidence. Second, both the amounts awarded for compensatory and punitive damages were "monstrously excessive" and not supported by the evidence. Finally, the verdict was based on passion or prejudice, as indicated by its lack of evidentiary support and the excessive amount, and this infected the finding of liability.

## STANDARD OF REVIEW

Although they are often filed, the Seventh Circuit has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." ***Hope v. United States***, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994); *see* ***Talano v. Northwestern Med. Fac. Found., Inc.***, 273 F.3d 757, 760 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." ***Ahmed v. Ashcroft***, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted); *see* ***Seng-Tiong Ho v. Taflove***, 648 F.3d 489, 505 (7th Cir. 2011) (explaining that a court can amend its judgment only if the petitioner can establish a manifest error of law or present newly discovered evidence) (citing ***Obriecht v. Raemisch***, 517 F.3d 489, 494 (7th Cir. 2008); ***United States v. Ligas***, 549 F.3d 497, 501 (7th Cir. 2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it."). In ***Frietsch v. Refco, Inc.***, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

56 F.3d at 828; *see* **Oto v. Metro. Life Ins. Co.**, 224 F.3d 601, 606 (7th Cir. 2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); **Divane v. Krull Elec. Co.**, 194 F.3d 845, 850 (7th Cir. 1999); **LB Credit Corp. v. Resolution Tr. Corp.**, 49 F.3d 1263, 1267 (7th Cir. 1995). Ultimately, a motion for reconsideration in vacating a judgment is an "extraordinary remedy, granted only in exceptional circumstances[.]" **Teninty v. McHugh**, 444 F. App'x 92, 93 (7th Cir. 2011).

## **DISCUSSION**

The Seventh Amendment guarantees the parties the right to a jury trial in civil cases. To be meaningful, that right must include a fair and impartial jury like its Sixth Amendment counterpart for criminal cases. The right also must extend to both parties to the litigation, not just the prevailing party. A verdict based on passion or prejudice violates the Seventh Amendment rights of the party victimized by the jury misconduct.

The presiding judge is in the best position to determine whether a fundamental miscarriage of justice has occurred. By training and experience, a federal judge should be familiar with constitutional issues which frequently involve balancing the rights of the parties to the litigation. Ruling on a motion for a new trial requires the court to balance the interests of both the prevailing and the losing party to determine whether the Seventh Amendment guarantee of a fair trial has been met. If it has not, correcting a violation of the constitutional rights of one party does not amount to a violation of the constitutional rights of the other party — it guarantees that both parties received a trial by a fair and impartial jury.

The Supreme Court has recognized the right of the presiding judge to vacate a jury verdict if it is excessive or against the weight of the evidence. In **Gasperini v. Center for Humanities, Inc.**, 518 U.S. 415, 116 S. Ct. 2211, (1996), the Court stated:

3

> If it should clearly appear that the jury have committed a gross error, or have acted from improper motives, or have given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case. The trial judge in the federal system, we have reaffirmed, has discretion to grant a new trial if the verdict appears to the judge to be against the weight of the evidence. This discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction [remittitur]. (citations and internal quotations omitted).

518 U.S. at 432, 116 S. Ct. at 2222. *See also: Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 106 F.3d 1388, 1397 (7th Cir. 1997) ("A trial judge in the federal system has discretion to grant a new trial if the verdict appears against the weight of the evidence.") (citing *Gasperini,* 518 U.S. at 415); **11 Wright and Miller, Federal Practice and Procedure § 2806** (3d ed.)

A jury verdict is entitled to great deference, and the Seventh Circuit discussed the appropriate standard of review in *Haluschak v. Dodge City of Wauwatosa*, 909 F.2d 254 (7th Cir. 1990):

> The decision to set aside a jury verdict lies within the sound discretion of the trial judge. The court may vacate a jury verdict for excessiveness, however, only if it is "monstrously excessive" or if there is "no rational connection between the evidence on damages and the verdict."

909 F.2d at 256. *See also* **Whitehead v. Bond**, 680 F.3d 919, 927 (7th Cir. 2012) (The court may set aside a verdict if it "was against the manifest weight of the evidence.").

In ruling on a motion for a new trial,

> The district court cannot remove a piece of evidence from the calculus merely because the court believes it was not credible and then, with the piece excluded, grant a motion for a new trial because the verdict is now against the weight. (internal quotations omitted).

*Whitehead*, 680 F.3d at 928 (quoting *Mejia v. Cook Cnty., Illinois*, 650 F.3d 631, 633 (7th Cir. 2011)). *See also* **Latino v. Kaizer**, 58 F.3d 310, 315 (7th Cir. 1995).

4

*Mejia* and *Whitehead* did not change the standard which allows the court to weigh the evidence in determining whether a party is entitled to a new trial.

> [T]he district court is in the best position to evaluate the evidence and determine whether the verdict was against the manifest weight; it heard the witnesses testify, saw the evidence presented, and gained a better appreciation of the nuances of the case than could be gleaned from a cold, written record.

*Mejia*, 650 F.3d at 634. *See also Whitehead*, 680 F.3d at 929; *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 876-77 (7th Cir. 2011).

The pending motion misstates the law with respect to the authority of the trial judge to evaluate the fairness of a verdict. The motion refers to the "court's narrow role" and cites *Lewis v. McLean*, 941 F.3d 886, 893 (7th Cir. 2019) as authority. (Pl.'s Br. at 5). In fact, the *Lewis* court was discussing "our 'narrow' role," the scope of appellate review, and not the standard to be applied by the trial court. On the same page, the court reiterated the fact that "the district court is in the best position to evaluate the evidence and determine whether the verdict was against the manifest weight." *Lewis*, 941 F.3d at 893.

The fact that the verdict was "monstrously excessive" also affects the evaluation of the jury's decision on liability. In *Dresser Indus., Inc. v. The Gradall Co.*, 965 F2d 1442 (7th Cir. 1992), the court stated that "[u]nquestionably, a new trial, and not a remittitur, is required when an award is the result of passion and prejudice, because the prejudice may have infected the verdict itself." *Id.* at 1448. *See also* **11 Wright and Miller, Federal Practice and Procedure § 2815** (3d ed.) ("It is not proper to use [remittitur] if the verdict was the result of passion and prejudice, since prejudice may have infected the decision of the jury on liability, as well as on damages. In those instances a complete new trial is required."); *Arroyo v. Volvo Group North America LLC*, 2022 WL 17960686, at *4 (N.D. Ill. Dec. 27, 2022) (where the court found the

5

"jury's $2.6 million compensatory verdict was a product of passion and prejudice, it had no discretion to offer Plaintiff remittitur.").

Duis takes issue with the proposition that a "monstrously excessive" verdict can "infect" the jury's decision on liability. In a bifurcated trial, a second round of evidence, final arguments and jury instructions separates the deliberations on liability and damages. This case was not bifurcated, and one continuous period of deliberations produced two legally flawed verdicts on compensatory and punitive damages. It is reasonable to conclude, whether by the Seventh Circuit or this court, that the same biased thought process adversely affected the verdict on liability which was reached during those deliberations.

The pending motion also alleges that Duis was entitled to consider a remittitur before a new trial was ordered. In support of this contention, Duis relies on a quote from *Haluschak*, 909 F.2d at 256: "Even where a jury verdict meets this severe standard (monstrously excessive), we demand that the trial court present the plaintiff with the option of a reduction of damages or a new trial." (Pl.'s Br. at 1-2). For emphasis, the quotation was in bold print.

*Haluschak* is not on point and does not address the issue of a "monstrously excessive" verdict and how it "infects" the issue of liability. In *Haluschak*, the plaintiff was offered a remittitur after the judge determined the verdict in the first trial was excessive, and the plaintiff opted for a new trial. When the second trial also resulted in a verdict the judge deemed excessive, the judge declined to give the plaintiff either the option of a remittitur or a third trial and entered judgment in a reduced amount. That order was a clear violation of Rule 59, and that was the issue addressed in the quotation

6

with the bold print. Unlike the May 3 Order, the judge in *Haluschak* did not set aside the verdict and order a new trial.

The May 3 Order did not enter a judgment in a reduced amount without the consent of Duis. Such an order would have come squarely within the scope of *Haluschak*, and the quotation in bold print would have applied. An order offering Duis a remittitur would have violated the holding in *Dresser Industries* because the jury passion or prejudice which resulted in a "monstrously excessive" verdict may have "infected" the decision on liability. *Dresser Industries* is both factually and procedurally on point, and *Haluschak* is not.

The factual background was discussed in detail in Sections II and II of the May 3 Order. Those section are incorporated in this order, and some of those facts will be referred to as some of the factual arguments of the motion are considered. Because of the limited nature of a motion to reconsider, not all of the arguments will be addressed. Only two of the evidentiary arguments relating to liability raised by Duis will be discussed.

First, the May 3 Order referred to Duis' April 11, 2019, anxiety attack and concluded it was prompted, in part, when another nurse, Dawn Smith, failed to follow a directive from Duis. When her supervisor, Linda Steinhilber, questioned Duis about Smith's behavior, she denied the allegations against Smith. According to Duis, she testified that Smith was not defiant and that there was no direct evidence in the record to support the finding that Smith had disregarded her order. However, Duis herself testified that Steinhilber was investigating the anxiety attack, had targeted Smith, and became upset when Duis would not implicate her friend as the cause of the anxiety attack. Because Steinhilber was conducting an investigation and believed Smith had disregarded an order from Duis, a reasonable inference can be drawn (circumstantial evidence)

that one or more members of the night shift had told Steinhilber that Smith was the cause of the problem. Therefore, both the finding that Smith had a role in the anxiety attack and that Steinhilber believed Duis failed to cooperate in the investigation had evidentiary support.

The second evidentiary challenge in the pending motion relates to Duis' contention that there was no evidence she delayed in providing the pain medication after the profanity incident. The May 3 Order found that this was not a relevant argument. Duis correctly argues that the discharge form (Plt.'s Ex. 1) refers to "delay in patient care." However, the three individuals who made the decision to discharge Duis, Dawn Scott, Travis Thatcher-Curtis, and Steinhilber, testified that the reasons for the discharge were the profane comment and the toxic attitude of Duis. None of these individuals mentioned a delay in providing the medication as a reason for the decision. The discharge form was prepared by Steinhilber, but it did not reflect the reasons given at the earlier meeting or the trial testimony of Scott, Thatcher-Curtis, and Steinhilber.

In discussing how the verdict in favor of Duis was against the manifest weight of the evidence, the May 3 Order highlighted two aspects of Duis' testimony. The first was her testimony on both direct and cross-examination that Steinhilber allegedly said, "you care for your family more than your job." (Ct.'s Order 7). The second was her testimony that Steinhilber made pregnancy comments on two separate occasions which clearly violated both federal law and the Franciscan employee handbook. (Ct.'s Order 7). According to Duis, Jessica Smosna heard both comments, and Thatcher-Curtis heard the second comment.

Besides noting that Steinhilber, Thatcher-Curtis, and Smosna denied that those statements were made, the May 3 Order discussed the likelihood that Steinhilber made those two comments. In determining whether the verdict was against the manifest weight

of the evidence, the court cannot exclude the two comments from the equation. In other words, the jury was entitled to consider the two comments along with the other evidence in the case. At the same time, the court has the right to consider the record as a whole, including whether the comments were plausible, in exercising its responsibility to weigh the evidence to determine whether the verdict was fair and just. None of the arguments in the pending motion undermines the conclusion reached in the May 3 Order.

On the issue of damages, the May 3 Order highlighted the emotional damages experienced by Duis following her discharge, and the pending motion has added to that list. Regardless of the extent of the emotional damages, Duis never claimed that they were permanent, and the jury was not given an instruction permitting an award for permanent injuries. With no monetary damages for medical expenses or lost wages, a verdict in the amount of $500,000 for temporary emotional distress was "monstrously excessive."

The challenge to the May 3 Order relating to the award of punitive damages fares no better. First, the motion has not attempted to explain the concession that the verdict was in a "staggering amount." (Motion to Award Liquidated Damages [DE 85] at ¶ 4). The May 3 Order posed the question how a "staggering amount" differed from "monstrously excessive," and the motion is silent on that issue.

The motion also tries to justify the award of $5 million in punitive damages with a hypothetical: "For example, assuming Defendant has an annual revenue of at least $1,000,000,000, then $5.5 million is only 0.55% of that amount." (Pl.'s Br. 3). That assumption raises several problems. The primary problem is that Duis did not present any financial evidence to the jury, so that "evidence" cannot be relied on to justify the verdict. Second, it is offered as an

assumption, not a statement of fact. Finally, the "annual revenue" of a business is only one factor in determining profitability. In some cases, the costs exceed the annual revenue resulting in a net loss. If financial evidence had been offered, the jury would not have been instructed to consider the "annual revenue" of Franciscan.

The verdict was against the manifest weight of the evidence, monstrously excessive, and infected by passion or prejudice. Whether individually or in combination, the reasons given in the May 3 Order justified the decision granting a new trial.

## CONCLUSION

Evidence was presented by current and former Franciscan employees that a toxic attitude existed in the PCU when Duis was the charge nurse. In fact, one month prior to her discharge Duis said that "she hates being a nurse." She displayed this same attitude on two different occasions immediately prior to her discharge. Rather than the profanity incident and her attitude, Duis contended at trial that she was fired because she was pregnant and planned on taking a maternity leave. In a hospital where maternity leaves were commonplace and 80 nurses took a maternity leave in 2019 alone, Duis claimed that she was singled out for retaliation. The evidence to the contrary was overwhelming. Neither the finding of liability nor the outrageous award of compensatory and punitive damages could have been the product of a fair and impartial jury.

As the May 3 Order acknowledged, a jury verdict is entitled to great deference. In a judicial career spanning over 40 years and including more than 200 jury trials, only two other verdicts have been vacated by the court as a miscarriage of justice. By any definition, that demonstrates judicial restraint and a respect for the role of the jury. In one of those two cases, the second jury returned a verdict in an amount greater than the first jury. That verdict was allowed

to stand. In this case, neither the plaintiff's response to the motion for a new trial nor the motion to reconsider has erased a firm conviction that the jury verdict was against the weight of the evidence, excessive, and unjust.

Based on the foregoing reasons, the plaintiff's Motion to Reconsider [DE 111] is **DENIED**.

ENTERED this 22nd day of June, 2023.

/s/ Andrew P. Rodovich
United States Magistrate Judge