# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| **TARYN N. DUIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CAUSE NO: 2:20-cv-0078-APR** |
| | ) |
| **FRANCISCAN ALLIANCE INC., a/k/a** | ) |
| **FRANCISCAN HEALTH CROWN** | ) |
| **POINT,** | ) |
| | ) |
| **Defendant.** | ) |

## PLAINTIFF'S MOTION TO CERTIFY ORDERS DATED JUNE 22, 2023, AND MAY 3, 2023, FOR INTERLOCUTORY APPEAL

Plaintiff, Taryn N. Duis ("Plaintiff" and/or "Duis"), pursuant to 28 U.S.C. § 1292(b), hereby Motions the Court to Certify its Orders dated June 22, 2023 (dkt. #115), and May 3, 2023 (dkt. #105), for interlocutory appeal to the Seventh Circuit Court of Appeals, and in support thereof states as follows:

1.      Pursuant to 28 U.S.C. § 1292(b):

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order . . . .

Broken down, interlocutory appeal "is appropriate when (1) the appeal presents a question of law; (2) it is controlling; (3) it is contestable; (4) its resolution will expedite the resolution of the litigation, and (5) the petition to appeal is filed in the district court within a reasonable amount of time after entry of the order sought to be appealed." *Boim v. Quranic Literacy Institute*, 291 F.3d 1000, 1007 (7th Cir. 2002).  A reasonable time in the Seventh Circuit

means a month from the date of the Order being certified, perhaps a little longer.  *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 245-48 (7th Cir. 1991); *Richardson Elecs., Ltd. v. Panache Broadcasting of PA, Inc.*, 202 F.3d 957, 958 (7th Cir. 2000)(finding two-month delay too long). Timeliness is not an issue here, as Duis has filed the instant Motion within thirty (30) days of the June 22nd Order.

2.      The Order dated June 22, 2023, which incorporated by reference the May 3, 2023, Order, gives rise to the following three (3) main controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation:

- Whether the Court erred by not offering Duis a remittitur.  In particular, whether (a) the Court can infer bias, passion, and prejudice of a jury based solely on the size of the verdict when ordering a new trial and refusing to offer a remittitur, or alternatively whether a separate evidentiary foundation of bias, passion, and prejudice must first be established before a Court can take such action.  If the Court cannot make such an inference based solely on the size of the verdict, then Duis is entitled to a remittitur or a new trial on damages (not liability), and the May 3rd and June 22nd Orders must be vacated.  If (b) the Court is permitted to draw such an inference based solely on the size of the award, then what is the objective measurable standard for a Court to find a verdict monstrously excessive to the point where it is reasonable to infer bias, passion, and prejudice on liability, and did the verdict in this case meet that standard?  And (c) if the Court is allowed to draw such an inference, what is the proper procedure regarding the statutory caps, i.e. should the Court have reduced the compensatory and punitive awards to the statutory maximum of $300,000.00 and then used that reduced figure to analyze whether the verdict was monstrously excessive, as is routinely done in other district courts in the Seventh Circuit?

- Whether the Court erred, as a matter of law when determining that the verdict was against the manifest weight of the evidence, by failing to offer deference to the jury's verdict, discounting evidence without indisputable proof of falsity, and substituting its own judgment in place of the jury instead of simply asking whether the jury had a rational basis for its determinations.

- Whether the Court violated the standard of review when granting judgment as a matter of law on punitive damages by relying upon disputed facts that contradicted the jury's verdict.

3.      These issues meet all elements to warrant certification for interlocutory appeal. First, as demonstrated in the three (3) bullet points above, these issues present "questions of law," most of which are pure questions of law that can be easily analyzed by the Seventh Circuit Court of Appeals.  *See Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000)(discussing question of law element).

4.      Second, they are "controlling," meaning "that a question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants."  *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991).  An illustrative definition of controlling means "serious to the conduct of the litigation, either practically or legally."  *Id*.  Without a doubt, the issues raised in the June 22nd and May 3rd Orders are controlling.  If resolved now on appeal, reversal would result in reinstatement of the jury verdict and thereby avoid the time and expense of a second jury trial.

5.      Third, the Parties (and the Court) have a substantial ground for difference of opinion on these issues.  Duis contends that a finding of a monstrously excessive verdict entitles her to a remittitur or a new trial on damages (not liability), unless the Court can establish a separate evidentiary foundation for concluding that the jury's verdict on liability was tainted by passion, prejudice, or bias.  For example, caselaw appears to favor Duis on whether passion and prejudice on liability can be derived solely from the size of the verdict.  As acknowledged in *Dresser Industries, Inc. v. Waukesha Engine Division*, 965 F.2d 1442 (7th Cir. 1992), the Seventh Circuit has rejected the idea that passion and prejudice by the jury can be solely inferred from the size of the verdict.  *Id*. at 1448-49.  Defendant and the Court adopt the viewpoint that passion and prejudice can be deduced solely from the size of the award, but in *Butcher v. Krause*, 200 F.2d 576 (7th Cir. 1952) the Seventh Circuit held that when addressing whether "passion and

prejudice on the part of the jury could, in the case of an excessive verdict, be inferred from the enormity of the sum awarded[,]" the Seventh Circuit held "[t]his Court has rejected such a rationale." *Id*. at 586 (emphasis added); *see also Wetherbee v. Elgin, Joliet & Eastern RY Co.*, 191 F.2d 302, 309-10 (7th Cir. 1951)("We also have held that passion and prejudice of the jury will not be inferred from the mere excessiveness of the award . . . following the precedents hereinbefore cited, we hold that the judgment below cannot be reversed merely on the ground that the amount awarded by the jury was excessive.").

The Orders at issue also failed to articulate any objective numerical standard by which a Court can declare a verdict "monstrously excessive" to the point that a remittitur is not offered, and bias/passion/prejudice can be inferred on liability.  This seems inherently subjective, arbitrary, prone to abuse, leaves parties like Duis at the whim of the trial court Judge.  Duis cited numerous other cases across the country, with much larger verdicts, wherein no inference of bias/passion/prejudice was drawn from the size of the verdict.  The Court failed to address these other cases, wherein the Courts automatically reduced the compensatory and punitive damages to the statutory maximum (depending on number of employees) and then used that number to analyze whether the verdict was monstrously excessive.  Clarification on the proper objective standard to declare a verdict monstrously excessive for purposes of ordering a new trial on liability, plus clarification on the procedure when dealing with a statutory maximum, when the jury is completely unaware of this cap, is a pure question of law that will greatly aid district courts and litigants.  The Seventh Circuit has indicated support for this procedure.  *Lust v. Sealy, Inc.*, 383 F.3d 580, 589 (7th Cir. 2004); *Hennesy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1356, (7th Cir. 1995); *EEOC v. AIC Security*, 55 F.3d 1276, 1287 (7th Cir. 1995); see also *EEOC et al v. Showgiz Pizza Time, Inc.*, 3:98-cv-0698 (W.D. Wisc. 1999)(Dkt. 235, pp. 35-36).

Contrary to Defendant's interpretation of the May 3rd Order, the Orders also appear to claim that the verdict was against the manifest weight of the evidence on liability. A new set of judicial eyes should address whether the Orders at issue violated the legal principles set forth in *Whitehead v. Bond*, 680 F.3d 919 (7th Cir. 2012), *Latino v. Kaizer*, 58 F.3d 310 (7th Cir. 1995), and *Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012). From Duis' perspective, the Orders gave no deference to the jury's verdict, the Orders took evidence off the scales without indisputable proof of falsity, and the Orders substituted the Court's judgment in place of the jury instead of simply asking whether the jury had a rational basis for its verdict. Most notably, the Court's discounting of pregnancy biased statements by Linda Steinhilber, as well as ignoring similarly situated comparators, was in error. Finally, the last legal question is whether a Court can order judgment as a matter of law, post-trial under Rule 50(b), by adopting facts contrary to the jury's verdict.

6.      Finally, an immediate appeal will materially advance the ultimate termination of the litigation. This element does not mean that if the interlocutory appeal is decided in favor of the appellant that all litigation will end, decisively, then and there with no further proceedings; instead, it only means that the interlocutory appeal may speed up resolution of the case. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 537 (7th Cir. 2012). The Court has Ordered a new trial for November 13, 2023 – November 17, 2023. An immediate appeal will substantially speed up the conclusion of litigation by reinstating the jury's verdict instead of waiting months to retry the case, at great time and expense to the Parties, the Court, and witnesses.

7.      The Court's June 22nd Order did not provide definitive closure on these issues. For example:

- Contrary to the Orders at issue, the case of *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 256-57 (7th Cir. 1990) is on point and "[e]ven

where a jury verdict meets this severe standard [of being monstrously excessive], we demand that the trial court present the plaintiff with the option of a reduction of damages or a new trial." The Court failed to meet its mandate to offer Duis a remittitur, and the Court's attempt to distinguish *Halaschak* is not persuasive. Per *Haluschak* and numerous cases (ignored by the Court) interpreting *Halaschak* in line with Duis, regardless of whether a Court orders a judgment in a reduced amount without the consent of the plaintiff, whenever a finding is made that the verdict is grossly excessive, the Court is required to give the plaintiff the option of a remittitur or new trial.

- To the extent that Court believes the verdict is so monstrously excessive that liability was the product of passion and prejudice, then the Court needs actual evidence of passion, bias, and prejudice before it can bypass its mandate to offer a remittitur. The Court needs a separate foundation for this finding outside of the verdict itself. Per the Seventh Circuit, passion, prejudice, and bias cannot be inferred solely from the size of the verdict. *Butcher v. Krause*, 200 F.2d 576 (7th Cir. 1952); *Wetherbee v. Elgin, Joliet & Eastern RY Co.*, 191 F.2d 302, 309-10 (7th Cir. 1951). For example, the Court needs evidence that the jury considered inadmissible evidence or inflammatory and improper argument by counsel. Neither Defendant, nor the Court, can meet this standard, as there is absolutely zero actual evidence of bias, passion, and prejudice by the jury in this matter. The Court claims "[it] is reasonable to conclude, whether by the Seventh Circuit or this court, that the same biased through process adversely affected the verdict on liability . . . ." [Dkt. 115, p. 6]. To the contrary, it is purely speculative and entirely subjective without any objective standard or guidance, which again is why passion and prejudice cannot be deduced solely from the size of the award.

- With respect to the Court's analysis on the manifest weight of the evidence, the Court admits without any explanation that it only addressed two (2) of the arguments raised by Duis. [Dkt. P. 115].

- On the first issue, the Court drew inferences contrary to the jury's verdict and relied upon evidence not in the record, in particular speculation that someone told Steinhilber that Duis allegedly had a panic attack due to Dawn Smith. Again, Dawn Smith did not even testify during trial. The only evidence in the record, from witnesses with personal knowledge as to why Duis had a panic attack, were Duis and her alone. Regardless of what other witnesses *may* have said to Steinhilber, Duis, the only witness with personal knowledge, advised Steinhilber that Smith did not cause her panic attack and there is zero basis for Steinhilber to reasonably interpret Duis as being insubordinate and failing to cooperate.

- On the second issue, the Court initially held in its May 3rd Order that "Duis has argued that no evidence was presented that she delayed getting the pain medication. That argument ignores the stated reasons for her discharge: the profane comment and her subsequent attitude." [Order p. 7]. In response, Duis pointed out that this is wrong because the termination form explicitly states "It

was reported Taryn response was inappropriate resulting in delay in patient care and inappropriate and unsatisfactory work behavior . . . Delay in patient care . . . poor work performance as the charge nurse."  Now, the Court attempts to explain this discrepancy away by stating "the three individuals who made the decision to discharge Duis, Dawn Scott, Travis Thatcher-Curtis, and Steinhilber, testified that the reasons for the discharge were the profane comment and the toxic attitude of Duis."  [Dkt. 115, p. 8].  First, the record showed that there was truly only one ultimate decision-maker – Linda Steinhilber.  Second, Steinhilber is the one who executed the termination paperwork, and in that paperwork she explicitly used the phrase "delay in patient care" on two separate occasions.  Third, to the extent an employer has a different reason in termination paperwork versus what is verbally offered, then that is separate and additional evidence of pretext.

- The Court in its June 22nd Order admitted that "the court cannot exclude the two comments from the equation" yet then went on to conclude that it could essentially make a finding that the comments were not plausible.  Yes, the Court can re-weigh evidence under the manifest weight of the evidence standard of review.  But certain limiting principles apply. See *Whitehead v. Bond*, 680 F.3d 919 (7th Cir. 2012); *Latino v. Kaizer*, 58 F.3d 310 (7th Cir. 1995); *Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012).  The Court must offer deference to the jury's verdict, which it did not do.  The Court cannot discount evidence, which it did on numerous occasions.  And the Court cannot substitute its own judgment in place of the verdict, but instead must simply ask whether the jury had a rational basis to find for the plaintiff.  On top of all of this, the Court had to find that the *manifest* weight of the evidence sat with Defendant, meaning the record was so overwhelmingly lopsided that no reasonable basis could exist to find for the Plaintiff.  The Orders at issue failed to heed these limiting principles.

- The June 22nd Order again ignored the similarly situated comparators cited by Duis, in particular Dawn Smith (who, unlike Duis, was afforded progressive discipline prior to her termination), as well as Melissa Roberts and Celeste Reed.  This evidence, alone, permits a jury to find in favor of Duis, and the Court continuously ignores this potent evidence.

- The June 22nd Order ignored the compensatory damages case law cited by Duis, ignored all of the explanations given by Duis on why a jury could award large amounts (no caps given to juries, no mathematical formula given to juries, discretionary and subjective task to juries) and also appears to inject a new standard, not previously discussed or briefed, on whether Duis' compensatory damages were permanent or temporary.  This argument was not even raised by Defendant in its post-trial motions, nor was this something relied upon in the May 3rd Order.  Nor did the June 22nd Order cite any case law to support its position on this issue.  The goal-posts keep shifting.  Further, the Court now appears to concede that it cannot base its decision on a lack of medical documentation or expert testimony.

- The Orders at issue provide no mathematical formula or objective measuring standard by which a verdict crosses a line and allows an alleged inference of bias/passion/prejudice.  The June 22nd Order did not address the fact that the jury was not given the statutory cap, the jury was not provided any type of mathematical formula, and the jury was given the task of coming up with a number to deter Defendant from future conduct.  Although the jury did not know the precise revenue figures of Defendant, these were local members of the community who knew very well that Franciscan was a large entity with a large presence in the area.

- Finally, the June 22nd Order cited *Gasperini v. Center for Humanities, Inc*., 518 U.S. 415 (1996) for its general authority to Order a new trial for a variety of reasons, but *Gasperini* does not give *carte blanche* authority to the Court to Order a new trial.  The specific issue raised by Duis is the evidence and foundation needed by a trial Judge before making such a finding of bias, passion, prejudiice, or lack thereof in this case.  And if there is no such evidence of bias, passion, and prejudice by the jury other than the size of the verdict, it is Duis' contention that the trial Judge is mandated to offer a remittitur before ordering a new trial, per established Seventh Circuit precedent and Supreme Court remittitur precedent. The Court failed to offer Duis a remittitur in this matter, which should be reviewed by the Seventh Circuit.  Further, should a trial Judge have such authority to Order a new trial and not offer a remittitur based solely on an excessive damages award, then trial Judge must be held to some objective standard to declare such an award "monstrously excessive" to the point where liability is thrown out.  The Orders at issue do even attempt to articulate such a standard. Duis presented numerous comparable verdicts across the country, with her verdict being on the low end of the spectrum, yet only her case was declared monstrously excessive without any mention of substantially higher verdicts.  As previously stated, without an objective measuring rod, then this is a precarious adventure by the Court surely to lead to arbitrary results.

8.    Accordingly, the Court's Orders dated June 22, 2023, and May 3, 2023, should

amended and certified for interlocutory appeal to the Seventh Circuit Court of Appeals.

Otherwise, Defendant will be given a second chance, i.e. a do-over, without the possibility of

punitive damages and without any actual evidence of bias, passion, and prejudice by the jury

who honored their oaths and rendered a legitimate verdict on the evidence presented in favor of

Duis and against Defendant.

Respectfully Submitted,


*/s/ Ryan P. Sink*
Ryan C. Fox
Ryan P. Sink
Attorneys for Plaintiff

Fox & Sink, LLC
6177 North College Avenue
Indianapolis, Indiana 46220
rsink@foxsinklaw.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 21st day of July, 2023, by the Court's electronic filing system to the following counsel of record:

Amy J. Adolay: aadolay@kdlegal.com
Elizabeth M. Roberson: eroberson@kdlegal.com
Robert A. Anderson: randerson@kdlegal.com


*/s/ Ryan P. Sink*
Ryan P. Sink